## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BORDEN DAIRY COMPANY, *et al.*, | Case No. 20-10010 (CSS) |
| Debtors.[1] | (Joint Administration Requested) |

### DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS (A) AUTHORIZING USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION, (B) AUTHORIZING USE OF RESERVE ACCOUNT CASH, (C) SCHEDULING A FINAL HEARING, AND (D) GRANTING RELATED RELIEF

Borden Dairy Company ("**Borden**") and its affiliated debtors and debtors in possession (collectively, the "**Debtors**" or the "**Company**") hereby file this motion (this "**Motion**") for entry of an interim order (the "**Interim Order**"), substantially in the form attached hereto as **Exhibit A**, pursuant to sections 105, 361, 362, 363, 506(a), 507(b), 552 and 553 of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 4001, 6003, 6004, 7062 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2002-1(b), 4001-2 and 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"): (a) authorizing the Debtors' use of Cash Collateral (as defined herein) on the terms and conditions set forth in the Interim Order and providing adequate protection to the Prepetition Secured Parties (as defined

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Borden Dairy Company (1509); Borden Dairy Holdings, LLC (8504); National Dairy, LLC (9109); Borden Dairy Company of Alabama, LLC (5598); Borden Dairy Company of Cincinnati, LLC (1334); Borden Transport Company of Cincinnati, LLC (3462); Borden Dairy Company of Florida, LLC (5168); Borden Dairy Company of Kentucky, LLC (7392); Borden Dairy Company of Louisiana, LLC (4109); Borden Dairy Company of Madisonville, LLC (7310); Borden Dairy Company of Ohio, LLC (2720); Borden Transport Company of Ohio, LLC (7837); Borden Dairy Company of South Carolina, LLC (0963); Borden Dairy Company of Texas, LLC (5060); Claims Adjusting Services, LLC (9109); Georgia Soft Serve Delights, LLC (9109); NDH Transport, LLC (7480); and RGC, LLC (0314). The location of the Debtors' service address is: 8750 North Central Expressway, Suite 400, Dallas, TX 75231.

herein) for any diminution in value of their interests in the Prepetition Collateral (as defined herein) resulting from such use of Cash Collateral; (b) authorizing the Debtors' use of the proceeds (the "**Reserve Account Cash**") of the Reserve Account (as defined herein), which account was specifically excluded from the Prepetition Collateral; (c) scheduling a final hearing (the "**Final Hearing**") to consider entry of an order granting certain of the relief requested herein on a final basis (the "**Final Order**"); and (d) granting related relief.  A detailed description of the Debtors and their businesses, and the facts and circumstances supporting this Motion and the Debtors' Chapter 11 Cases (as defined herein), is set forth in the *Declaration of Jason Monaco in Support of Chapter 11 Petitions and First Day Motions* (the "**First Day Declaration**") [2] filed contemporaneously herewith.  In further support of this Motion, the Debtors respectfully state as follows:

<strong><u>Jurisdiction</u></strong>

1.      The United States Bankruptcy Court for the District of Delaware (this "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  The Debtors confirm their consent, pursuant to Local Rule 9013-1(f), to the entry of a final order by this Court in connection with this Motion to the extent that it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the First Day Declaration or the Credit Agreement, as applicable.

3.      The bases for the relief requested herein are sections 105, 361, 362, 363, 506(a), 507(b), 552 and 553 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004, 7062 and 9014, and Local Rules 2002-1(b), 4001-2 and 9013-1(m).

## Background

4.      As of the date hereof (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**") with this Court.  The Debtors continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Concurrently with the filing of this Motion, the Debtors have requested procedural consolidation and joint administration of these Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).  No party has requested the appointment of a trustee or examiner in these Chapter 11 Cases, and no committees have been appointed or designated at this time.

5.      The Debtors produce and/or market dairy products, including flavored and specialty milk, buttermilk, dips and sour cream, juices, tea, and flavored drinks.  The Debtors are headquartered in Dallas, Texas and operate 12 manufacturing facilities and more than 75 distribution centers in the Midwest, Southern, and Southeastern regions of the United States.  The Debtors offer more than 35 dairy products that are sold in more than 40,000 locations annually.

6.      Additional information about the Debtors' business and the events leading to the commencement of the Chapter 11 Cases can be found in the First Day Declaration, which is incorporated herein by reference.

## The Debtors' Prepetition Secured Indebtedness

### A.      Financing Agreement

7.      On July 6, 2017, Borden, as borrower, the other Loan Parties (as defined in the Credit Agreement (as defined herein)) party thereto (together with Borden, the "**Loan Parties**"),

each of the lenders from time to time party thereto (the "**Lenders**"), the L/C Issuer (as defined in the Credit Agreement), and PNC Bank, National Association ("**PNC**"), as administrative agent )in such capacity, the "**Administrative Agent**") and collateral agent (in such capacity, the "**Collateral Agent**," and in such capacities collectively, the "**Agent**," and together with the Lenders, the L/C Issuer, and each other Secured Party (as defined in the Credit Agreement), the "**Prepetition Secured Parties**"), entered into that certain Financing Agreement (as amended, modified, restated, amended and restated, and/or supplemented from time to time, the "**Credit Agreement**"), which provided the Debtors with a $275 million credit facility (the "**Credit Facility**").  The Credit Facility consisted of: (a) a $30 million term loan A facility (the "**Term Loan A Facility**," and such loans thereunder, the "**Term Loan A Loans**") held by PNC, (b) a $175 million term loan B facility (the "**Term Loan B Facility**") held by certain affiliates  of KKR Credit Advisors (US) LLC and/or Franklin Square Holdings, L.P., and (c) a $70 million revolving credit facility (the "**RCF Facility**," and such loans thereunder, the "**Revolving Loans**")[3] provided by PNC, which includes a $25 million subfacility for the issuance of letters of credit ("**Letters of Credit**")

8.    As of the Petition Date, there is approximately $255.8 million of principal amount of loans outstanding under the Credit Facility, comprised of:  (a) approximately $56.7 million of principal amount of loans outstanding under the RCF Facility, plus approximately $13 million of Letters of Credit that have been drawn, (b) approximately $24.1 million of principal amount of loans outstanding under the Term Loan A Facility, and (c) approximately $175 million of principal

---

[3]    Pursuant to the *Second Amendment and Waiver to Financing Agreement*, dated November 20, 2019 (the "**Second Amendment to the Credit Agreement**"), between Borden and PNC, the RCF Facility was temporarily increased from $60 million to $70 million through February 18, 2020.  Subject to availability under the borrowing base, the total available amount to be drawn down under the RCF Facility, inclusive of letter of credit amounts, is $70 million.  For the avoidance of doubt, the principal amounts under the RCF Facility exclude (i) committed (but undrawn) Letters of Credit against the RCF Facility in the amount of $12.6 million and (ii) $500,000 for lease liabilities in connection with the Debtors' corporate office.

amount of loans outstanding under the Term Loan B Facility, plus accrued and unpaid interest, fees, expenses, and all other obligations payable under the Loan Documents (as defined in the Credit Agreement) (collectively, the "**Prepetition Loan Obligations**").[4]

## B.    Prepetition Liens and Collateral

9.    The Loan Parties and the Collateral Agent are parties to that certain Pledge and Security Agreement, dated as of July 6, 2017 (as amended, modified, restated, amended and restated, and/or supplemented from time to time, the "**Security Agreement**"), and the other Security Documents (as defined in the Credit Agreement).  As security for their obligations under the Loan Documents, the Loan Parties granted to the Collateral Agent, for the benefit of the Prepetition Secured Parties, a (a) security interest in and lien on outstanding Equity Interests (as defined in the Security Agreement) and indebtedness owned by the Debtors or in which the Debtors have an interest, and (b) security interest in substantially all of the Debtors' other personal property and fixtures (subject to customary exclusions) (collectively, the "**Prepetition Collateral**"), including cash collateral (as defined in section 363(a) of the Bankruptcy Code, "**Cash Collateral**," and the security interests in and liens on the Prepetition Collateral, the "**Prepetition Liens**").[5]

10.    In connection with the Credit Agreement, certain of the Lenders, the Administrative Agent and the Collateral Agent entered into that certain Agreement Among Lenders, dated as of July 6, 2017 (as amended, modified, restated, amended and restated, and/or supplemented from

---

[4]    Certain of the Prepetition Loan Obligations under the RCF Facility and Term Loan A Facility are also evidenced by Notes (as defined in the Credit Agreement).

[5]    Certain of the equipment used by the Debtors is owned by PNC Equipment Finance, LLC (the "**Lessor**") and is leased by the Debtors pursuant to that certain Master Lease Agreement, dated as of August 15, 2019 (as amended, restated, supplemented, or otherwise modified from time to time, the "**Master Lease Agreement**"), by and among Lessor and Borden Diary Company of Texas, LLC as lessee.  The Debtors have not drawn any amounts in connection with the Master Lease Agreement

time to time, the "**AAL**").  The AAL sets forth certain of the Lenders' respective rights and obligations under the Credit Agreement.

### Reserve Account

11.     Prior to the Petition Date, the Company made periodic payments pursuant to settlement agreements they entered into with respect to withdrawal liabilities relating to two pension plans: (i) Central States, Southeast and Southwest Areas Pension Fund ("**Central States**"), which was terminated in 2014; and (ii) the Retail, Wholesale and Department Store International Union (the "**RWDSU**" and together, the "**Pension Plans**"), which was terminated in 2016.

12.     In 2017, the Company and certain of its subsidiaries entered into a *Reorganization and Subscription Agreement* (as amended, modified, restated, amended and restated, and/or supplemented from time to time, the "**2017 RSA**"), pursuant to which the Company reorganized under a new holding company and the existing equity holder sold a portion of the equity to a new investor. Following consummation of the 2017 RSA (together with the transactions consummated in connection therewith, the "**Restructuring**"), Borden and its sixteen direct and indirect subsidiaries are each wholly-owned, directly or indirectly, by Holdings.

13.     In connection with the transaction, the Company established a special purpose account (the "**Reserve Account**") funded with a $30 million deposit.  The Reserve Account was established to enable the Company to continue to fund payments to Central States and RWDSU— principally, the monthly installments of $185,225 payable by the Company to Central States and quarterly installments of approximately $6,000 payable by the Company to RWDSU pursuant to the settlement agreements referred to above. The terms governing establishment of the Reserve Account were set forth in the principal agreement memorializing the transaction in the 2017 RSA.

14.     As of December 31, 2019, the cash, cash equivalents and securities on deposit in the Reserve Account (*i.e.*, the Reserve Account Cash), had a value of approximately $26.6 million.

15.     The Reserve Account constitutes property of the Debtors' estates pursuant to section 541(a) of the Bankruptcy Code and is not encumbered by any liens, security interests or other encumbrances.  To the contrary, the Loan Documents *specifically exclude* the Reserve Account from the Prepetition Collateral.[6]  Similarly, Central States and RWDSU do not have liens on or security interests in the Reserve Account.  The account was established in 2017, several years after the Company began making payments to Central States and RWDSU, and it was established pursuant to the 2017 RSA, an agreement to which Central States and RWDSU are not parties.

16.     The cash and securities in that account are available for use by the Debtors during these Chapter 11 Cases, and that access is absolutely critical to the Debtors' reorganization efforts.

**The Debtors' Immediate Need to Use Cash Collateral and Reserve Account Cash**

17.     In addition to the Reserve Account Cash, the Debtors further seek authority to use Cash Collateral on a non-consensual basis.  While access to the Reserve Account is critical, the Debtors also need the ability to use postpetition collections to continue to operate their business in the ordinary course.  At this time, the Debtors do not have an agreement with their Lenders to provide debtor-in-possession financing, and the Debtors believe that, given the significant amount of secured debt on the Company, no third-party lender will provide such financing on an unsecured, junior or *pari passu* basis.  *See* 11 U.S.C. § 364.  Similarly, given the unsustainable level of secured debt, it is not realistic to expect that the Lenders would consent to being primed by a third-party DIP loan.

---

[6]     The Credit Agreement's definition of "Cash Management Accounts" expressly excludes the Reserve Account (referred to therein as the "DC Account").  Likewise, the Security Agreement's definition of "Excluded Property" includes "(h) any deposit account excluded from the definition of "Cash Management Accounts" in the [Credit Agreement]."   In addition, Section 2 of the Security Agreement, "Grant of Security Interest," states "[n]otwithstanding anything herein to the contrary, the term "Collateral" shall not include Excluded Property."

18.     The Debtors cannot operate without access to cash—both Cash Collateral <u>and</u> the Reserve Account Cash—and failure to obtain access now will cause immediate and irreparable harm to the Debtors, their customers, suppliers, employees, and other creditors and parties in interest.

19.     The Debtors propose to use Cash Collateral and the Reserve Account pursuant to the Budget attached to the Interim Order as **<u>Exhibit 1</u>**, subject to certain variances set forth therein.

20.     As adequate protection for their proposed use of Cash Collateral as set forth above, the Debtors propose to provide the following to the Prepetition Secured Parties:

    a.     replacement liens and superpriority administrative claims for any diminution in value of the Prepetition Secured Parties' Prepetition Collateral;

    b.     monthly cash interest payments on the Revolving Loans and Term Loan A Loans, all held by PNC, at the applicable non-default contract rate; and

    c.     certain reporting obligations.

**<u>Bankruptcy Rule 4001 and Local Rule 4001–2 Concise Statement:</u>**[7]

21.     Pursuant to Bankruptcy Rules 4001(b)(1) and (d) and Local Rule 4001-2(a)(ii), the Debtors submit the following concise statement of the material terms of the Interim Order:

---

[7]     Any summary of the terms of the Interim Order contained in this Motion is qualified in its entirety by reference to the provisions of the Interim Order.  To the extent there is a conflict between the Motion and the Interim Order, the Interim Order shall control. The Debtors reserve the right to supplement the statements made herein.

25813856.1

| Summary of Material Terms | | ¶ |
|---|---|---|
| **Entities with an Interest in Cash Collateral** <br> *Bankruptcy Rule 4001(b)(1)(B)(i)* | PNC Bank, National Association, as Administrative Agent, Collateral Agent and L/C Issuer, and the Lenders pursuant to the Loan Documents. | ¶ G |
| **Purposes for Use of Cash Collateral** <br> *Bankruptcy Rule 4001(b)(1)(B)(ii)* | To avoid immediate and irreparable harm to their businesses, the Debtors request access to Cash Collateral on an interim and final basis to fund the operation of their businesses in the ordinary course postpetition, as well as the administrative costs of these Chapter 11 Cases, as set forth in the Budget. | ¶ I, 2 |
| **Budget** <br> *Bankruptcy Rule 4001(b)(1)(B)(ii)* | A 13-week budget (the "**Budget**") setting forth the Debtors' projected cash receipts and disbursements on a consolidated basis for the period commencing on the Petition Date, which is attached as **Exhibit 1** to the Interim Order. | ¶ 2, 5 |
| **Duration of Use of Cash Collateral/ Termination Events/ Relief from Stay** <br> *Bankruptcy Rule 4001(b)(1)(B)(iii), Local Rule 4001–2(a)(ii)* | The Debtors' right to use Cash Collateral pursuant to the Interim Order shall terminate (the date of any such termination, the "**Termination Date**") on the earlier to occur of any of the events set forth below (each such event, a "**Termination Event**"), subject in certain instances, to notice requirements: <br><br> 1. the failure of the Debtors to abide by the material terms, covenants, and conditions of the Interim Order or the Budget (subject to any permitted variances); <br><br> 2. the use of Cash Collateral for any purpose not authorized by the Interim Order; <br><br> 3. the dismissal of any of these Chapter 11 Cases, the conversion of any of these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, or the appointment in any of these Chapter 11 Cases of a trustee or examiner with expanded powers; or <br><br> 4. an order of the Court is entered (other than the Final Order) reversing, staying, vacating, or otherwise modifying in any material respect the terms of the Interim Order. <br><br> The automatic stay provisions of section 362 of the Bankruptcy Code are hereby modified to permit the Debtors to implement and perform the terms of the Interim Order. | ¶ 8 |

| | | |
|---|---|---|
| **Proposed Adequate Protection**<br>*Bankruptcy Rule 4001(b)(1)(B)(iv), Local Rule 4001–2(a)(ii)* | As proposed adequate protection for the interests of the Prepetition Secured Parties in the Prepetition Collateral, solely to the extent of, and in an aggregate amount equal, in each case, to, the Diminution in Value (as defined in Paragraph 4 of the Interim Order) of such interests, the Debtors are proposing to offer the following to the Collateral Agent: | ¶ 4 |
| | 1.  Replacement Liens: Replacement liens (the "**Adequate Protection Liens**," and the property securing such liens, the "**Replacement Collateral**") on all of the Debtors' postpetition property which, but for the commencement of the Chapter 11 Cases, would constitute Prepetition Collateral, subject and subordinate only to (i) the Carve-Out (as defined herein), (ii) any Prepetition Permitted Liens (as defined in the Interim Order) that exist on and are legal, valid, binding, enforceable, perfected, and non-avoidable as of the Petition Date and are permitted to be senior to the Prepetition Liens (as applicable) pursuant to applicable Loan Documents, and (iii) any Prepetition Permitted Liens in existence immediately prior to the Petition Date that are legal, valid, enforceable, binding, and non-avoidable and are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, and which are permitted to be senior to the Prepetition Liens pursuant to applicable Loan Documents, in each case not including the Prepetition Liens or the Adequate Protection Liens (such liens described in clauses (ii) and (iii), collectively, and not including any Prepetition Liens or Adequate Protection Liens, the "**Senior Third Party Prepetition Permitted Liens**"); | |
| | 2.  Superpriority Claims: Pursuant to the Final Order and subject only to the Carve-Out, superpriority claims as provided for in section 507(b) of the Bankruptcy Code (the "**Adequate Protection Superpriority Claims**") payable from and having recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof, including proceeds of Avoidance Actions (as defined herein) or property recovered under such Avoidance Actions whether by judgment, settlement, or otherwise; | |
| | 3.  Adequate Protection Payments: Cash payment of all interest, fees, and other amounts (other than principal) accrued after the Petition Date) in respect of the Revolving Loans and Term Loan A Loans, which amounts shall accrue and be payable at the rates and times provided for in such Loan Documents at the non-default contract rate. | |
| **Carve-Out**<br>*Bankruptcy Rule 4001(b)(1)(B)(iii)* | The Interim Order provides a "**Carve-Out**" of certain statutory fees and allowed professional fees of the Debtors and any statutory committee of unsecured creditors (a "**Committee**") appointed pursuant to section 1103 of the Bankruptcy Code which, upon the occurrence of a Carve-Out Event (as defined in the Interim Order), is subject to a Post-Carve-Out Notice Cap (as defined in the Interim Order) of $2,500,000, all as detailed in the Interim Order.  The reasonable fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code are capped at $50,000. | ¶ 7 |

| Local Rule 4001-2 Concise Statements | | Location |
|---|---|---|
| **Cross-Collateralization** *Local Rule 4001–2(a)(i)(A)* | The Interim Order does not provide for cross-collateralization, other than replacement liens as adequate protection**.** | N/A |
| **Stipulations** *Local Rule 4001–2(a)(i)(B)* | The Interim Order does not set forth any stipulations. | N/A |
| **Effect of Stipulations** *Local Rule 4001–2(a)(i)(B)* | The Interim Order does not set forth any stipulations. | N/A |
| **Section 506(c) Waiver** *Local Rule 4001–2(a)(i)(C)* | The Interim Order does not provide for a section 506(c) waiver. | N/A |
| **Liens on Chapter 5 Causes of Action** *Local Rule 4001–2(a)(i)(D)* | The Interim Order does not provide for liens on the Debtors' claims and causes of action arising under sections 502(d), 544, 545, 547, 548, 549, 550, or 553 of the Bankruptcy Code (collectively, the "**Avoidance Actions**"). | N/A |
| **Provisions Deeming Prepetition Debt to be Postpetition Debt** *Local Rule 4001–2(a)(i)(E)* | The Interim Order does not deem prepetition secured debt to be postpetition debt or use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt. | N/A |
| **Disparate Treatment of Professionals Under Carve-Out** *Local Rule 4001–2(a)(i)(F)* | The Interim Order contains no provision for disparate treatment for Committee professionals, if any, with respect to the Carve-Out. | ¶ 7 |
| **Non-Consensual Priming Liens** *Local Rule 4001–2(a)(i)(G)* | The Interim Order does not provide for non-consensual priming of any existing secured lien. | N/A |
| **Section 552(b)(1) Waiver** *Local Rule 4001–2(a)(i)(H)* | The Interim Order does not provide for a section 552(b)(1) waiver. | N/A |
| **Releases** *Local Rule 4001–2(a)(ii)* | The Interim Order does not provide for any releases. | N/A |

**Basis for Relief Requested**

**A.    The Debtors' Use of Cash Collateral Is Necessary**

22.    A debtor's use of property of the estate, including cash collateral, is governed by section 363 of the Bankruptcy Code.  Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor may use cash collateral if: "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of [section 363]."  11 U.S.C. § 363(c)(2).

23.    It is well-established that a bankruptcy court should, whenever possible, resolve issues in favor of allowing a debtor to continue its business as a going concern.  Courts have recognized that "[a] debtor, attempting to reorganize a business under Chapter 11, clearly has a compelling need to use 'cash collateral' in its effort to rebuild.  Without the availability of cash to meet daily operating expenses . . . the congressional policy favoring rehabilitation over economic failure would be frustrated."  *Chrysler Credit Corp. v. Ruggiere (In re George Ruggiere Chrysler-Plymouth, Inc.)*, 727 F.2d 1017, 1019 (11th Cir. 1984); *see also N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 528 (1984) ("The fundamental purpose of reorganization is to prevent a debtor from going into liquidation, with an attendant loss of jobs and possible misuse of economic resources.").

24.    Accordingly, courts regularly authorize the use of cash collateral to enhance or preserve the debtor's going concern value.  *See, e.g.*, *In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) ("[T]here is no question that the property would be improved by the proposed renovations and that an increase in value will result.  In effect, a substitution occurs in that the money spent for improvements will be transferred into value.  This value will serve as adequate protection for [the creditor's] secured claim.").

25.    It is essential to the Debtors' reorganization prospects and the preservation of going concern value that they have sufficient funds to operate in the ordinary course, and at a level that

is on par or as close as possible to prepetition performance.  Absent the use of Cash Collateral, the Debtors will not have sufficient working capital to: (a) make payments to employees, vendors, or suppliers, (b) satisfy operating costs, and (c) fund the administrative costs of these Chapter 11 Cases.  The ability to satisfy these expenses when due is essential to avoid immediate and irreparable harm to the Debtors' estates.  In the normal course of business, the Debtors use cash on hand and cash flow from operations and other sources to fund working capital and capital expenditures, and operate and maintain their business and properties.  Absent immediate access, the Debtors will not have adequate unencumbered cash on hand to pay these critical expenses.

**B.**     **The Proposed Adequate Protection is Reasonable and Appropriate**

26.     Section 363(e) of the Bankruptcy Code further provides that "on request of an entity that has an interest in property . . . to be used, sold or leased, by the trustee, the court . . . shall prohibit or condition such use, sale or lease as is necessary to provide adequate protection of such interest."  11 U.S.C. § 363(e).  Further, section 362(d)(1) of the Bankruptcy Code provides for adequate protection of interests in property due to the imposition of the automatic stay.  *See* 11 U.S.C. § 362(d)(1); *see also In re Cont'l Airlines*, 91 F.3d 553, 556 (3d Cir. 1996).

27.     The Bankruptcy Code does not expressly define "adequate protection."  Section 361 of the Bankruptcy Code, however, provides a non-exhaustive list of examples of adequate protection, including replacement liens and administrative priority claims.  *See* 11 U.S.C. § 361. Generally, courts decide what constitutes adequate protection on a case-by-case basis.  *See, e.g.*, *Resolution Trust Corp. v. Swedeland Dev. Grp., Inc. (In re Swedeland Dev. Grp., Inc.)*, 16 F.3d 552, 564 (3d Cir. 1994) ("[A] determination of whether there is adequate protection is made on a case by case basis."); *In re N.J. Affordable Homes Corp.*, No. 05-60442, 2006 WL 2128624, at *14 (Bankr. D.N.J. June 29, 2006) ("The term 'adequate protection' is intended to be a flexible

concept."); *In re Columbia Gas Sys., Inc.*, Nos. 91-803, 91-804, 1992 WL 79323, at *2 (Bankr. D. Del. Feb. 18, 1992) (emphasizing that "the varying analyses and results contained in the . . . slew of cases demonstrate that what interest is entitled to adequate protection and what constitutes adequate protection must be decided on a case-by-case basis"); *see also In re Dynaco Corp.*, 162 B.R. 389, 394 (Bankr. D.N.H. 1993) (explaining that adequate protection can take many forms and "must be determined based upon equitable considerations arising from the particular facts of each proceeding") (internal citation omitted).

28.     In *Swedeland*, the Third Circuit pointedly noted that the purpose of adequate protection "is to insure that the creditor receives the value for which he bargained prebankruptcy." *In re Swedeland Dev. Grp., Inc.*, 16 F.3d at 564 (quoting *In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir. 1987)); *see also Shaw Indus., Inc. v. First Nat'l Bank of Pa. (In re Shaw Indus., Inc.)*, 300 B.R. 861, 865 (Bankr. W.D. Pa. 2003) ("The purpose of providing 'adequate protection' is to insure that a secured creditor receives in value essentially what he bargained for."); *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986) (noting that the application of adequate protection "is left to the vagaries of each case, but its focus is protection of the secured creditor from diminution in the value of its collateral during the reorganization process") (citation omitted), *rev'd on other grounds*, 89 B.R. 336 (S.D.N.Y. 1988).  The Third Circuit has held that adequacy, "depends directly on how effectively it compensates the secured creditor for loss of value" caused by the priming lien granted to the new lender.  *In re Swedeland Dev. Grp., Inc.*, 16 F.3d at 564 (quoting *In re Am. Mariner Inds., Inc.*, 734 F.2d 426, 432 (9th Cir. 1984)).

29.     The Debtors propose to grant the following adequate protection to the Prepetition Secured Parties, solely to the extent of any Diminution in Value resulting from use of the

Prepetition Collateral after the Petition Date, and the imposition of the automatic stay pursuant to

section 362 of the Bankruptcy Code (the "**Adequate Protection Obligations**"):

- replacement liens and superpriority administrative claims for any diminution in value of the Prepetition Secured Parties' Prepetition Collateral;
- monthly cash interest payments on the Revolving Loans and Term Loan A Loans at the applicable non-default contract rate; and
- certain reporting obligations.

30.     The Debtors submit that the proposed adequate protection will sufficiently protect

the Prepetition Secured Parties from any Diminution in Value of the Prepetition Collateral during

the pendency of these proceedings.  Notwithstanding anything in the Interim Order or the Final

Order to the contrary, the Debtors reserve the right to argue that, to the extent that any cash

payment made under the Interim Order or the Final Order, as applicable, as adequate protection to

the Prepetition Secured Parties is not allowed under section 506(b) of the Bankruptcy Code, such

payment should be recharacterized and applied as payment of principal amounts owed under the

Credit Agreement and shall permanently reduce the Prepetition Loan Obligations accordingly.

31.     Without access to Cash Collateral, the Debtors will be unable to continue operating.

The Debtors believe the Adequate Protection Obligations are necessary and sufficient for the

Debtors to continue to use Cash Collateral.  Accordingly, the Debtors submit that the adequate

protection is: (a) fair and reasonable, (b) necessary to satisfy the requirements of sections 363(c)(2)

and 363(e) of the Bankruptcy Code, and (c) in the best interests of the Debtors and their estates.

**C.      The Debtors Should be Authorized to Use the Reserve Account Cash**

32.     The Debtors' use of the Reserve Account Cash, which is not encumbered by liens

or security interests, is permitted by sections 363(b)(1) and 105(a) of the Bankruptcy Code.

Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice

and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the

estate." 11 U.S.C. § 363(b)(1).  Section 105(a) of the Bankruptcy Code further provides that the

Court may "issue any order . . . that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).  Where there is a valid business justification for using property outside the ordinary course of business, the law presumes that, "'in making a business decision the directors of a corporation acted on an informed basis, in good faith [,] and in the honest belief that the action taken was in the best interests of the company.'"  *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

33.    The Debtors submit that use of the Reserve Account Cash reflects a reasonable exercise of their business judgment.  Courts generally will accord significant deference to a debtor's business judgment to use or sell assets outside the ordinary course of business.  *See, e.g.*, *In re W.A. Mallory Co., Inc.,* 214 B.R. 834, 836–37 (Bankr. E.D. Va. 1997) ("[G]reat deference is given to a business in determining its own best interests."); *see also In re Global Crossing, Ltd.,* 295 B.R. 726, 744 n.58 (Bankr. S.D.N.Y. 2003) ("[T]he Court does not believe that it is appropriate for a bankruptcy court to substitute its own business judgment for that of the [d]ebtors and their advisors, so long as they have satisfied the requirements articulated in the caselaw.").  Absent use of the Reserve Account Cash, the Debtors will not be able to fund these Chapter 11 Cases without costly debtor-in-possession financing, which the Debtors have no certainty of obtaining. Additionally, the inability to utilize the Reserve Account Cash to fund these Chapter 11 Cases will impede the Debtors' ability to operate in chapter 11 and successfully restructure.

**D.    The Scope of the Proposed Carve-Out Is Reasonable and Appropriate**

34.    The Adequate Protection Obligations are subject to the Carve-Out.  Without it, the Debtors and other parties in interest may be deprived of certain rights and powers because the services for which such professionals may be paid in these Chapter 11 Cases would be restricted.

25813856.1

*See, e.g.*, *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) (observing that courts insist on carve-outs for professionals representing parties in interest because "[a]bsent such protection, the collective rights and expectations of all parties-in-interest are sorely prejudiced"). The Carve-Out does not directly or indirectly deprive the Debtors' estates or other parties in interest of possible rights and powers. Additionally, the Carve-Out protects against administrative insolvency during the course of these Chapter 11 Cases by ensuring that assets remain for payment of the Clerk of the Court, U.S. Trustee fees, and professional fees of the Debtors and a Committee.

**E.      Interim Relief Should Be Granted**

35.     Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use cash collateral pursuant to section 363 of the Bankruptcy Code may not be commenced earlier than 14 days after the service of such motion. Upon request, however, the court is authorized to conduct an interim expedited hearing on the motion at which it may authorize a debtor to use cash collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate pending a final hearing. *See* Fed. R. Bankr. P. 4001(b)(2). Section 363(c)(3) of the Bankruptcy Code authorizes the court to conduct a preliminary hearing and to authorize the use of cash collateral "if there is a reasonable likelihood that the [debtor] will prevail at the final hearing under [section 363(e) of the Bankruptcy Code]." 11 U.S.C. § 363(c)(3).

36.     Pending the Final Hearing, the Debtors require immediate access to Cash Collateral and the Reserve Account Cash to satisfy the day-to-day needs of the Debtors' business operations. Access to liquidity will address any concerns regarding the Debtors' financial health and ability to continue operations in light of these Chapter 11 Cases. The Debtors have an immediate need for liquidity to, among other things, maintain business relationships with their vendors and suppliers, pay payroll and certain benefits, and satisfy other essential working capital and operational needs,

all of which are required to preserve and maintain the Debtors' going concern value for the benefit of all parties in interest.  In addition, the Budget establishes that the Debtors' use of Cash Collateral and the Reserve Account Cash will not prejudice the Prepetition Secured Parties.

37.    Accordingly, pursuant to section 363(c)(3) of the Bankruptcy Code and Bankruptcy Rule 4001(b), the Debtors request an expedited hearing to consider the Motion and entry of the Interim Order authorizing the Debtors' use of Cash Collateral and the Reserve Account Cash.

**F.    <u>Automatic Stay Should Be Modified on a Limited Basis</u>**

38.    The relief requested herein contemplates a modification of the automatic stay to permit the Debtors to grant certain replacement liens to the Prepetition Secured Parties and perform such acts as may be requested to assure perfection and priority of such liens. Stay modifications of this kind are ordinary and standard features for the use of cash collateral, and in the Debtors' business judgment, are reasonable and fair under the circumstances.

<u>**Bankruptcy Rule 4001(a)(3) Should Be Waived**</u>

39.    The Debtors request a waiver of the stay of the effectiveness of the order approving this Motion under Bankruptcy Rule 4001(a)(3).  Bankruptcy Rule 4001(a)(3) provides, "[a]n order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 4001(a)(3).  As explained above and in the First Day Declaration, the use of Cash Collateral and the Reserve Account Cash is essential to prevent irreparable damage to the Debtors' operations.  Accordingly, ample cause exists to justify the waiver of the fourteen-day stay imposed by Bankruptcy Rule 4001(a)(3), to the extent such stay applies.

### The Requirements of Bankruptcy Rule 6003 Are Satisfied

40.      Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003.   For the reasons discussed above and in the First Day Declaration, authorizing the Debtors to use Cash Collateral and the Reserve Account Cash and granting the other relief requested herein is critical to the Debtors' ability to continue operating with the least amount of disruption as possible following the Petition Date.   Failure to receive such authorization and other relief during the first 21 days of these Chapter 11 Cases would severely disrupt the Debtors' operations at this critical juncture and imperil the Debtors' restructuring.   The relief requested is necessary for the Debtors to operate their businesses in the ordinary course, preserve the ongoing value of the Debtors' operations and maximize the value of their estates for the benefit of all stakeholders.   Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support the relief requested herein.

### Reservation of Rights

41.      Nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or shall be construed as: (a) an admission as to the validity of any claim against a Debtor entity; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise)

satisfied pursuant to this Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of any or all such liens.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

42.     As provided herein, and to implement the foregoing successfully, the Debtors request that the Interim Order and the Final Order include a finding that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### Notice

43.     Notice of this Motion will be provided to: (a) the U.S. Trustee, (b) the holders of the thirty (30) largest unsecured claims against the Debtors on a consolidated basis, (c) the Office of the United States Attorney General for the District of Delaware, (d) the Internal Revenue Service, (e) the Securities and Exchange Commission, (f) financial institutions at which the Debtors maintain deposit accounts, (g) counsel to ACON Dairy Investors, L.L.C., (h) counsel to New Laguna, LLC, (i) counsel to the Agent, RCF Facility Lenders, and Term Loan A Facility Lenders, (j) counsel to the Term Loan B Facility Lenders, (k) all other parties asserting a lien on or a security interest in the assets of the Debtors to the extent reasonably known to the Debtors, and (l) any other party entitled to notice pursuant to Local Rule 9013-1(m).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

44.     No prior request for the relief sought in this Motion has been made to this or any other court.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request that this Court enter the Interim Order

and Final Order granting the relief requested herein and provide such other relief as this Court

deems appropriate under the circumstances.

Dated:  January 6, 2020
      Wilmington, Delaware

                Respectfully submitted,

                */s/ M. Blake Cleary*
                YOUNG CONAWAY STARGATT & TAYLOR, LLP
                M. Blake Cleary (No. 3614)
                Kenneth J. Enos (No. 4544)
                Elizabeth S. Justison (No. 5911)
                Betsy L. Feldman (No. 6410)
                Rodney Square
                1000 North King Street
                Wilmington, Delaware 19801
                Telephone:  (302) 571-6600
                Facsimile:  (302) 571-1253
                mbcleary@ycst.com
                kenos@ycst.com
                ejustison@ycst.com
                bfeldman@ycst.com

                -and-

                ARNOLD & PORTER KAYE SCHOLER LLP
                D. Tyler Nurnberg (*pro hac vice* admission pending)
                Seth J. Kleinman (*pro hac vice* admission pending)
                Sarah Gryll (*pro hac vice* admission pending)
                70 West Madison Street, Suite 4200
                Chicago, IL 60602-4231
                Telephone: (312) 583-2300
                Facsimile: (312) 583-2360
                tyler.nurnberg@arnoldporter.com
                seth.kleinman@arnoldporter.com
                sarah.gryll@arnoldporter.com

                *Proposed Co-Counsel to the Debtors and Debtors in Possession*

**Exhibit A**

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| BORDEN DAIRY COMPANY, *et al.*, | Case No. 20-10010 (CSS) |
| Debtors.[1] | (Jointly Administered) |
|  | Ref. Docket No. __ |

**INTERIM ORDER (A) AUTHORIZING USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION, (B) AUTHORIZING USE OF RESERVE ACCOUNT CASH, (C) SCHEDULING A FINAL HEARING, AND (D) GRANTING RELATED RELIEF**

Upon the motion (the "**Motion**")[2] of the above-captioned debtors and debtors and debtors-in-possession (collectively, the "**Debtors**") for entry of an interim order (this "**Interim Order**") and a Final Order (as defined herein), pursuant to sections 105, 361, 362, 363, 506(a), 507(b), 552 and 553 of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 4001, 6003, 6004, 7062 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2002-1(b), 4001-2 and 9013-1(m) of the Local Rules of

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Borden Dairy Company (1509); Borden Dairy Holdings, LLC (8504); National Dairy, LLC (9109); Borden Dairy Company of Alabama, LLC (5598); Borden Dairy Company of Cincinnati, LLC (1334); Borden Transport Company of Cincinnati, LLC (3462); Borden Dairy Company of Florida, LLC (5168); Borden Dairy Company of Kentucky, LLC (7392); Borden Dairy Company of Louisiana, LLC (4109); Borden Dairy Company of Madisonville, LLC (7310); Borden Dairy Company of Ohio, LLC (2720); Borden Transport Company of Ohio, LLC (7837); Borden Dairy Company of South Carolina, LLC (0963); Borden Dairy Company of Texas, LLC (5060); Claims Adjusting Services, LLC (9109); Georgia Soft Serve Delights, LLC (9109); NDH Transport, LLC (7480); and RGC, LLC (0314).  The location of the Debtors' service address is: 8750 North Central Expressway, Suite 400, Dallas, TX 75231.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

25813856.1

Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), seeking, among other things:

(a)      authorization for the Debtors to use Cash Collateral (as defined herein), and any proceeds thereof;

(b)      authorization for the Debtors' to use the proceeds of the Reserve Account (as defined herein) (the "**Reserve Account Cash**");

(c)      authorization to grant, as of the Petition Date (as defined herein), the Adequate Protection Superpriority Claims and Adequate Protection Liens (each as defined herein), to the extent of and as compensation for any Diminution in Value (as defined herein), and to make the Adequate Protection Payments (as defined herein);

(d)      modification by the Court of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Interim Order and the Final Order;

(d)      the scheduling of a final hearing (the "**Final Hearing**") to consider entry of the Final Order granting the relief requested in the Motion on a final basis and approving the form of notice with respect to the Final Hearing and the transactions contemplated by the Motion; and

(e)      waiver of any applicable stay (including under Bankruptcy Rule 6004) and providing for the immediate effectiveness of this Interim Order.

and due and appropriate notice of the Motion and the interim hearing held before the Court on January [___], 2020 (the "**Interim Hearing**") to consider entry of this Interim Order having been provided by the Debtors; and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion; and upon the record made by the Debtors in the Motion, in the *Declaration of Jason Monaco in Support of Chapter 11 Petitions and First Day Motions* (the

"**First Day Declaration**"), and at the Interim Hearing; and the relief requested in the Motion being reasonable, appropriate and in the best interests of the Debtors, their creditors, their estates and all other parties in interest in these Chapter 11 Cases (as defined herein); and the Court having determined that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]**

A.    *Disposition*.  The relief requested in the Motion is hereby granted on an interim basis, on the terms set forth below.  Any objections to the Motion that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled on the merits.  This Interim Order shall become effective immediately upon its entry.

B.    *Petition Date*. On January 5, 2020 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**") with this Court.

C.    *Debtors in Possession*. The Debtors continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No party has requested the appointment of a trustee or examiner in these Chapter 11 Cases, and no committees have been appointed or designated at this time.

D.    *Jurisdiction and Venue.*  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States

---

[3]    In accordance with Bankruptcy Rule 7052, any proposed finding of fact more properly classified as a proposed legal conclusion shall be deemed as such, and any proposed conclusion of law more properly classified as a proposed factual finding shall also be deemed as such.

District Court for the District of Delaware, dated February 29, 2012.  Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  The Court may enter a final order consistent with Article III of the United States Constitution.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The predicates for the relief sought are sections 105, 361, 362, 363, 364 and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001 and 9014, and Local Rule 4001-2.

E.    *Committee Formation*.  As of the date hereof, no official committee of unsecured creditors (with any other statutory committee, a "**Committee**") has been appointed in the Cases.

F.    *Notice*.  On the Petition Date, the Debtors filed the Motion with the Court pursuant to Bankruptcy Rules 2002, 4001 and 9014, and provided notice of the Motion and the Interim Hearing in accordance with the provisions of Local Rule 9013-1(m) to: (a) the Office of the United States Trustee for the District of Delaware, (b) the holders of the thirty (30) largest unsecured claims against the Debtors on a consolidated basis, (c) the Office of the United States Attorney General for the District of Delaware, (d) the Internal Revenue Service, (e) the Securities and Exchange Commission, (f) financial institutions at which the Debtors maintain deposit accounts, (g) counsel to ACON Dairy Investors, L.L.C., (h) counsel to New Laguna, LLC, (i) counsel to the Agent, RCF Facility Lenders, and Term Loan A Facility Lenders, (j) counsel to the Term Loan B Facility Lenders, (k) all other parties asserting a lien on or a security interest in the assets of the Debtors to the extent reasonably known to the Debtors, and (l) any other party entitled to notice pursuant to Local Rule 9013-1(m).  Given the nature of the relief sought in the Motion, the Court concludes that the foregoing notice constitutes due, sufficient and appropriate notice under the circumstances and complies with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002 and 4001(b) and (d), and the Local Rules.

G.    *Prepetition Secured Indebtedness*.

(i)    *Prepetition Credit Facility*.  On July 6, 2017, Borden, as borrower, the other Loan Parties (as defined in the Credit Agreement (as defined herein)) party thereto (together with Borden, the "**Loan Parties**"), each of the lenders from time to time party thereto (the "**Lenders**"), the L/C Issuer (as defined in the Credit Agreement), and PNC Bank, National Association ("**PNC**"), as administrative agent and collateral agent (in such capacity, the "**Collateral Agent**," and in such capacities, collectively, the "**Agent**," and together with the Lenders and the L/C Issuer, the "**Prepetition Secured Parties**"), entered into that certain Financing Agreement (as amended, modified, restated, amended and restated, and/or supplemented from time to time, the "**Credit Agreement**"), which provided the Debtors with a $275 million credit facility (the "**Credit Facility**").  The Credit Facility consists of: (a) a $70 million revolving credit facility (the "**RCF Facility**," and such loans thereunder, the "**Revolving Loans**"), which includes a $25 million subfacility for the issuance of letters of credit ("**Letters of Credit**"), (b) a $30 million term loan A facility (the "**Term Loan A Facility**," and such loans thereunder, the "**Term Loan A Loans**"), and (c) a $175 million term loan B facility (the "**Term Loan B Facility**").

H.    *Necessity of Relief Requested*.  Good cause has been shown for the entry of this Interim Order.  The Debtors have an immediate need to use Cash Collateral and Reserve Account Cash to, among other things, fund the orderly continuation of their businesses, maintain the confidence of their customers and vendors, pay their operating expenses, and preserve their going-concern value, consistent with the Budget.  In the absence of the availability of such liquidity in accordance with the terms hereof, the continued operation of the Debtors' businesses would not be possible, and serious and irreparable harm to the Debtors, their estates and their creditors would occur.  The terms for the Debtors' use of Cash Collateral and the Reserve Account Cash pursuant to this Interim Order are fair and reasonable, reflect the Debtors' exercise of prudent business

judgment consistent with their fiduciary duties, and constitute reasonably equivalent value and fair consideration. The Debtors have requested entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and (d). Absent granting the relief sought by this Interim Order, the Debtors' estates would be immediately and irreparably harmed. The use of Cash Collateral in accordance with this Interim Order is therefore in the best interest of the Debtors and their estates, their creditors and other parties in interest.

      I.    *Use of Cash Collateral*. All Cash Collateral, all proceeds of the Prepetition Collateral, and the Reserve Account Cash shall only be used for: (i) working capital; (ii) other general corporate purposes of the Debtors; (iii) the satisfaction of the costs and expenses of administering the Chapter 11 Cases, including, without limitation, payment of any prepetition obligations that are necessary to preserve the value of the Debtors' estates to the extent approved by the Court; and (iv) Adequate Protection Payments, and for no other purpose, and shall only be used and/or applied in accordance with the terms and conditions of this Interim Order, including, without limitation, the Budget (subject to any Permitted Variance (as defined herein)).

      J.    *Adequate Protection for Prepetition Secured Parties*. The Collateral Agent and other Prepetition Secured Parties are entitled to adequate protection as and to the extent set forth herein pursuant to sections 361, 362 and 363 of the Bankruptcy Code. Based on the Motion, the First Day Declaration, and the evidence presented at the Interim Hearing, the proposed adequate protection and the use of the Prepetition Collateral (including Cash Collateral) are fair and reasonable and reflect a prudent exercise of the Debtors' business judgment.

      K.    *Need for Immediate Entry of this Interim Order*. The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2). The permission granted herein to use Cash Collateral (and provide adequate protection therefor) and Reserve

Account Cash is necessary, essential, and appropriate to avoid immediate and irreparable harm to the Debtors.  The Court concludes that entry of this Interim Order is in the best interests of the Debtors' estates and creditors as its implementation will, among other things, allow the Debtors to preserve and maintain the value of their assets and businesses and enhance the Debtors' prospects for a successful reorganization.

Based upon the foregoing findings and conclusions, and upon the record made before the Court at the Interim Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ADJUDGED AND ORDERED** that:

1.      *Motion Granted*.  The Motion is granted on an interim basis in accordance with the terms and conditions set forth in this Interim Order.  Any objections to the Motion with respect to entry of this Interim Order to the extent not withdrawn, waived or otherwise resolved, and all reservations of rights included therein, are hereby denied and overruled.

2.      *Authorization to Use Cash Collateral*.  The Debtors are authorized to use Cash Collateral as set forth in this Interim Order commencing from the Petition Date through and including (but not beyond) any Termination Date (as defined herein), subject to the terms and conditions of this Interim Order and in accordance with the 13-week cash flow forecast of cash receipts and disbursements of the Debtors on a consolidated basis for the period commencing on the Petition Date, attached as **Exhibit 1** to this Interim Order (the "**Initial Budget**," and as such budget may be updated and/or modified from time to time by the Debtors as provided in Paragraph 5 hereto, the "**Budget**").

3.      *Authorization to Use Reserve Account Cash*.  The Debtors are authorized to use the Reserve Account Cash, subject to the terms and conditions of this Interim Order and in accordance with the Initial Budget or Budget, as applicable.

4.        *Adequate Protection for Prepetition Secured Parties*.  The Prepetition Secured

Parties are entitled, pursuant to sections 361, 362, 363(c)(2) and 363(e) of the Bankruptcy Code,

to adequate protection of their interests in the Cash Collateral, solely to the extent of the

postpetition diminution in value of such Prepetition Secured Party's interest in the Cash Collateral

resulting from, among other things, the use, sale or lease by the Debtors of Cash Collateral and the

imposition or enforcement of the automatic stay pursuant to section 362(a) of the Bankruptcy Code

(collectively, "**Diminution in Value**").  The Collateral Agent, for the benefit of itself and the other

Prepetition Secured Parties, shall receive the following (collectively, the "**Adequate Protection**

**Obligations**"):

(a)        *Replacement Liens*.  The Collateral Agent, for the benefit of itself and the

other Prepetition Secured Parties, is hereby granted, pursuant to sections 361 and 363(e) of the

Bankruptcy Code, replacement security interests in and liens upon  all of the Debtors' postpetition

property (the "**Adequate Protection Liens**") which, but for the commencement of the Chapter 11

Cases, would constitute Prepetition Collateral (the "**Replacement Collateral**"); *provided*, that the

Adequate Protection Liens shall in each case be subject and subordinate only to (i) the Carve-Out

(as defined herein), (ii) any Prepetition Permitted Liens (as defined herein) that exist on, and are

legal, valid, binding, enforceable, perfected, and non-avoidable, as of the Petition Date and are

permitted to be senior to the Prepetition Liens (as applicable) pursuant to applicable Loan

Documents (as defined in the Credit Agreement) or applicable law, and (iii) any Prepetition

Permitted Liens in existence immediately prior to the Petition Date that are legal, valid,

enforceable, binding and non-avoidable, and are perfected after the Petition Date as permitted by

section 546(b) of the Bankruptcy Code, and which are permitted to be senior to the Prepetition

Liens pursuant to applicable Loan Documents (as defined in the Credit Agreement), and in each

case not including the Prepetition Liens or the Adequate Protection Liens (such liens described in clauses (ii) and (iii), collectively, and not including any Prepetition Liens or Adequate Protection Liens, the "**Senior Third Party Prepetition Permitted Liens**").

(b)    *Adequate Protection Superpriority Claims*.    The Collateral Agent, for the benefit of itself and the other Prepetition Secured Parties, is hereby granted, subject only to payment of the Carve-Out, an allowed superpriority administrative expense claim (each an "**Adequate Protection Superpriority Claim**" and, collectively, the "**Adequate Protection Superpriority Claims**") as provided for in section 507(b) of the Bankruptcy Code, payable from and having recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof, including proceeds of Avoidance Actions or property recovered under such Avoidance Actions whether by judgment, settlement, or otherwise.    Subject only to the Carve-Out, and except as provided below, the Adequate Protection Superpriority Claims shall have priority over any and all administrative expenses, adequate protection claims and other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under the Bankruptcy Code.    Other than the Carve-Out, no cost or expense of administration of the Chapter 11 Cases shall be senior to, or *pari passu* with, any of the Adequate Protection Superpriority Claims.

(c)    *Adequate Protection Payments*.    The respective Prepetition Secured Parties shall, as set forth below, receive from the Debtors the following payments (collectively, the "**Adequate Protection Payments**"): the Debtors shall pay in full, in cash and in immediately available funds (x) promptly upon the entry of this Interim Order, all accrued and unpaid amounts (whether accrued prior to or after the Petition Date) in respect of the following, and (y) thereafter,

as and when such payments would have come due under the Credit Agreement had the Chapter 11 Cases not been commenced: all interest, fees, and other amounts (other than principal), as applicable, which shall accrue and be payable at the rates and times provided for in the Credit Agreement [on the Revolving Loans and the Term Loan A Loans]; *provided*, that all interest shall be paid at the non-default contract rate; *provided further*, that any payments set forth in this clause (c) may in each case be applied to the applicable Prepetition Secured Parties' allowed prepetition claim as payments of principal in the event that it is determined by final non-appealable order of a court of competent jurisdiction that the applicable Prepetition Secured Party is not entitled to the Adequate Protection Payments it received as adequate protection for the Diminution in Value of its respective interests in the Prepetition Collateral and that such Prepetition Secured Party is determined to be undersecured.

(d)     Without limiting any other provisions of this Interim Order, any and all Adequate Protection Payments that remain unpaid shall be paid in full in cash on the effective date of the Debtors' confirmed chapter 11 plan.

5.     *Budget; Reporting.*

(a)     No later than the Monday of each calendar week commencing on the first Monday following the first full week after the Petition Date, the Debtors shall deliver to the Agent and its counsel an updated Budget.

(b)     No later than the Monday of each calendar week commencing on the first Monday following the first full week, the Debtors shall deliver to the Agent a variance report comparing, on a line item basis, actual results to the Budget for the previous individual week on a weekly, cumulative, and four-week trailing basis.

(c)     The Debtors shall test the Budget on the Monday following the first four (4) full weeks on a four-week trailing basis (each such four week period, the "**Budget Period**") and every other Monday thereafter. So long as no Termination Event  has occurred with respect to Cash Collateral, the Debtors shall be authorized (i) to use Cash Collateral, and (ii) to use the Reserve Account Cash, in each case in accordance with the Budget and this Interim Order in an amount that would not cause either (x) actual disbursements to be more than twenty-five percent (25%) in excess of the disbursements included in the Budget for any Budget Period, or (y) actual receipts (excluding asset sale proceeds other than ordinary course sales of inventory) to be more than twenty-five percent (25%) below the receipts (excluding asset sale proceeds other than ordinary course sales of inventory) included in the Budget for any Budget Period (each, a "**Permitted Variance**").

6.     *Reservation of Rights*.  Notwithstanding anything herein to the contrary, the Debtors reserve the right to argue that, to the extent that any cash payment made hereunder as adequate protection to the Prepetition Secured Parties is not allowed under section 506(b) of the Bankruptcy Code, such payment should be recharacterized and applied as payment of principal owed under the Credit Agreement and shall permanently reduce the Prepetition Loan Obligations accordingly, and the Prepetition Secured Parties reserve the right to object to any such argument.

7.     *Adequate Protection Lien Perfection*.  This Interim Order shall be sufficient and conclusive evidence of the validity, perfection and priority of the Adequate Protection Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect the Adequate Protection Liens or to entitle the Adequate Protection Liens to the priorities granted herein.  Notwithstanding the foregoing,

the Collateral Agent (on behalf of itself and the other Prepetition Secured Parties) may, in its sole discretion, file such financing statements, mortgages, security agreements, notices of liens and other similar documents, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, security agreements, notices and other agreements or documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of the Chapter 11 Cases.  The Collateral Agent (on behalf of itself and the other Prepetition Secured Parties) may, in its sole discretion, file a photocopy of this Interim Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which any Debtor has real or personal property and, in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Interim Order.

7.      *Carve-Out*.  As used in this Interim Order, "**Carve-Out**" means the sum of: (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee pursuant to section 1930(a) of title 28 of the United States Code, plus interest at the statutory rate (without regard to the notice set forth in clause (iii) below); (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in clause (iii) below); (iii) to the extent allowed by the Court at any time, whether by interim order, procedural order, final order, or otherwise, all accrued and unpaid fees, costs, and expenses (the "**Allowed Professional Fees**") incurred by persons or firms retained by the Debtors or any Committee pursuant to sections 327, 328, 363 or 1103 of the Bankruptcy Code (collectively, the "**Professionals**") at any time before or on the date of delivery by the Agent of a Carve-Out Trigger

Notice (as defined herein),[4] whether allowed by the Court prior to or after delivery of a Carve-Out

Trigger Notice (the "**Pre-Trigger Date Fees**"); and (iv) after the date of the delivery of the Carve-

Out Trigger Notice (the "**Trigger Date**"), the payment of Professional Fees of Professionals in an

aggregate amount not to exceed $2,500,000 (the amount set forth in this clause (iv) being the

"**Post-Carve-Out Trigger Notice Cap**").  For purposes of the foregoing, "**Carve-Out Trigger**

**Notice**" shall mean a written notice to the Debtors, the U.S. Trustee and counsel for any Committee

delivered by the Agent, which notice may be delivered upon the occurrence of a Termination Date,

in accordance with this Interim Order, stating that the Post-Carve-Out Trigger Notice Cap has been

invoked.  Notwithstanding anything to the contrary in this Interim Order, the Credit Agreement or

otherwise, the liens, security interests, and superpriority claims granted herein (including Adequate

Protection Liens and Adequate Protection Superpriority Claims), the Prepetition Liens, the Senior

Third Party Prepetition Permitted Liens, and any other liens, claims or interests of any person,

shall be subject and subordinate to the Carve-Out.

8.      *Termination Events*.  The Debtors' right to use Cash Collateral shall automatically

terminate (the date of such termination, the "**Termination Date**"), without further notice or court

proceeding, on the earliest to occur of any of the events set forth below (each such event, a

"**Termination Event**"), in each case unless waived in writing by the Agent:

> (a) failure of the Debtors to abide by the material terms, covenants, and
>
> conditions of this Interim Order or the Budget (subject to any Permitted
>
> Variances);

---

[4]      For purposes of this Interim Order, whenever notice is requested or required herein, such notice may be via
electronic mail, unless such other form of notice is specified.

(b) the use of Cash Collateral for any purpose not authorized by this Interim Order;

(c) the dismissal of any of these Chapter 11 Cases, the conversion of any of these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, or the appointment in any of these Chapter 11 Cases of a trustee or examiner with expanded powers; or

(d) an order of the Court is entered (other than the Final Order) reversing, staying, vacating, or otherwise modifying in any material respect the terms of this Interim Order.

9.     *Letters of Credit*. The Debtors shall be authorized to maintain and to renew existing Letters of Credit issued or deemed issued under the RCF Facility prior to the Petition Date on an uninterrupted basis, in accordance with the same practices and procedures as were in effect prior to the Petition Date, in each case subject to the terms of the Credit Agreement, and to take all actions reasonably appropriate with respect thereto.

10.     *Miscellaneous*.

(a)     *Binding Effect*.  The provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in the Chapter 11 Cases, including, without limitation, the Prepetition Secured Parties, the Debtors, and their respective successors and assigns (including any trustee hereinafter appointed or elected for the estate of any Debtor, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the Prepetition Secured Parties and the Debtors and their respective successors or assigns.

(b)     *Modification of Automatic Stay*.  The Debtors are authorized and directed to perform all acts and to make, execute and deliver any and all instruments as may be reasonably necessary to implement the terms and conditions of this Interim Order and the transactions contemplated hereby.  The automatic stay of section 362 of the Bankruptcy Code is hereby modified to permit the Debtors and each of the Prepetition Secured Parties to accomplish the transactions contemplated by this Interim Order.

(c)     *Headings*.  The headings in this Interim Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Interim Order.

(d)     *Effectiveness*.  This Interim Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon entry hereof, and there shall be no stay of execution of effectiveness of this Interim Order.  To the extent that any finding of fact shall be determined to be a conclusion of law, it shall be so deemed and vice versa.

(e)     *No Third Party Rights*.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third-party, creditor, equity holder or any direct, indirect, third-party or incidental beneficiary.

(f)     *Survival of Interim Order*. The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (i) confirming any chapter 11 plan of reorganization in the Chapter 11 Cases, (ii) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, (iii) to the extent authorized by applicable law, dismissing any of the Chapter 11 Cases, (iv) withdrawing of the reference of any of the Chapter 11 Cases from the Court, or (v) providing for abstention from handling or retaining of jurisdiction of any of the Chapter 11 Cases in the Court.

(g)     *Controlling Effect of Interim Order*.  To the extent any provision of this Interim Order conflicts or is inconsistent with any provision of the Motion, the provisions of this Interim Order shall control to the extent of such conflict.

(h)     *Order Immediately Effective.* Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are effective immediately and enforceable upon its entry.

(i)     *Debtor Authorization to Effectuate Relief*.  The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

(j)     *Exclusive Jurisdiction*.  This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

11.     *Final Hearing*.  The final hearing (the "**Final Hearing**") on the Motion shall be held on _____, 2020, at __:__ _.m., prevailing Eastern Time.  The Debtors shall, on or before _____, 2020, mail copies of a notice of the entry of this Interim Order, together with a copy of this Interim Order and a copy of the Motion, to the parties having been given notice of the Interim Hearing, to any party that has filed prior to such date a request for notices with this Court, and to counsel for the Committee, if any, and any other statutory committee of unsecured creditors appointed pursuant to section 1102 of the Bankruptcy Code.  Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Eastern Time, on _____, 2020, and shall be served on: (a) the Debtors, Borden Dairy Company, 8750 North Central Expressway, Suite 400, Dallas, Texas 75231, Attn: Jason Monaco; (b) proposed counsel to the Debtors, Arnold & Porter Kaye Scholer LLP, 70 West Madison Street, Suite 4200, Chicago,

Illinois 60602, Attn: Tyler Nurnberg, Seth Kleinman, and Sarah Gryll; (c) proposed co-counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn: M. Blake Cleary; (d) counsel to ACON Dairy Investors, L.L.C., Hogan Lovells US LLP, 390 Madison Avenue, New York, New York 10017, Attn: Christopher Donoho III; (e) counsel to New Laguna, LLC, Dechert LLP, Three Bryant Park, 1095 Avenue of the Americas, New York, New York 10036, Attn: Brian Greer; (f) counsel to the Agent, RCF Facility Lenders, and Term Loan A Facility Lenders, Blank Rome LLP, 1271 Avenue of the Americas, New York, New York 10020, Attn: Robert Stein; (g) counsel to the Term Loan B Facility Lenders, King & Spalding LLP, 1185 Avenue of the Americas, 34th Floor, New York, New York 10036, Attn: Roger Schwartz; (h) counsel to any statutory committee appointed in these cases; and (i) the Office of the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Timothy Fox, Jr..

Dated: _____, 2020
Wilmington, Delaware

_____
CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE

**<u>EXHIBIT 1</u>**

**BUDGET**

**[TO BE FILED]**