**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BORDEN DAIRY COMPANY, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 20-10010 (CSS)<br><br>(Jointly Administered)<br><br>**Ref. Docket No. 4, 8, 9, 10, 13** |

**OBJECTION OF PNC BANK, NATIONAL ASSOCIATION TO DEBTORS'
CASH COLLATERAL MOTION AND OTHER FIRST DAY MOTIONS**

PNC Bank, National Association ("Agent"), administrative and collateral agent under that certain Financing Agreement dated as of July 6, 2017 (as amended, restated, supplemented and/or otherwise modified, the "Prepetition Credit Agreement"), by and among Debtor Borden Dairy Company as borrower, each of the other Debtors, as guarantors, and the lenders party thereto from time to time (collectively the "Lenders") objects to *Debtors' Motion For Interim And Final Orders (A) Authorizing Use Of Cash Collateral And Granting Adequate Protection, (B) Authorizing Use Of Reserve Account Cash, (C) Scheduling A Final Hearing, And (D) Granting Related Relief* [Dkt. No. 13] (the "Cash Collateral Motion") and all other "first day motions" filed by Debtors to the extent they impact Agent or Lenders (collectively, the "First Day Motions").[2]

---

[1] The debtors in these chapter 11 cases and the last four digits of their federal tax identification numbers are: Borden Dairy Company (1509); Borden Dairy Holdings, LLC (8504); National Dairy, LLC (9109); Borden Dairy Company of Alabama, LLC (5598); Borden Dairy Company of Cincinnati, LLC (1334); Borden Transport Company of Cincinnati, LLC (3462); Borden Dairy Company of Florida, LLC (5168); Borden Dairy Company of Kentucky, LLC (7392); Borden Dairy Company of Louisiana, LLC (4109); Borden Dairy Company of Madisonville, LLC (7310); Borden Dairy Company of Ohio, LLC (2720); Borden Transport Company of Ohio, LLC (7837); Borden Dairy Company of South Carolina, LLC (0963); Borden Dairy Company of Texas, LLC (5060); Claims Adjusting Services, LLC (9109); Georgia Soft Serve Delights, LLC (9109); NDH Transport, LLC (7480); and RGC, LLC (0314). The location of Debtors' service address is: 8750 North Central Expressway, Suite 400, Dallas, TX 75231.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed thereto in the First Day Motions or the *Declaration of Jason Monaco in Support of Chapter 11 Petitions and First Day Motions* [Dkt. 15]. Such First Day Motions include but may not be limited to (i) *Motion of the Debtors for Entry of Interim and Final Orders (I)*

## SECURED DEBT BACKGROUND

1.  As set forth more fully in the Cash Collateral Motion, the Prepetition Credit Agreement provided the Debtors with a $275 million credit facility, consisting of: (a) a $70 million RCF Facility provided by PNC, which includes a $25 million subfacility for the issuance of Letters of Credit;[3] (b) a $30 million Term Loan A Facility held by PNC, and (c) a $175 million Term Loan B Facility now held by certain affiliates of KKR Credit Advisors (US) LLC and/or Franklin Square Holdings, L.P.  As of the Petition Date, Debtors owe Lenders, Agent and L/C Issuer $255.8 million in total principal (of which at least $94.6 million is owed to PNC), comprised of: (a) approximately $56.7 million of principal outstanding under the RCF Facility, plus approximately $13 million in outstanding, drawn Letters of Credit, (b) approximately $24.1 million of principal outstanding under the Term Loan A Facility, (c) approximately $175 million of principal outstanding under the Term Loan B Facility, (d) approximately $1.2 million of purchase card obligations, plus accrued and unpaid interest, fees, expenses, and all other obligations, all of which are secured by valid, binding, perfected and enforceable first priority liens on and security interests in substantially all of

---

*Authorizing the Debtors to Pay Prepetition Critical Vendor Claims and 503(b)(9) Claims in the Ordinary Course of Business, (II) Authorizing the Debtors to Return Goods, and (III) Granting Related Relief* [Dkt. No. 10] (the "<u>Critical Vendors Motion</u>"), (ii) *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Debtors to Pay Certain Prepetition Claims of Lien Claimants, and (II) Granting Related Relief* [Dkt. No. 9] (the "<u>Prepetition Claims Motion</u>"); (iii) *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Debtors to Honor Prepetition Obligations to Customers and Otherwise Continue Customer Practices, and (II) Granting Related Relief* [Dkt. No. 8] (the "<u>Customer Programs Motion</u>"); (iv) *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Payment of Certain Prepetition Taxes and Fees, and (II) Granting Related Relief* [Dkt. No. 6] (the "<u>Tax Motion</u>"); (v) *Debtors' Motion for Entry of Interim and Final Orders (I) Approving the Debtors' Proposed Adequate Assurance of Payment for Future Utility Services, (II) Prohibiting Utility Companies from Altering, Refusing, or Discontinuing Services, (III) Approving the Debtors' Proposed Procedures for Resolving Adequate Assurance Requests, and (IV) Granting Related Relief* [Dkt. No. 4] (the "<u>Utilities Motion</u>"); (vi) *Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation and Reimbursable Expenses, and (B) Continue Employee Benefits Program, and (II) Granting Related Relief* [Dkt. No. 5] (the "<u>Wages Motion</u>"); and (vii) the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue Insurance Coverage Entered into Prepetition and Satisfy Prepetition Obligations Related Thereto and (B) Renew, Amend, Supplement, Extend, or Purchase Insurance Policies, and (C) Continue Its Insurance Premium Finance Agreements, and (II) Granting Related Relief* [Dkt. No. 7] (the "<u>Insurance Motion</u>").

[3] In connection with the Prepetition Credit Agreement, certain of the Lenders and the Agent entered into that certain Agreement Among Lenders, dated as of July 6, 2017 (as amended, modified, restated, amended and restated, and/or supplemented from time to time, the "<u>AAL</u>").  The AAL sets forth certain of the Lenders' respective rights and obligations under the Prepetition Credit Agreement.

Debtors' assets, including real property, personal property including cash collateral, and outstanding equity interests (collectively, the "Prepetition Collateral").[4]

## OBJECTION

2. Immediately prior to the Petition Date, the Agent, Lenders and Debtors were negotiating a consensual out-of-court restructuring. Without any discussion whatsoever, let alone the courtesy of advance notice to Agent, Debtors abruptly filed these chapter 11 cases. As a result, Agent was deprived of an opportunity to review or comment on the terms of Debtors' proposed usage of cash collateral or any other relief requested in the First Day Motions and saw them for the first time approximately 36 hours ago.

3. As is clear from the First Day Motions, Debtors' hasty filing of these cases is devoid of any exit strategy, which is not surprising considering Debtors filed without the input of a chief restructuring officer, financial advisor or investment banker. Yet, the First Day Motions seek to expend significant sums of Agent's cash collateral within the first several weeks of these cases to satisfy in excess of $50 million of purported prepetition unsecured claims, all while diminishing the value of Agent's collateral.

4. To make matters worse, Debtors essentially have stonewalled Agent's requests for critical information. For example:

    a. Agent requested the detailed backup that supports the one-page summary Budget. Debtors have failed to provide it.

    b. Agent requested insertion in the Budget of a line item measuring the proposed expenditures' impact on the borrowing base each week and whether the

---

[4] Debtors assert that the Prepetition Collateral excludes the Reserve Account (as defined in the Cash Collateral Motion) holding over $26 million of cash and securities. Agent is investigating and does not concede this point at this time. Whether there is a valid, perfected lien on the Reserve Account or a valid right of setoff is not before the Court presently. Agent and Lenders reserve all rights.

Revolving Credit Facility would remain in formula. Debtors have failed to provide it.

c. Agent requested an itemization as to what claims Debtor proposes to pay are pre- vs. post-petition. Debtors have failed to provide it.

5. Without this essential information, Agent cannot determine the reasonableness of the Budget and otherwise make an informed decision on the requested use of its cash collateral. Unsurprisingly, the Cash Collateral Motion is of no help in this regard, as it neither alleges that the Lenders are adequately protected nor that there is an equity cushion in the Prepetition Collateral. For these reasons alone, Agent must oppose Debtors' request to use its cash collateral.

6. Agent does, however, recognize that certain expenses must be paid to preserve the value of Debtors' enterprise and will agree on an interim basis to permit Debtors to use cash collateral in accordance with Agent's proposed form of Order, blacklined to the Debtors' proposed Order, attached hereto as Exhibit "A" ("Agent's Cash Collateral Order") for an interim period so long as the expenditures are used solely for those wages, post-petition purchases and prepetition claims to which Agent consents.

7. In connection with this limited consent to interim use of its cash collateral, Agent requires the following conditions:

a. Limit the interim period to ten days;

b. Require Debtors to provide to Agent all diligence it needs to evaluate the Budget, review any exit strategy Debtors may propose, and determine whether to propose DIP financing;

c. Limit the amount of cash usage to only those items Agent agrees are critical and paid pursuant to a Budget approved by Agent;

    d. Provide covenants acceptable to Agent, including, without limitation, permitted variances of no more than 10 % on a line item in Budget;

    e. Demonstration by Debtors that the existing collateral position is being kept in formula by first using the funds in the Reserve Account;

    f. In addition to replacement liens on "like" collateral as proposed by Debtors, granting a lien on unencumbered assets, if any, including the allegedly unencumbered Reserve Account solely to the extent of diminution in value of the Prepetition Collateral and the usage of cash collateral;

    g. The appointment of a CRO acceptable to Agent with an acceptable scope of engagement;

    h. The appointment of an independent board member to whom the CRO reports and acceptable to Agent;

    i. Standard stipulations by Debtors with concomitant challenge period; and

    j. Adequate protection payments of Interest (as proposed by the Debtors) plus fees, costs and expenses of Agent incurred in these cases.

Absent these conditions, Agent objects to Debtors' proposed use of its cash collateral at this time. Among other reasons, the Cash Collateral Motion seeks to use Lenders' cash collateral (over a 30-day period) while providing only replacement liens and payment of current, contract rate interest and fees under PNC's Term Loan A Facility and RCF Facility, which are "first out" in the waterfall under the AAL. It is believed this would erode Lenders' collateral position and cause Lenders to suffer a diminution in value without adequate protection.

    8.    Similarly, the other First Day Motions seek to pay in excess of $50 million in purported prepetition claims. *See, e.g.*, Critical Vendors Motion at ¶¶13-14 (seeking authority to

pay over $32 million in 503(b)(9) and prepetition critical vendor claims); Prepetition Claims Motion at ¶7 (seeking authority to pay up to $600,000 in prepetition claims); Customer Programs Motion at ¶7 (seeking authority to pay up to $4 million in prepetition claims).  Payment of these amounts would violate the Bankruptcy Code's priority scheme and prejudice Lenders' rights as senior secured creditors.  At a minimum, Agent needs additional time to evaluate which of the prepetition claims in the First Day Motions are truly exigent and require payment at this early stage of the cases.  Further, with respect to other of the First Day Motions such as the Wages Motion (to the extent it seeks to pay accrued paid time off or bonus amounts), the Taxes Motion, Insurance Motion and Utilities Motion, Debtors have failed to demonstrate any exigent circumstances requiring the granting of interim relief at the first day hearing.[5]  Consideration of any such relief should be deferred to the next interim hearing.

9. In sum, it is yet unclear to the Agent and Lenders — as the Debtors' senior secured creditors — what course of action in these cases will result in the most value-maximizing outcome for the Debtors' stakeholders in accordance with their respective rights and priorities.  Without this critical perspective, the Cash Collateral Motion risks allowing Debtors to consume the Prepetition Collateral and compromise value to the prejudice of Agent and Lenders.  For all of these reasons, Agent objects to cash collateral usage except on the terms stated above.

## RESERVATION OF RIGHTS

10. Agent reserves all rights with respect to the First Day Motions, including its right to object and put on evidence in connection with any interim or final hearings thereon.

---

[5] *See* 11 U.S.C. § 366(b) ("Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, ***within 20 days after the date of the order for relief***, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date.") (emphasis added).

WHEREFORE, the Agent respectfully requests that the Court (i) deny the Cash Collateral Motion to the extent the relief sought therein permits the use of the Agent's cash collateral on terms other than those set forth in the Agent's form of Cash Collateral Order, (ii) deny the First Day Motions to the extent they authorize the payment of prepetition claims in amounts other than as agreed to by Agent or otherwise prejudice the rights of Agent or Lenders; and (iii) grant such other and further relief as is equitable and just.

Dated: January 7, 2020

Respectfully Submitted,

BLANK ROME LLP

/s/ Josef W. Mintz
Regina Stango Kelbon, Esq.
Josef W. Mintz
1201 N. Market Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 425-6400
Facsimile: (302) 425-6464
E-mail: Kelbon@BlankRome.com
         Mintz@BlankRome.com

and

John E. Lucian (*pro hac vice* to be filed)
Gregory F. Vizza, Esq. (*pro hac vice* to be filed)
One Logan Square
130 North 18th Street
Philadelphia, Pennsylvania 19103-6998
Telephone: (215) 569-5500
Facsimile: (215) 569-5555
E-mail: Lucian@BlankRome.com
         Vizza@BlankRome.com

*Counsel to PNC Bank, National Association*