## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>BORDEN DAIRY COMPANY, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 20-10010 (CSS)<br><br>(Jointly Administered)<br><br>**Ref. Docket Nos. 13 and 14** |

## INTERIM ORDER (A) AUTHORIZING USE OF CASH COLLATERAL, FOR AN INTERIM PERIOD, (B) GRANTING ADEQUATE PROTECTION, (C) AUTHORIZING USE OF RESERVE ACCOUNT CASH, (D) SCHEDULING A SECOND HEARING, AND (E) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of the above-captioned debtors and debtors and debtors-in-possession (collectively, the "**Debtors**") for entry of an interim order (this "**Interim Order**") and a Final Order, pursuant to sections 105, 361, 362, 363, 506(a), 507(b), 552 and 553 of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 4001, 6003, 6004, 7062 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2002-1(b), 4001-2 and 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Borden Dairy Company (1509); Borden Dairy Holdings, LLC (8504); National Dairy, LLC (9109); Borden Dairy Company of Alabama, LLC (5598); Borden Dairy Company of Cincinnati, LLC (1334); Borden Transport Company of Cincinnati, LLC (3462); Borden Dairy Company of Florida, LLC (5168); Borden Dairy Company of Kentucky, LLC (7392); Borden Dairy Company of Louisiana, LLC (4109); Borden Dairy Company of Madisonville, LLC (7310); Borden Dairy Company of Ohio, LLC (2720); Borden Transport Company of Ohio, LLC (7837); Borden Dairy Company of South Carolina, LLC (0963); Borden Dairy Company of Texas, LLC (5060); Claims Adjusting Services, LLC (9109); Georgia Soft Serve Delights, LLC (9109); NDH Transport, LLC (7480); and RGC, LLC (0314). The location of the Debtors' service address is: 8750 North Central Expressway, Suite 400, Dallas, Texas 75231.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), seeking, among other things:

(a)     authorization for the Debtors to use Cash Collateral (as defined herein), and any proceeds thereof, for an interim period;

(b)     authorization for the Debtors to use the proceeds of the Reserve Account (as defined in the Motion) (the "**Reserve Account Cash**"), for an interim period;

(c)     authorization to grant, as of the Petition Date (as defined herein), the Adequate Protection Superpriority Claims and Adequate Protection Liens (each as defined herein), to the extent of and as compensation for any Diminution in Value (as defined herein), and to make the Adequate Protection Payments (as defined herein);

(d)     modification by the Court of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Interim Order and the Final Order;

(e)     the scheduling of a final hearing (the "**Final Hearing**") to consider entry of an Order granting the relief requested in the Motion for a second interim period;

(f)     waiver of any applicable stay (including under Bankruptcy Rule 6004) and providing for the immediate effectiveness of this Interim Order;

and due and appropriate notice of the Motion and the interim hearing held before the Court on January 8, 2020 (the "**Interim Hearing**") to consider entry of this Interim Order having been provided by the Debtors; and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion; and upon the record made by the Debtors in the Motion, in the *Declaration of Jason Monaco in Support of Chapter 11 Petitions and First Day Motions* (the "**First Day Declaration**") [Docket No. 15], the *Declaration of Sarah Gryll* [Docket No. 14] and

at the Interim Hearing; and the relief requested in the Motion being reasonable, appropriate and in the best interests of the Debtors, their creditors, their estates and all other parties in interest in these Chapter 11 Cases (as defined herein); and the Court having determined that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor.

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[3]

A.    *Disposition*. The relief requested in the Motion is hereby granted on an interim basis, on the terms set forth below. Any objections to the Motion that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled on the merits. This Interim Order shall become effective immediately upon its entry.

B.    *Petition Date*. On January 5, 2020 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**") with this Court.

C.    *Debtors in Possession*. The Debtors continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No party has requested the appointment of a trustee or examiner in these Chapter 11 Cases, and no committees have been appointed or designated at this time.

D.    *Jurisdiction and Venue*. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States

---

[3]    In accordance with Bankruptcy Rule 7052, any proposed finding of fact more properly classified as a proposed legal conclusion shall be deemed as such, and any proposed conclusion of law more properly classified as a proposed factual finding shall also be deemed as such.

District Court for the District of Delaware, dated February 29, 2012. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). The Court may enter a final order consistent with Article III of the United States Constitution. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for the relief sought are sections 105, 361, 362, 363, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001 and 9014, and Local Rule 4001-2.

E.    *Committee Formation.* As of the date hereof, no official committee of unsecured creditors (with any other statutory committee, a "**Committee**") has been appointed in the Chapter 11 Cases.

F.    *Notice.* On the Petition Date, the Debtors filed the Motion with the Court pursuant to Bankruptcy Rules 2002, 4001 and 9014, and provided notice of the Motion and the Interim Hearing in accordance with the provisions of Local Rule 9013-1(m) to: (a) the Office of the United States Trustee for the District of Delaware, (b) the holders of the thirty (30) largest unsecured claims against the Debtors on a consolidated basis, (c) the Office of the United States Attorney General for the District of Delaware, (d) the Internal Revenue Service, (e) the Securities and Exchange Commission, (f) financial institutions at which the Debtors maintain deposit accounts, (g) counsel to ACON Dairy Investors, L.L.C., (h) counsel to New Laguna, LLC, (i) counsel to the Agent, RCF Facility Lenders, and Term Loan A Facility Lenders, (j) counsel to the Term Loan B Facility Lenders, (k) all other parties asserting a lien on or a security interest in the assets of the Debtors to the extent reasonably known to the Debtors, and (l) any other party entitled to notice pursuant to Local Rule 9013-1(m). Given the nature of the relief sought in the Motion, the Court concludes that the foregoing notice constitutes due, sufficient and appropriate notice under the circumstances and complies with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002 and 4001(b) and (d), and the Local Rules.

~~G.    Debtors' Representations.  Without prejudice to the rights of any other party, but in each case subject to the limitations contained in Paragraph 6 below, the Debtors represent, admit, stipulate, and agree (collectively, the "**Debtors' Stipulations**") as follows:~~

G.    ~~(i)~~    *Cash Collateral.*  For purposes of this Interim Order, the term "**Cash Collateral**" shall be deemed to include, without limitation, all of each Debtor's "Cash Collateral" as defined under section 363 of the Bankruptcy Code, ~~all deposits subject to setoff and cash arising from the collection or other conversion to cash of any and all property (whether real or personal)~~ in which the Prepetition Secured Parties have valid, perfected security interests, liens or mortgages, regardless of whether such security interests, liens, or mortgages existed as of the Petition Date or arise thereafter pursuant to this Interim Order.

H.    ~~(ii)~~    *Prepetition Credit Facility.*  On July 6, 2017, Borden, as borrower, the other Loan Parties as defined in the Credit Agreement (as defined herein) party thereto (together with Borden, the "**Loan Parties**"), each of the lenders from time to time party thereto (the "**Lenders**"), the L/C Issuer (as defined in the Credit Agreement), and PNC Bank, National Association ("**PNC**"), as administrative agent and collateral agent (in such capacity, the "**Collateral Agent**," and in such capacities, collectively, the "**Agent**," and together with the Lenders and the L/C Issuer, the "**Prepetition Secured Parties**"), entered into that certain Financing Agreement (as amended, modified, restated, amended and restated, and/or supplemented from time to time, the "**Credit Agreement**" and, collectively with all agreements, documents, notes, mortgages, security agreements, pledges, guarantees, subordination agreements, deeds, instruments, indemnities, indemnity letters, fee letters, assignments, charges, amendments, and any other agreements delivered pursuant thereto or in connection therewith, including the "Loan Documents" as such term is defined in the Credit Agreement, the "**Prepetition Loan Documents**"), which provided

the Debtors with a $275 million credit facility (the "**Credit Facility**"). The Credit Facility consists of: (a) a $70 million revolving credit facility (the "**RCF Facility,**" and such loans thereunder, the "**Revolving Loans**"), which includes a $25 million subfacility for the issuance of letters of credit ("**Letters of Credit**"), (b) a $30 million term loan A facility (the "**Term Loan A Facility,**" and such loans thereunder, the "**Term Loan A Loans**"), and (c) a $175 million term loan B facility (the "**Term Loan B Facility**"). All indebtedness, liabilities, and obligations under the Prepetition Loan Documents, specifically including all "Obligations" as defined in the Credit Agreement, are referred to herein as the "**Prepetition Secured Obligations**." Each of the Prepetition Loan Documents is valid, binding, and, subject to applicable bankruptcy law, enforceable against the Loan Parties and such other Debtor subsidiaries and affiliates party to any Prepetition Loan Documents (collectively, the "**Obligors**").

(iii)    *Prepetition Secured Obligations.* As of the Petition Date, the Loan Parties were justly and lawfully indebted and liable under the Prepetition Loan Documents, without defense, counterclaim, reduction or offset of any kind, in the aggregate principal amount of not less than (A) $269,599,876.75 in respect of loans and other financial accommodations made by the Lenders, comprised of $56,669,753.00 of principal amount of loans outstanding under RCF Facility, $24,125,000.00 of principal amount of loans outstanding under the Term Loan A Facility, $175,000,000 of principal amount of loans outstanding under the Term Loan B Facility, (B) $12,605,123.75 in respect of certain letters of credit issued by the L/C Issuer (as defined in the Credit Agreement), under a $25 million subfacility under the RCF Facility, and (C) $1,200,000.00 in respect of credit card obligations and other Bank Product Obligations (as defined in the Credit Agreement) owed to Bank Product Providers (as defined in the Credit Agreement), pursuant to, and in accordance with, the Credit Agreement and other Prepetition Loan Documents, plus accrued

and unpaid interests, fees, costs and expenses (including counsel, financial advisors, consultants, accountants, to the extent applicable, chargeable or reimbursable under the Prepetition Loan Documents) with respect to each of the foregoing.

(iv)    *Prepetition Liens.*  Pursuant to and as more particularly described in the Prepetition Loan Documents, the Prepetition Secured Obligations are secured by, among other things, first priority liens and mortgages on, security interests in, and assignments and pledges of (collectively, the "**Prepetition Liens**"), all of the Loan Parties' right, title, and interest in the Loan Parties' property (to the extent provided in and as more fully described in the Prepetition Loan Documents, the "**Prepetition Collateral**"), subject to any other valid, perfected and unavoidable lien or security interest otherwise existing as of the Petition Date that is senior to the security interest of the Prepetition Secured Parties, to the extent such liens or security interests are valid, perfected and unavoidable liens or security interests existing as of the Petition Date and otherwise senior to the Prepetition Liens as of the Petition Date (collectively, the "**Prepetition Permitted Liens**" and each a "**Prepetition Permitted Lien**").

(v)    *Validity of Prepetition Liens and Prepetition Obligations.*  The Prepetition Liens are (a) valid, binding, perfected, duly recorded and enforceable liens on, and security interests in, all of the Loan Parties' respective right, title, and interest in, and to, the Prepetition Collateral, and (b) not subject to, pursuant to the Bankruptcy Code or other applicable law (foreign or domestic), avoidance, disallowance, reduction, recharacterization, recovery, subordination (whether equitable, contractual, or otherwise), attachment, offset, recoupment, counterclaim, defense, "claim" (as defined in the Bankruptcy Code), impairment, or any other challenge of any kind by any person or entity.  Each Debtor irrevocably releases and waives, for itself and its estate, any right to challenge or contest in any way the scope, extent, perfection, priority, validity, non-

avoidability, or enforceability of the Prepetition Liens or the validity, or enforceability of the Prepetition Loan Documents or the validity, enforceability, or priority of payment of the Prepetition Secured Obligations, and forever releases and waives, any claims, objections, challenges, counterclaims, causes of action, defenses, setoff rights, obligations, rights to subordinate, or any other liabilities, whether arising in equity or under the Bankruptcy Code or applicable nonbankruptcy law, against the Prepetition Secured Parties, or any of their respective affiliates, agents, attorneys, consultants, advisors, professionals, officers, directors, and employees from the beginning of time through the Petition Date.  The Prepetition Liens were granted to the respective Prepetition Secured Parties for fair consideration and reasonably equivalent value, and were granted in consideration of the making and/or continued making of loans, commitments, and/or other financial accommodations under the Prepetition Loan Documents. No portion of the Prepetition Secured Obligations or any payments made to the Prepetition Secured Parties or applied to or paid on account of the obligations owing under the Prepetition Loan Documents prior to the Petition Date is subject to any contest, attack, rejection, recovery, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance, or other claim, cause of action, or other challenge of any nature under the Bankruptcy Code or applicable nonbankruptcy law.

(vi)    *Agreement Among Lenders.* That certain Agreement Among Lenders, dated as of July 6, 2017 (as amended, restated, amended and restated, supplemented, or otherwise modified, the "**AAL**"), by and between the Agent and Lenders and accepted and agreed to by the Loan Parties, governs, among other things, the relative rights and obligations of the Agent and Lenders with respect to certain aspects of the Prepetition Secured Obligations and Prepetition Collateral.  Pursuant to section 510 of the Bankruptcy Code, the AAL is binding, valid, and

enforceable in accordance with its terms and shall not be amended, altered, or modified by the terms of this Interim Order.

I. (vii) *Adequate Protection for the Prepetition Secured Parties.* As a result of the authorization for the Debtors' use of Cash Collateral, the Prepetition Secured Parties are entitled to receive adequate protection pursuant to sections 361, 362, and 363 of the Bankruptcy for any diminution in the value, from and after the Petition Date, of their interests in ~~the Prepetition Collateral (including~~ the Cash Collateral resulting from the automatic stay and/or from the Debtors' use, ~~sale or lease of the Prepetition Collateral (including~~ of the Cash Collateral~~), or otherwise during the Chapter 11 Cases~~. As adequate protection, the Prepetition Secured Parties will receive the adequate protection described in this Interim Order (including the adequate protection set forth in Paragraph 4 hereof). ~~In light of such adequate protection, the Prepetition Secured Parties have consented to the Debtors' use of the Cash Collateral, solely on the terms and conditions set forth in this Interim Order.~~ The adequate protection provided herein and other benefits and privileges contained herein are consistent with and authorized by the Bankruptcy Code and are necessary to obtain such consent.

(viii) *Section 552(b); Section 506(c).* Subject to entry of the Final Order, the Prepetition Secured Parties are entitled to a waiver of (a) any "equities of the case" exception under section 552(b) of the Bankruptcy Code; and (b) the Debtors' right to surcharge the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code.

J. ~~H.~~ *Necessity of Relief Requested.* Good cause has been shown for the entry of this Interim Order. The Debtors have an immediate need to use Cash Collateral and Reserve Account Cash to, among other things, fund the orderly continuation of their businesses, maintain the confidence of their customers and vendors, pay their operating expenses, and preserve their going-

concern value, consistent with the Budget.  In the absence of the availability of such liquidity in accordance with the terms hereof, the continued operation of the Debtors' businesses would not be possible, and serious and irreparable harm to the Debtors, their estates and their creditors would occur.  The terms for the Debtors' use of Cash Collateral and the Reserve Account Cash pursuant to this Interim Order are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and constitute reasonably equivalent value and fair consideration.  The Debtors have requested entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and (d).  Absent granting the relief sought by this Interim Order, the Debtors' estates would be immediately and irreparably harmed.  The use of Cash Collateral in accordance with this Interim Order is therefore in the best interest of the Debtors and their estates, their creditors and other parties in interest.

K.    *Use of Cash Collateral.*  All Cash Collateral, all proceeds of the Prepetition Collateral, and the Reserve Account Cash shall only be used for: (i) working capital; (ii) other general corporate purposes of the Debtors; (iii) the satisfaction of the costs and expenses of administering the Chapter 11 Cases, including, without limitation, payment of any prepetition obligations that are necessary to preserve the value of the Debtors' estates to the extent approved by the Court; and (iv) Adequate Protection Payments, and for no other purpose, and shall only be used and/or applied in accordance with the terms and conditions of this Interim Order, including, without limitation, the Budget.

L.    *Need for Immediate Entry of this Interim Order.*  The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2).  The permission granted herein to use Cash Collateral (and provide adequate protection therefor) and Reserve Account Cash is necessary, essential, and appropriate to avoid immediate and irreparable harm

to the Debtors. The Court concludes that entry of this Interim Order is in the best interests of the Debtors' estates and creditors as its implementation will, among other things, allow the Debtors to preserve and maintain the value of their assets and businesses and enhance the Debtors' prospects for a successful reorganization.

Based upon the foregoing findings and conclusions, and upon the record made before the Court at the Interim Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ADJUDGED AND ORDERED** that:

1.      *Motion Granted.* The Motion is granted on an interim basis in accordance with the terms and conditions set forth in this Interim Order. Any objections to the Motion with respect to entry of this Interim Order to the extent not withdrawn, waived or otherwise resolved, and all reservations of rights included therein, are hereby denied and overruled.

2.      *Authorization to Use Cash Collateral.* The Debtors are authorized to use Cash Collateral as set forth in this Interim Order commencing from the Petition Date through and including (but not beyond) any Termination Date (as defined herein), subject to the terms and conditions of this Interim Order and solely in accordance with the 13-week cash flow forecast of cash receipts and disbursements of the Debtors on a consolidated basis for the period commencing on the Petition Date, attached as **Exhibit 1** to this Interim Order (the "**Budget**"), which Budget and the updated Budget required by Paragraph 8(a) herein shall be acceptable to the Agent and the Required Lenders under the Prepetition Loan Documents; *provided, however,* that the Debtors' authorization to use Cash Collateral as provided in this Interim Order shall be subject to the Loan Parties' compliance with Section 2.01(b)(i) of the Credit Agreement at all times after the Petition Date.

3.    *Authorization to Use Reserve Account Cash.*  The Debtors are authorized, but not directed, to liquidate the securities in the Reserve Account and to deposit $10,000,000 into the Debtors' operating account held at PNC, subject to the Agent's lien.  The Debtors are authorized to use the Reserve Account Cash, subject to the terms and conditions of this Interim Order and in accordance with the Budget.  PNC is authorized to rely on the provisions of this Interim Order in taking any direction from the Debtors with respect to the liquidation of any securities held in the Reserve Account and the use of the Reserve Account Cash.  ~~The Prepetition Secured Parties shall have no liability whatsoever to the Debtors, their estates, creditors, equityholders, or any other party on account of action taken in reliance on the provisions of this Interim Order, including, without limitation, the Debtors' use of the Reserve Account Cash.~~  Notwithstanding the use of the Reserve Account as provided herein, the Agent and the other Prepetition Secured Parties reserve any and all of their respective rights with respect to the Reserve Account.

4.    *Adequate Protection for the Prepetition Secured Parties.*

(a)    Subject only to the terms of this Interim Order, pursuant to sections 361, 362, 363(c)(2), and 363(e) of the Bankruptcy Code ~~and in consideration of the stipulations and consents set forth herein~~, as adequate protection for and solely to the extent of any diminution in the value, from and after the Petition Date, of the Prepetition Secured Parties' interests in the ~~Prepetition Collateral (including~~ Cash Collateral) (the "**Diminution in Value**") resulting from: (i) any postpetition use of Cash Collateral; ~~(ii) the depreciation, use, sale, lease, loss, or decline in market value or otherwise of the Prepetition Collateral, and (iii) the imposition of the automatic stay~~ (the "**Adequate Protection Obligations**"), the Debtors hereby grant to the Agent, for the benefit of the Prepetition Secured Parties, an additional and replacement valid, binding, enforceable, non-avoidable, and automatically perfected, *nunc pro tunc* to the Petition Date, postpetition security interest in and lien

(the "**Adequate Protection Liens**") on all of the right, title and interest of the Debtors and their "estates" (as created pursuant to section 541(a) of the Bankruptcy Code) in, to, and under all property and rights and interests in property of each of the Debtors of any kind or nature whatsoever in existence as of the Petition Date as well as thereafter created or acquired, and wherever located, including without limitation, (a) all Prepetition Collateral, (b) all accounts and accounts receivable, inventory, chattel paper, equipment, fixtures, machinery, commercial tort claims, deposit accounts, instruments, documents, cash and cash equivalents, investment property (including without limitation all equity interests in subsidiaries), books and records, patents, trademarks, trade names, copyrights, rights under license agreements and all other intellectual property, rights, rebates, refunds, other claims under and with respect to insurance policies, tax refunds, deposits, rebates, contract rights and other general intangibles, software, letter of credit rights, money and intercompany claims or receivables (whether or not evidenced by notes) at any time owing to each Debtor, the Reserve Account, and the Reserve Account Cash, (c) all real property, leaseholds, rents and profits and proceeds thereof; (*provided, however,* that as to a lien on all fee, leasehold, and other real property interests and the proceeds thereof: (i) with respect to non-residential real property leases, no liens or encumbrances shall be granted or extended to such leases under this Interim Order, except as permitted by the applicable lease or pursuant to applicable law, but if any such restriction applies, liens shall then be deemed to extend only to the economic value of proceeds of any sale or other disposition of, and any other proceeds or products of, such leasehold interests; and (ii) should any Lender's internal regulatory or compliance requirements require the completion of either or both flood due diligence and obtaining evidence of applicable flood insurance with respect to any real property or leasehold interest, then until completion of such flood due diligence, the Agent shall be deemed to have obtained a lien only on the economic value

25845832.1

of, proceeds of any sale or other disposition of such real property interests), (d) if not otherwise described, all of the property or rights in property identified as Collateral (as defined in the Credit Agreement), (e) (i) all causes of action (other than Avoidance Actions, as defined below) whether pursuant to federal or applicable state law, and the proceeds thereof and property received thereby whether by judgment, settlement, or otherwise, ~~and (ii) upon entry of a Final Order, all claims and causes of action under Chapter 5 of the Bankruptcy Code or any other avoidance actions under the Bankruptcy Code (collectively, "Avoidance Actions")~~ of the Debtors or their estates and proceeds thereof, and (f) as to all of the foregoing, all rents, issues, products, proceeds (including insurance policies), and profits of, from, or generated by any of the foregoing (collectively, the "**Collateral**"), without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages, or other similar documents. The Adequate Protection Liens are subject or subordinate only to the Carve-Out. ~~Moreover, the Adequate Protection Liens shall not be subject or subordinate to or made *pari passu* with (x) any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code, (y) any intercompany claim, whether secured or unsecured, of any Debtor or any domestic or foreign subsidiary or affiliate of any Debtor, or (z) any other lien or security interest under Bankruptcy Code sections 361 or 363 or otherwise except as expressly provided in this Interim Order.~~

(b)     *Adequate Protection Superpriority Claims.* The Agent, for the benefit of itself and the other Prepetition Secured Parties, is hereby granted, subject only to the Carve-Out, an allowed superpriority administrative expense claim (each an "**Adequate Protection Superpriority Claim**" and, collectively, the "**Adequate Protection Superpriority Claims**") as provided for in section 507(b) of the Bankruptcy Code, payable from and having recourse to all

25845832.1

prepetition and postpetition property of the Debtors and all proceeds thereof, including proceeds of Avoidance Actions or property recovered under such Avoidance Actions whether by judgment, settlement, or otherwise. Subject only to the Carve-Out, and except as provided below, the Adequate Protection Superpriority Claims shall have priority over any and all other administrative expenses pursuant to the Bankruptcy Code (including the kinds specified in or arising or ordered pursuant to sections 105(a), 326, 328, 330, 331, 503(b), 506(c) (subject to entry of the Final Order), 507, 546(c), 552(b) (subject to entry of the Final Order), 726, and 1114 of the Bankruptcy Code or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other nonconsensual lien, levy, or attachment) and all other claims against the Debtors or their estates in any of the Chapter 11 Cases or any Case(s) or any subsequently converted bankruptcy case(s) of any Debtors (collectively, the "**Successor Cases**"), at any time existing or arising, of any kind or nature whatsoever. The Adequate Protection Superpriority Claim shall be against each Debtor on a joint and several basis and shall be payable from and have recourse to the Collateral. Other than the Carve-Out, no cost or expense of administration of the Chapter 11 Cases shall be senior to, or *pari passu* with, any of the Adequate Protection Superpriority Claims.

(e) *(b)Adequate Protection Payments*. The respective Prepetition Secured Parties shall, as set forth below, receive from the Debtors the following payments (collectively, the "**Adequate Protection Payments**"): the Debtors shall pay in full, in cash and in immediately available funds, as and when such payments would have come due under the Credit Agreement had the Chapter 11 Cases not been commenced, all interest, fees, and other amounts (other than principal), as applicable, which shall accrue and be payable at the default contract rate and at the times provided for in the Prepetition Loan Documents.

25845832.1

(c) ~~(d)~~     *Payment of Fees and Expenses*.  As further adequate protection, the Debtors shall pay in cash, without the need for the filing of formal fee applications: (i) immediately upon entry of this Interim Order, the reasonable professional fees, expenses, and disbursements (including, but not limited to, the fees, expenses, and disbursements of counsel and third-party consultants, including financial advisors and auditors) incurred by the Agent under the Prepetition Loan Documents arising prior to the Petition Date; (ii) the reasonable professional fees, expenses, and disbursements (including, but not limited to, the fees, expenses, and disbursements of counsel and third-party consultants, including financial advisors and auditors) incurred by the Agent under the Prepetition Loan Documents arising subsequent to the Petition Date; and (iii) any other fees, costs, and expenses incurred by the Agent under the Prepetition Loan Documents (the "**Adequate Protection Fees**").  All payments of professional fees, expenses and disbursements authorized under this Paragraph 4(d) shall be made within ten (10) days (which time period may be extended by the applicable professional) (the "**Review Period**") after receipt by the Debtors, any Committee and the U.S. Trustee of invoices therefor (the "**Invoiced Fees**") and without the necessity of filing formal fee applications.  The invoices for such Invoiced Fees shall include the total aggregate number of hours billed and a summary description of services provided and the expenses incurred by the applicable professional; *provided, however*, that any such invoice may be redacted to protect privileged, confidential or proprietary information.  The Debtors, the Committee and the U.S. Trustee may object to any portion of the Invoiced Fees (the "**Disputed Invoiced Fees**") within the Review Period by filing with the Court a motion or other pleading, on at least ten (10) days' prior written notice to the Agent of any hearing on such motion or other pleading, setting forth the specific objections to the Disputed Invoiced Fees.  The Debtors shall pay (i) any Invoiced Fees that are not Disputed Invoiced Fees within five (5) business days after expiration of the Review

25845832.1

Period; and (ii) any Disputed Invoiced Fees within five (5) business days after approval by the Court by a final order requiring payment of any previously Disputed Invoiced Fees. Notwithstanding anything herein to the contrary, the Debtors reserve the right to argue that, to the extent that any cash payment made hereunder as adequate protection to the Prepetition Secured Parties is not allowed under section 506(b) of the Bankruptcy Code, such payment should be recharacterized and applied as payment of principal amounts owed under the Credit Agreement and shall be applied against (but does not in any way modify the rights of the Agent and the Lenders under the AAL) the Prepetition Secured Parties' prepetition secured claims accordingly.

(d) Without limiting any other provisions of this Interim Order, any and all Adequate Protection Payments that remain unpaid shall be paid in full in cash on the effective date of the Debtors' confirmed chapter 11 plan.

(e) *Adequate Protection Reservation.* The receipt by the Prepetition Secured Parties of the adequate protection provided herein shall not be deemed an admission that the interests of the Prepetition Secured Parties are adequately protected. Further, this Interim Order shall not prejudice or limit the rights of the Prepetition Secured Parties to seek additional relief with respect to the use of Cash Collateral or for additional adequate protection, without prejudice to the Debtors' rights to contest the seeking of such relief by the Prepetition Secured Parties. Each of the Debtors shall be jointly and severally liable for the Adequate Protection provided for herein.

5.      *Lien Grant to Secure Bank Product Obligations.* To secure the prompt payment and performance of the Bank Product Obligations (as defined in the Credit Agreement) of Loan Parties to PNC of whatever kind, nature, or description, absolute or contingent, now existing or hereafter arising, pursuant to Bankruptcy Code sections 364(c) and (d), PNC shall have and is hereby granted, effective nunc pro tunc as of the Petition Date, valid, binding, enforceable, continuing, non-

avoidable and perfected first priority, security interests and liens in and upon (such security interests and liens collectively, "**Bank Product Liens**") the Collateral.

(a)    *Use of Bank Products*.  The Loan Parties are authorized to continue to use the Bank Products (defined in the Credit Agreement) and incur related Bank Product Obligations in the ordinary course of business solely to the extent contemplated by, and in accordance with, the Budget, and under the terms of the Bank Product Agreements (defined in the Credit Agreement), the Prepetition Loan Documents, and this Interim Order.

6.    *Effect of Stipulations on Third Parties.*

(a)    *Generally*.  The Debtors have admitted, stipulated, and agreed to the various stipulations and admissions contained in this Interim Order, including, without limitation, the stipulations and admissions included in Paragraph G (the "**Stipulations**"), which stipulations and admissions are and shall be binding upon the Debtors and any successors thereto (other than with respect to a successor Trustee appointed before the expiration of the Initial Challenge Period, which successor Trustee shall be bound by the Stipulations upon expiration of the Challenge Period, as provided in this paragraph) in all circumstances.  The stipulations and admissions contained in this Interim Order, including without limitation, the Stipulations, shall also be binding upon the Debtors' Estates and all other parties in interest, including the Committee or any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors (a "**Trustee**"), for all purposes unless (a) (i) any party in interest other than the Committee, no later than the date that is seventy five (75) days from entry of the Interim Order, and (ii) the Committee, no later than sixty (60) days from the appointment of the Committee (as applicable for clauses (i) and (ii), the "**Initial Challenge Period**") has properly filed an adversary proceeding as required under the Bankruptcy Rules (x) challenging the amount, validity, enforceability, priority or extent of the Prepetition

25845832.1

Secured Obligations, the liens of the Agent on the Prepetition Collateral securing the Prepetition Secured Obligations, or (y) otherwise asserting any other claims, counterclaims, causes of action, objections, contests or defenses against the Agent and/or any other Prepetition Secured Party on behalf of the Debtors' Estates ((x) and (y), collectively, referred to herein as "**Challenges**"), and (b) the Court rules in favor of the plaintiff sustaining any such challenge or claim in any such duly filed adversary proceeding or contested matter; *provided*, that, as to the Debtors, all such Challenges are hereby irrevocably waived and relinquished effective as of the Petition Date. If during the Initial Challenge Period, the Committee or other third party files a motion for standing with a draft complaint identifying and describing all Challenge(s) consistent with applicable law and rules of procedure, the Initial Challenge Period will be tolled for the Committee or other third party solely with respect to the Challenge(s) asserted in the draft complaint until three (3) business days from the entry of an order granting the motion for standing to prosecute such Challenge(s) described in the draft complaint and permitted by the Court (the "**Extended Challenge Period**," together with the Initial Challenge Period, the "**Challenge Period**"). If standing is denied by the Court, the Challenge Period shall be deemed to have expired.

(b)    *Binding Effect.*   Subject to entry of the Final Order, if no such Challenge or motion for standing, as applicable, is timely filed prior to the expiration of the Initial Challenge Period, without further order of the Court: (1) the Debtors' stipulations, admissions and releases contained in this Interim Order (including the Stipulations and the releases set forth in Paragraph 7 below) shall be binding on all parties in interest, including the Debtors' Estates, the Committee, and any subsequently appointed Trustee, case fiduciary, or successors and assigns; (2) the Prepetition Secured Obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance, for all purposes in these Chapter

25845832.1

11 Cases and any subsequent chapter 7 case; (3) the Agent's liens on the Prepetition Collateral shall be deemed to have been, as of the Petition Date, to be, legal, valid, binding, perfected, and with the priority specified in the Stipulations, not subject to defense, counterclaim, recharacterization, subordination or avoidance; and (4) the Prepetition Secured Parties (and their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors) shall not be subject to any other or further challenge by any Committee or any other party in interest, and any such Committee or party in interest shall be enjoined from seeking to exercise the rights of the Debtors' Estates, including without limitation, any successor thereto (including, without limitation, any estate representative or a Trustee, whether such Trustee is appointed or elected prior to or following the expiration of the Initial Challenge Period); *provided*, that if the Chapter 11 Cases are converted to chapter 7 or a Trustee is appointed prior to the expiration of the Initial Challenge Period, any such estate representative or Trustee shall receive the full benefit of the later of (a) the expiration of the Initial Challenge Period and (b) thirty (30) days from the appointment of such estate representative or Trustee, subject to the limitations described herein. If any Challenge or motion for standing, as applicable, is timely and properly filed prior to the expiration of the Initial Challenge Period, the releases, stipulations and admissions contained in this Interim Order, including without limitation, in the Stipulations, of this Interim Order, shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any Committee and any other person, including any Trustee appointed in any Chapter 11 Case(s) or Successor Cases, as applicable, except as to any such findings and admissions that were expressly challenged in the original complaint initiating the adversary proceeding and excluding any amended or additional claims that may or could have been asserted thereafter through an amended complaint under FRCP 15 or otherwise. This stipulation shall be binding upon the

Debtors, their Estates, all parties in interest in the Chapter 11 Cases and their respective successors and assigns, including any Trustee or other fiduciary appointed in the Chapter 11 Cases or any Successor Cases and shall inure to the benefit of the Prepetition Secured Parties and the Debtors and their respective successors and assigns. For the avoidance of doubt, Challenges may be filed against one or more of the Prepetition Secured Parties without filing Challenges against each of the other parties and likewise the Challenge Period may expire as to some but not all of the Prepetition Secured Parties if a Challenge is filed against one or more of the Prepetition Secured Parties but not all of them.

(c)     *No Standing.* Nothing in this Interim Order vests or confers on any person (as defined in the Bankruptcy Code), including any Committee, standing or authority to pursue any claim or cause of action belonging to the Debtors and/or their bankruptcy estates, including, without limitation, any Challenge with respect to the Prepetition Loan Documents or the Prepetition Secured Obligations.

7.     *Debtors' Waivers and Releases.*

(a)     <u>Section 506(c) Claims and 552(b) Equities</u>.  Subject to entry of the Final Order approving the Motion, no costs or expenses of administration which have been or may be incurred in the Chapter 11 Cases or any Successor Cases at any time shall be charged against any of the Prepetition Secured Parties, their respective claims or the Prepetition Collateral, pursuant to section 506(c) of the Bankruptcy Code without the prior written consent of the Agent (and no such consent shall be implied from any other action, inaction or acquiescence by the Agent or any Lender). Subject to entry of the Final Order, the Prepetition Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the

25845832.1

case" exception under Bankruptcy Code section 552(b) shall not apply to the Prepetition Secured Parties with respect to proceeds, products, offspring or profits of any of the Prepetition Collateral.

      (b)      Release.

           (1)      In consideration of and as a condition to the Agent's and the Lenders' consent to use of Cash Collateral and providing other financial accommodations to the Debtors pursuant to the provisions of this Interim Order, each Debtor, on behalf of itself, and its respective successors and assigns and such Debtor's estate (collectively, "**Releasors**"), subject only to Paragraph 6 above, hereby absolutely releases and forever discharges and acquits (i) each Prepetition Secured Party, (ii) the respective successors, participants, assigns directors, officers, attorneys, employees, and other representatives of each Prepetition Secured Party, (iii) the present and former shareholders, affiliates, subsidiaries, divisions, and predecessors of each Prepetition Secured Party (the parties identified in clauses (i) through (iii) being hereinafter referred to collectively as "**Releasees**") of and from any and all claims, demands, causes of action, suits, covenants, contracts, controversies, agreements, promises, sums of money, accounts, bills, reckonings, damages, and any and all other claims, counterclaims, cross claims, defenses, rights of set-off, demands, and liabilities whatsoever (individually, a "**Prepetition Released Claim**" and collectively, "**Prepetition Released Claims**") of every kind, name, nature and description, known or unknown, foreseen or unforeseen, matured or contingent, liquidated or unliquidated, primary or secondary, suspected or unsuspected, both at law and in equity, which, including, without limitation, any so-called "lender liability" claims or defenses, that any Releasor may now or hereafter own, hold, have, or claim to have against Releasees, or any of them for, upon, or by reason of any nature, cause, or thing whatsoever which arose or may have arisen at any time on or prior to the date of this Interim Order, in respect of the Debtors, the Prepetition Obligations, the Prepetition Loan Documents, and any Letters of Credit, or

other financial accommodations under the Prepetition Loan Documents; *provided*, that such release shall not be effective with respect to the Debtors until entry of the Final Order, and with respect to the Debtors' estates, until the expiration of the Challenge Period.

(2)    Laguna Dairy, S.A. de C.V. ("**Laguna**") and New Laguna LLC ("**New Laguna**") and any of its or their affiliates reserve their rights, if any, against the Debtors and their estates with respect to the Reserve Account Cash; *provided, however*, no rights are reserved, either directly or indirectly, against the Prepetition Secured Parties, the Adequate Protection Liens, any Prepetition Collateral, Collateral or proceeds thereof, and (ii) the Debtors and their estates expressly acknowledge and agree that Laguna, New Laguna, any of their Affiliates and any guarantor of any of their obligations shall not have any liability to any of the Debtors or their estates to replenish the Reserve Account Cash or otherwise make payments in respect of any liability arising from or related to the use of such Reserve Account Cash (including, without limitation, with respect to any contractual indemnity or guarantee).

8. 6.    *Budget; Reporting.*

(a)    No later than the Monday of each calendar week commencing on the first Monday following the first full week after the Petition Date, the Debtors shall deliver to the Agent and its counsel an updated Budget.

(b)    The Debtors shall test the Budget on the Monday following the first four (4) full weeks on a four-week trailing basis (each such four week period, the "**Budget Period**") and every other Monday thereafter. So long as no Termination Event has occurred with respect to Cash Collateral, the Debtors shall be authorized (i) to use Cash Collateral, and (ii) to use the Reserve Account Cash, in each case in accordance with the Budget and this Interim Order in an amount that would not cause either (x) actual disbursements to be more than ten percent (10%) in

excess of the disbursements included in the Budget for any Budget Period, or (y) actual receipts (excluding asset sale proceeds other than ordinary course sales of inventory) to be more than ten percent (10%) below the receipts (excluding asset sale proceeds other than ordinary course sales of inventory) included in the Budget for any Budget Period; *provided, however*, that the ten percent (10%) variances in the foregoing clauses (x) and (y) shall be twenty-five percent (25%) with respect to milk products (each, a "**Permitted Variance**").

(c)     The Debtors shall provide the Agent and other Prepetition Secured Parties with all reporting and other information required to be provided to the Agent under the Prepetition Loan Documents. In addition to, and without limiting, whatever rights to access the Agent has under the Prepetition Loan Documents, respectively, subject to existing confidentiality agreements, upon reasonable notice, at reasonable times during normal business hours, the Debtors shall permit representatives, agents, and employees of the Agent and other Prepetition Secured Parties to: (i) have reasonable access to and inspect the Debtors' assets; (ii) examine the Debtors' books and records, and (iii) discuss the Debtors' affairs, finances, and condition with the Debtors' officers, attorneys, consultants, and financial advisors.

9.     *Disposition of Collateral.* The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Prepetition Collateral or the Collateral outside of the ordinary course of business, without the prior written consent of the Agent unless such sale, transfer, lease, encumbrance or other disposition is approved by the Court and results in the indefeasible payment in full in cash of the Prepetition Secured Obligations and, with respect to any letters of credit, either replacement thereof or the posting of Cash Collateral in the amount of 105% of such letters of credit. Unless otherwise agreed to by the Agent in writing, and except as expressly provided herein, all proceeds of any sale or other disposition of the Prepetition

Collateral or the Collateral shall be paid over to the Agent as and to the extent required by this Interim Order and in accordance with the Prepetition Loan Documents.

7. *Carve-Out.* As used in this Interim Order, "**Carve-Out**" means all fees required to be paid to the Clerk of the Court and to the U.S. Trustee pursuant to section 1930(a) of title 28 of the United States Code, plus interest at the statutory rate.

8. *Reservation of Rights.* Notwithstanding anything herein to the contrary, the Debtors reserve the right to argue that, to the extent that any cash payment made hereunder as adequate protection to the Prepetition Secured Parties is not allowed under section 506(b) of the Bankruptcy Code, such payment should be recharacterized and applied as payment of principal owed under the Credit Agreement and shall permanently reduce the Prepetition Loan Obligations accordingly, and the Prepetition Secured Parties reserve the right to object to any such argument.

9. *Lien Perfection.* This Interim Order shall be sufficient and conclusive evidence of the validity, perfection and priority of the Bank Product Liens and Adequate Protection Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect the Bank Product Liens and Adequate Protection Liens or to entitle the Bank Product Liens and Adequate Protection Liens to the priorities granted herein. Notwithstanding the foregoing, the Agent (on behalf of itself and the other Prepetition Secured Parties) may, in its sole discretion, file such financing statements, mortgages, security agreements, notices of liens and other similar documents, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, security agreements, notices and other agreements or documents shall be deemed to have been filed or recorded at the time and on the date of the

commencement of the Chapter 11 Cases. The Agent (on behalf of itself and the other Prepetition Secured Parties) may, in its sole discretion, file a photocopy of this Interim Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which any Debtor has real or personal property and, in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Interim Order.

7.10. *Termination Events.* The Debtors' right to use Cash Collateral shall automatically terminate (the date of such termination, the "**Termination Date**"), without further notice or court proceeding, on the earliest to occur of any of the events set forth below (each such event, a "**Termination Event**"), in each case unless waived in writing by the Agent:

(a) January 23, 2020;

~~(b) failure of the Debtors to engage and continue to engage Conway MacKenzie or another financial advisor acceptable to the Agent and the Prepetition Secured Parties and on terms reasonably acceptable to the Agent and the Prepetition Secured Parties on or before January 10, 2020;~~

~~(c)~~ (b) entry of an order of this Court terminating Debtors' right to use Cash Collateral;

~~(d)~~ (c) the termination ~~or non-consensual modification~~ of this Interim Order or the failure of this Interim Order to be in full force and effect;

~~(e)~~ (d) failure of the Debtors to abide by the terms, covenants, and conditions of this Interim Order or the Budget;

~~(f)~~ (e) the use of Cash Collateral for any purpose not authorized by this Interim Order;

(g) (f) the dismissal of any of these Chapter 11 Cases, the conversion of any of these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, or the appointment in any of these Chapter 11 Cases of a trustee or examiner with expanded powers; or

~~(h)     an order of the Court is entered (other than the Final Order) reversing, staying, vacating, or otherwise modifying in any material respect the terms of this Interim Order.~~

*11. Letters of Credit.* The existing Letters of Credit issued under the RCF Facility prior to the Petition Date shall be subject to the same rights and obligations of the parties as in effect prior to the Petition Date, in each case subject to the terms of the Credit Agreement and the other Prepetition Loan Documents. To the extent any Letters of Credit are drawn as permitted under the Credit Agreement, the L/C Issuer (as defined in the Credit Agreement) is authorized, and the automatic stay is modified, to apply any cash collateral it is holding to satisfy the Debtors' obligations under the applicable Letter of Credit.

*12. Miscellaneous.*

(a)     *Binding Effect.* The provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in the Chapter 11 Cases, including, without limitation, the Prepetition Secured Parties, the Debtors, and their respective successors and assigns (including any trustee hereinafter appointed or elected for the estate of any Debtor, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the Prepetition Secured Parties and the Debtors and their respective successors or assigns.

(b)     *Modification of Automatic Stay.* The Debtors are authorized and directed to perform all acts and to make, execute and deliver any and all instruments as may be reasonably

necessary to implement the terms and conditions of this Interim Order and the transactions contemplated hereby. The automatic stay of section 362 of the Bankruptcy Code is hereby modified to permit the Debtors and each of the Prepetition Secured Parties to accomplish the transactions contemplated by this Interim Order.

(c) *Headings*. The headings in this Interim Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Interim Order.

(d) *Effectiveness*. This Interim Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon entry hereof, and there shall be no stay of execution of effectiveness of this Interim Order. To the extent that any finding of fact shall be determined to be a conclusion of law, it shall be so deemed and vice versa.

(e) *No Third Party Rights*. Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third-party, creditor, equity holder or any direct, indirect, third-party or incidental beneficiary.

(f) *Survival of Interim Order*. The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (i) confirming any chapter 11 plan of reorganization in the Chapter 11 Cases, (ii) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, (iii) to the extent authorized by applicable law, dismissing any of the Chapter 11 Cases, (iv) withdrawing of the reference of any of the Chapter 11 Cases from the Court, or (v) providing for abstention from handling or retaining of jurisdiction of any of the Chapter 11 Cases in the Court.

(g) *Controlling Effect of Interim Order*. To the extent any provision of this Interim Order conflicts or is inconsistent with any provision of the Motion, the provisions of this Interim Order shall control to the extent of such conflict.

(h)    *Order Immediately Effective.* Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are effective immediately and enforceable upon its entry.

(i)    *Debtor Authorization to Effectuate Relief.* The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

(j)    *Exclusive Jurisdiction.* This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

10.    *Proofs of Claim.* Notwithstanding the entry of an order establishing a bar date in any of these Chapter 11 Cases, or the conversion of these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, the Prepetition Secured Parties shall not be required to file proofs of claim in any of the Chapter 11 Cases or any Successor Cases with respect to any of the Prepetition Obligations, Adequate Protection Obligations, Adequate Protection Liens, Bank Product Liens, Adequate Protection Superpriority Claim, or any other claims or liens granted hereunder or created hereby. The Agent, for the benefit of the other Prepetition Secured Parties, is hereby authorized and entitled, in its sole and absolute discretion, but in no event is required, to file (and amend and/or supplement, as it sees fit) proofs of claim in each of the Chapter 11 Cases on behalf of all of the Prepetition Secured Parties in respect of the Prepetition Obligations. Any proof of claim so filed shall be deemed to be in addition and not in lieu of any other proof of claim that may be filed by any of the Prepetition Secured Parties. Any order entered by the Bankruptcy Court in relation to the establishment of a bar date in any of the Chapter 11 Cases will so provide.

25845832.1

11.    *Final Hearing.* The final hearing (the "**Final Hearing**") on the Motion shall be held on January 23, 2020, at 1:00 p.m., prevailing Eastern Time. The Debtors shall, on or before January 10, 2020, mail copies of a notice of the entry of this Interim Order, together with a copy of this Interim Order and a copy of the Motion, to the parties having been given notice of the Interim Hearing, to any party that has filed prior to such date a request for notices with this Court, and to counsel for the Committee, if any, and any other statutory committee of unsecured creditors appointed pursuant to section 1102 of the Bankruptcy Code. Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Eastern Time, on January 16, 2020, and shall be served on: (a) the Debtors, Borden Dairy Company, 8750 North Central Expressway, Suite 400, Dallas, Texas 75231, Attn: Jason Monaco; (b) proposed counsel to the Debtors, Arnold & Porter Kaye Scholer LLP, 70 West Madison Street, Suite 4200, Chicago, Illinois 60602, Attn: Tyler Nurnberg, Seth Kleinman, and Sarah Gryll; (c) proposed co-counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn: M. Blake Cleary; (d) counsel to ACON Dairy Investors, L.L.C., Hogan Lovells US LLP, 390 Madison Avenue, New York, New York 10017, Attn: Christopher Donoho III; (e) counsel to New Laguna, LLC, Dechert LLP, Three Bryant Park, 1095 Avenue of the Americas, New York, New York 10036, Attn: Brian Greer; (f) counsel to the Agent, RCF Facility Lenders, and Term Loan A Facility Lenders, Blank Rome LLP, 1201 N. Market Street, Suite, 800, Wilmington, Delaware 19801, Attn: Regina Stango Kelbon; (g) counsel to the Term Loan B Facility Lenders, King & Spalding LLP, 1185 Avenue of the Americas, 34th Floor, New York, New York 10036, Attn: Roger Schwartz; (h) counsel to any statutory committee

25845832.1

appointed in these cases; and (i) the Office of the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Timothy Fox, Jr..

Dated: January 9, 2020
Wilmington, Delaware

CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE

25845832.1

EXHIBIT 1

BUDGET

**Borden Dairy Company**
13 Week Cash Flow Forecast ($000's)

| WEEK ENDING | 10-Jan WEEK 1 | 17-Jan WEEK 2 | 24-Jan WEEK 3 | 31-Jan WEEK 4 | 7-Feb WEEK 5 | 14-Feb WEEK 6 | 21-Feb WEEK 7 | 28-Feb WEEK 8 | 6-Mar WEEK 9 | 13-Mar WEEK 10 | 20-Mar WEEK 11 | 27-Mar WEEK 12 | 3-Apr WEEK 13 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Cash Balance Available | 5,281 | 25,361 | 3,585 | 20,011 | 5,895 | 16,366 | 4,652 | 18,608 | 1,949 | 13,233 | 6,680 | 7,012 | 361 | 5,281 |
| Contribution from Investment Account | 10,000 | | | | | | | | | | | 6,000 | | 16,000 |
| Receipts (excl. AG Trusts) | 30,720 | 20,241 | 19,868 | 19,577 | 18,810 | 19,004 | 19,156 | 19,275 | 19,946 | 19,893 | 19,848 | 25,814 | 19,696 | 271,847 |
| **Cash Outflows:** | | | | | | | | | | | | | | |
| **Non-Milk Disbursements:** | | | | | | | | | | | | | | |
| *Specialty Materials* | (4,969) | (3,397) | (2,625) | (2,362) | (2,955) | (3,233) | (3,321) | (3,390) | (3,419) | (3,388) | (3,362) | (3,341) | (3,329) | (43,031) |
| *Purchased for Resale* | (1,793) | (1,249) | (958) | (863) | (1,079) | (1,181) | (1,213) | (1,238) | (1,248) | (1,237) | (1,238) | (1,220) | (1,216) | (15,713) |
| *Distribution & Transport* | (1,734) | (1,200) | (927) | (834) | (1,044) | (1,142) | (1,173) | (1,198) | (1,208) | (1,197) | (1,187) | (1,180) | (1,176) | (15,200) |
| *Plant, Maintenance & Facility Costs* | (1,207) | (835) | (645) | (581) | (726) | (795) | (816) | (833) | (840) | (833) | (826) | (821) | (818) | (10,578) |
| *Taxes & Utilities* | (1,359) | (940) | (722) | (654) | (818) | (895) | (919) | (939) | (946) | (938) | (931) | (925) | (922) | (11,913) |
| *Non-Restructuring Professionals* | (586) | (405) | (313) | (282) | (353) | (386) | (396) | (405) | (408) | (404) | (401) | (399) | (397) | (5,135) |
| *All Other* | (129) | (89) | (69) | (62) | (78) | (85) | (87) | (89) | (90) | (89) | (88) | (88) | (87) | (1,130) |
| *Trailing Capital Payments* | (400) | | (233) | (233) | | | (400) | | | | | | | (1,500) |
| Total Non-Milk Disbursements | (12,117) | (8,340) | (6,497) | (5,871) | (7,452) | (7,717) | (7,927) | (8,092) | (8,159) | (8,085) | (8,023) | (7,974) | (7,946) | (104,200) |
| Milk Payments (excl. AG Trusts) | | | | (5,837) | (2,428) | (12,951) | (799) | (15,878) | (2,483) | (8,460) | (8,394) | (13,440) | (2,616) | (73,287) |
| Payroll (Inc taxes) | (3,270) | (6,130) | (1,779) | (6,173) | (1,578) | (5,574) | (2,405) | (4,692) | (1,952) | (6,725) | (1,967) | (5,610) | (1,919) | (49,774) |
| Total 503(b)(9) Claims | (1,850) | (19,203) | (1,480) | (9,820) | (1,300) | | | | | | | | | (33,653) |
| Maintenance CAPEX | (250) | (250) | (250) | (250) | (250) | (250) | (250) | (250) | (250) | (250) | (250) | (250) | (250) | (3,250) |
| Total Cash Outflow | (17,487) | (33,923) | (10,006) | (27,952) | (13,008) | (26,492) | (11,380) | (28,912) | (12,844) | (23,520) | (18,634) | (27,274) | (12,731) | (264,164) |
| Net Cash Flow Available | 13,233 | (13,682) | 9,861 | (8,374) | 5,802 | (7,488) | 7,776 | (9,637) | 7,101 | (3,628) | 1,215 | (1,460) | 6,964 | 7,683 |
| Net AG Trust Receipts & Payments | 6,847 | (8,094) | 6,565 | (5,318) | 4,668 | (4,226) | 6,180 | (6,623) | 4,183 | (925) | (883) | (5,192) | 4,155 | 1,339 |
| Interest Payments Term A and ABL | | | | (424) | | | | (399) | | | | | (426) | (1,249) |
| Restructuring Costs | | | | | | | | | | (2,000) | | | (500) | (2,500) |
| Ending Cash Balance | 25,361 | 3,585 | 20,011 | 5,895 | 16,366 | 4,652 | 18,608 | 1,949 | 13,233 | 6,680 | 7,012 | 361 | 10,554 | 10,554 |
| Investment Account Balance (Eoy) | 16,600 | 16,600 | 16,600 | 16,600 | 16,600 | 16,600 | 16,600 | 16,600 | 16,600 | 16,600 | 16,600 | 10,600 | 10,600 | 10,600 |
| Borrowing Base Projection | 61,122 | 67,324 | 66,193 | 70,090 | 70,090 | | | | | | | | | |

*Using historical method/practice*