## THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BORDEN DAIRY COMPANY, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 20-10010 (CSS)<br>(Jointly Administered)<br><br>**Re: D.I. 13, 41, 69, 84, 86, 120, 129, 130,<br>131 & 132** |

## THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' OMNIBUS LIMITED OBJECTION, RESPONSE AND RESERVATION OF RIGHTS

The Official Committee of Unsecured Creditors (the "Committee") appointed in the above-captioned chapter 11 cases of Borden Dairy Company and its affiliated debtors and debtors in-possession (collectively, the "Debtors") hereby files this *Omnibus Limited Objection, Response and Reservation of Rights* (the "Committee Response").[2]

## RESPONSE AND LIMITED OBJECTION[3]

1.    While the Committee was formed less than a week ago, and its advisors retained only in the past few days, it is immediately clear that a ceasefire is needed to afford the Debtors a

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Borden Dairy Company (1509); Borden Dairy Holdings, LLC (8504); National Dairy, LLC (9109); Borden Dairy Company of Alabama, LLC (5598); Borden Dairy Company of Cincinnati, LLC (1334); Borden Transport Company of Cincinnati, LLC (3462); Borden Dairy Company of Florida, LLC (5168); Borden Dairy Company of Kentucky, LLC (7392); Borden Dairy Company of Louisiana, LLC (4109); Borden Dairy Company of Madisonville, LLC (7310); Borden Dairy Company of Ohio, LLC (2720); Borden Transport Company of Ohio, LLC (7837); Borden Dairy Company of South Carolina, LLC (0963); Borden Dairy Company of Texas, LLC (5060); Claims Adjusting Services, LLC (9109); Georgia Soft Serve Delights, LLC (9109); NDH Transport, LLC (7480); and RGC, LLC (0314). The location of the Debtors' service address is: 8750 North Central Expressway, Suite 400, Dallas, TX 75231.

[2]    Capitalized terms used but not defined shall have the meaning provided *infra* or in the Cash Collateral Motion.

[3]    As of the time of the Committee's objection deadline, the Debtors had not provided substantially all of the information requested by the Committee and its advisors including: (i) an updated Budget, (ii) access to the dataroom, and (iii) certain other information requested by the Committee's advisors related to the Debtors' requested second-day relief. In addition, the 30(b)(6) deposition of Mr. Monaco, the Debtors' First Day Declarant, is on-going and has been continued to January 22. The Committee is participating in the deposition and is actively seeking additional information from the Debtors and its advisors. The Committee reserves the right to supplement this Response at any time prior to or at the hearing.

breathing spell so they can focus on stabilizing their businesses in the short term. To that end, the Committee's advisors have been involved in a number of communications over the weekend with both the Debtors and the Lenders to try to come up with a consensual form of further interim cash collateral order.[4] If the parties cannot agree to a consensual form of cash collateral order by this coming Thursday, the Committee suggests that this Court enter a further interim order in a form substantially the same as the First Interim Cash Collateral Order. [D.I. 69][5]

2.     The Committee's main focus is to ensure the going concern of the Debtors' businesses, thereby protecting thousands of jobs and customer and vendor relationships and maximizing recovery for unsecured creditors. In order to protect all stakeholders, the Debtors' businesses must be put on stable ground; this requires a breathing spell. The "bleed" that must be stopped in the present cases is not just the typical operational loss seen in a bankruptcy, but also the enormous drain of estate resources seen over the last fifteen days on account of escalating litigation costs. The Debtors' time and resources should not be focused on depositions and discovery but on stabilizing their business operations and adapting to the new reality of chapter 11. As this Court acknowledged at the First Day Hearing, "[the Debtors] got a lot of work to do to just stabilize the business in addition to providing information to the lenders. In effect, like most Chapter 11 debtors there is 45 hours of work that has to be put in every 24 hour day. It is a very difficult situation."[6] During this stabilization period, the Committee will work closely with

---

[4]     Any order must provide for, among other things, an appropriate investigation period and related budget. The Committee expressly reserves all rights related thereto.

[5]     PNC has filed the *Motion of PNC Bank, National Association for Entry of an Order (i) Conditioning the Use, Sale, or Lease of Lenders Prepetition Collateral on the Provision of Adequate Protection Pursuant to 11 U.S.C. §§ 361, 363, 507(b) and Fed. R. Bankr. P. 4001(a) as of the Petition Date, and (ii) Granting Ancillary and Related Relief* [D.I. 84] which is set to be heard by the Court on January 29, 2020. If the Court finds that additional adequate protection is warranted any interim order on cash collateral can be modified in accordance with the Court's findings.

[6]     First Day Hearing Transcript at 70:14-70:18.

2

the Debtors and their advisors to accomplish what the Debtors acknowledged must be done – engage in good faith discussions regarding financing and an exit strategy.[7]  The Committee will also work to address the "communication problem" the Court identified at the First Day Hearing, and try to bridge the gap that currently exists between the Debtors and the Lenders, in an effort to come up with an exit plan for the Debtors in these chapter 11 cases.[8]

3.      Although the Committee understands the Lenders' frustration with the lack of progress to date on a consensual cash collateral order and access to information, the Debtors must be able to use cash collateral, within reasonable parameters, to fund their businesses.  Since it is clear that the parties disagree on what even constitutes cash collateral – and specifically whether the Reserve Account is encumbered – there must be a separate proceeding to determine the validity, extent and priority of the various alleged secured claims and other interests.  However, the question of whether certain parties have a validly perfected security interest in, or a constructive trust over the Reserve Account, should not and cannot be resolved on Thursday.  The Debtors must be afforded a breathing spell to stabilize their businesses and allow both the Debtors' newly retained chief restructuring officer, Kent Percy ("CRO"), and the Committee's advisors to fully assess the Debtors' financial situation and cash needs.  During this further interim period, PNC and KKR will receive the Adequate Protection Payments, Adequate Protection Fees, and will be further protected against diminution in value by the expanded Adequate Protection Liens – notably a lien on the disputed Reserve Account and all causes of action other than Avoidance Actions.  As

---

[7]      *Id.* at 27:9-27:18.

[8]      *Id.* at 69:24.

3

long as the Debtors are not withdrawing further funds from the Reserve Account, the Lenders should be considered adequately protected for the additional interim period.[9]

4.      The Lenders also raise issues with respect to the Debtors' recent CRO hire and the nature and scope of his role and whether the CRO should report to the independent directors.[10] The Committee is aware that there is prior history between the parties and there are other facts that the Committee must investigate and evaluate and will commence such work and also play an active role in ensuring that the Debtors – consistent with their fiduciary duties – are proceeding to move these cases forward in a manner that will maximize value for the estates.  If the Committee has concerns about those efforts by the Debtors, the Committee will make them known to this Court.

5.      In the interim, however, all of the parties' advisors, including the CRO and AP Services, LLC ("Alix"), need additional time to assess the Debtors' revenue projections and anticipated cash needs, and to further analyze and vet the forthcoming proposed budget.  Included in this assessment of the Debtors' cash needs, is the evaluation of the proposed critical vendor and section 503(b)(9) payments, as well as certain bonus payments contemplated by the Supplemental Order to the Wages Motion.  The Committee must be provided with sufficient time and adequate information to assess and verify the propriety of these payments under the requirements of the Bankruptcy Code.  To that end, the Committee's recently retained financial advisor, Berkeley Research Group, LLC ("BRG") has submitted questions to Alix but they are unlikely to be resolved, understandably, by Thursday as Alix is still getting up to speed itself.

---

[9]      Of course, this assumes that the Debtors' cash position has not substantially deteriorated and that the amended Budget, and the projections underlying the Budget, are not materially different from the original Budget filed by the Debtors.

[10]     See *Preliminary Supplemental Objection and Reservation of Rights of Certain Prepetition Lenders to Debtors' Cash Collateral Motion* [D.I. 129] at 5.  "While the retention of a financial professional is facially a step in the right direction, upon review of the applicable engagement letter, it becomes clear that this retention is more akin to a traditional financial advisor role than a typical Chief Restructuring Officer, as, among other things, (i) Mr. Percy will report to the Debtors' existing chief executive officer and not the independent members of the Debtors' board of directors and (ii) Mr. Percy will not have customary bankruptcy and restructuring decision making authority."

6.      BRG will be working extensively with Alix to test the assumptions under the Budget to ensure that there is sufficient cash to operate at least during the needed stabilization period.  Given the additional analysis to be conducted, the Committee believes that these matters should be continued and that final hearings on the Debtor's Employee Wage Motion and Critical Vendor Motion, in addition to the Cash Collateral Motion, not proceed on Thursday.

7.      The Committee also understands the concerns expressed by the Lenders with respect to the CRO's role.  However, as noted by the Court, adequate protection does not require the appointment of a CRO:  "What the secured lenders are also not entitled to, at least on a non-consensual basis, is to force the retention of a CRO by the debtors. If you look under the adequate protection definition in the code it's just not there. You don't get to tell the debtors who gets to manage their business. Indeed, it's contrary to the entire thrust of a Chapter 11 debtor-in-possession model that the debtor-in possession, until otherwise ordered, manages its own affairs subject, of course, to court approval where necessary."[11]  If the cases evolve in a way that calls into question the Debtors' ability to fulfill its required fiduciary role, the Committee will not hesitate to seek Court intervention, and pursue any action, if necessary, against any person or entity that may be appropriate.

8.      The Committee urges the Court to grant a further order permitting the use of cash collateral on a further interim basis through February 24, 2020 or other such date as the Court determines is appropriate.  Otherwise, these cases face a catastrophic outcome for all stakeholders involved.   If the parties are not able to reach a consensus, or the Debtors demonstrate they are not able to execute their duties to preserve the estates for all stakeholders, the Committee will seek appropriate relief.

---

[11]      *Id*. at 68:15-68:23.

## **RELEVANT BACKGROUND**

9.    On January 5, 2020 (the "Petition Date"), each of the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtors have continued to operate and manage their businesses as debtors-in-possession pursuant to Bankruptcy Code Sections 1107(a) and 1108.  No trustee or examiner has been appointed.

10.    On January 6, 2020, the Debtors filed the *Motion for Interim and Final Orders (A) Authorizing Use of Cash Collateral and Granting Adequate Protection, (B) Authorizing Use of Reserve Account Cash, (C) Scheduling a Final Hearing, and (D) Granting Related Relief* [D.I. 13] (the "Cash Collateral Motion").

11.    In addition to other objections and responses, PNC Bank, National Association ("PNC") and KKR Credit Advisors (US), LLC ("KKR" and with PNC, the "Lenders"), as the alleged primary secured creditors of the Debtors' estates, filed, respectively, the (i) *Objection of PNC Bank, National Association to Debtor's Cash Collateral Motion and Other First Day Motions* [D.I. 40] and (ii) *Omnibus Objection and Reservation of Rights of Certain Prepetition Lenders to Debtors' First Day Pleadings and Joinder to Objection of PNC Bank, National Association* [D.I. 41] (together, the "Initial Creditor Objections").

12.    The Court conducted a hearing (the "First Day Hearing") on the Cash Collateral Motion on January 8, 2020 and thereafter granted interim relief pursuant to the *Interim Order (A) Authorizing Use of Cash Collateral, For an Interim Period, (B) Granting Adequate Protection, (C) Authorizing Use of Reserve Account Cash, (D) Scheduling a Second Hearing, and (E) Granting Related Relief* [D.I. 69] (the "First Interim Cash Collateral Order").

13.    As set forth in the First Interim Cash Collateral Order, the Debtors were allowed to use Cash Collateral, including being allowed to liquidate $10,000,000 in the Reserve Account and transfer said funds to their main operating account, as specified in the Budget through January 23,

2020. The Court granted KKR and PNC adequate protection as set forth in the First Interim Cash Collateral Order including Adequate Protection Liens, Adequate Protection Payments and Adequate Protection Fees.

14.    On January 15, 2020, the Office of the United States Trustee appointed the Committee. *See* Notice of Appointment of Committee of Unsecured Creditors [D.I. 108]. The Committee's membership presently consists of: (i) Central States, Southeast and Southwest Areas Pension Fund; (ii) Tetra Pak, Inc.; (iii) Packaging Corporation of America; (iv) Silgan White Cap LLC; and (v) International Brotherhood of Teamsters.

15.    Laguna Dairy, S. de R.L. de C.V. (f/k/a Laguna Dairy, S.A. de C.V.) and New Laguna, LLC (together, "Laguna") filed the *Objection of Laguna Dairy, S. de R.L. de C.V. (f/k/a Laguna Dairy, S.A. de C.V.) and New Laguna, LLC to Debtors' Motion for Interim and Final Orders (A) Authorizing Use of Cash Collateral and Granting Adequate Protection, (B) Authorizing Use of Reserve Account Cash, (C) Scheduling a Final Hearing, and (D) Granting Related Relief* [D.I. 120] (the "Laguna Objection") in which Laguna asserts that the Reserve Account is not property of the estates but rather is held in constructive trust for Laguna's benefit.

16.    On January 18, 2020, (i) PNC filed the *Preliminary Supplemental Omnibus Objection of PNC Bank, National Association to Debtors' Cash Collateral and Other First Day Motions* [D.I. 131] and (ii) KKR filed its *Preliminary Supplemental Objection and Reservation of Rights of Certain Prepetition Lenders to Debtors' Cash Collateral Motion* [D.I. 129] (together the "Creditor Supplemental Objections" and collectively with the Initial Creditor Objections, the "Creditor Objections"). In addition to the foregoing. KKR contests the Debtors' remaining First Day Pleadings [D.I. 130].

**RESERVATION OF RIGHTS**

17.     As the Committee to date has not received most of the information it has sought from the Debtors to evaluate much of the second day relief requested, the Committee reserves the right to supplement this Response at any time at or prior to the Hearing.  The Committee further reserves all rights to supplement this Response, including based on any objection, response, reply, proposed order or other papers submitted in connection with this matter, or otherwise.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

**WHEREFORE**, for the foregoing reasons, the Committee respectfully requests that the

Court grant the Cash Collateral Motion on a further interim basis as provided for herein.


Dated:  January 21, 2020

*/s/ Eric J. Monzo*
Carl N. Kunz, III (DE Bar No. 3201)
Eric J. Monzo (DE Bar No. 5214)
Brya M. Keilson (DE Bar No. 4643)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
E-mail: ckunz@morrisjames.com
E-mail: emonzo@morrisjames.com
E-mail: bkeilson@morrisjames.com

-and-

Michael G. Burke (pro hac vice pending)
SIDLEY AUSTIN LLP
787 7th Avenue
New York, NY 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599
Email: mgburke@sidley.com

-and-

Matthew A. Clemente (pro hac vice pending)
Genevieve G. Weiner (pro hac vice pending)
Michael Fishel (pro hac vice pending)
SIDLEY AUSTIN LLP
1 South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312)853-7036
Email: mclemente@sidley.com
Email: gweiner@sidley.com
Email: mfishel@sidley.com

*Proposed Counsel for the Official Committee*
*of Unsecured Creditors*