## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BORDEN DAIRY COMPANY, *et al.*, | Case No. 20-10010 (CSS) |
| Debtors.[1] | (Jointly Administered) |
| | **Ref. Docket Nos. 13, 14, and 205** |

## FINAL ORDER (A) AUTHORIZING USE OF CASH COLLATERAL, (B) GRANTING ADEQUATE PROTECTION, (C) AUTHORIZING USE OF RESERVE ACCOUNT CASH, AND (D) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of the above-captioned debtors and debtors and debtors-in-possession (collectively, the "**Debtors**") for entry of a final order (this "**Final Order**"), pursuant to sections 105, 361, 362, 363, 506(a), 507(b), 552 and 553 of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 4001, 6003, 6004, 7062 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2002-1(b), 4001-2 and 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), seeking, among other things:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Borden Dairy Company (1509); Borden Dairy Holdings, LLC (8504); National Dairy, LLC (9109); Borden Dairy Company of Alabama, LLC (5598); Borden Dairy Company of Cincinnati, LLC (1334); Borden Transport Company of Cincinnati, LLC (3462); Borden Dairy Company of Florida, LLC (5168); Borden Dairy Company of Kentucky, LLC (7392); Borden Dairy Company of Louisiana, LLC (4109); Borden Dairy Company of Madisonville, LLC (7310); Borden Dairy Company of Ohio, LLC (2720); Borden Transport Company of Ohio, LLC (7837); Borden Dairy Company of South Carolina, LLC (0963); Borden Dairy Company of Texas, LLC (5060); Claims Adjusting Services, LLC (9109); Georgia Soft Serve Delights, LLC (9109); NDH Transport, LLC (7480); and RGC, LLC (0314). The location of the Debtors' service address is: 8750 North Central Expressway, Suite 400, Dallas, Texas 75231.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

(a)    authorization for the Debtors to use Cash Collateral (as defined herein), and any proceeds thereof on a final basis;

(b)    authorization for the Debtors to use certain of the proceeds of the Reserve Account (as defined in the Motion) (the "**Reserve Account Cash**");

(c)    authorization to grant, as of the Petition Date (as defined herein), the Adequate Protection Superpriority Claims and Adequate Protection Liens (each as defined herein), to the extent of and as compensation for any Diminution in Value (as defined herein), and to make the Adequate Protection Payments (as defined herein);

(d)    modification by the Court of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Final Order; and

(e)    waiver of any applicable stay (including under Bankruptcy Rule 6004) and providing for the immediate effectiveness of this Final Order;

and due and appropriate notice of the Motion and the interim hearings held before the Court on January 8, 2020 (the "**First Interim Hearing**," and the order entered thereafter in connection with the use of Cash Collateral [Docket No. 69], the "**First Interim Order**") January 23, 2020 (the "**Second Interim Hearing**," and the order entered thereafter in connection with the use of Cash Collateral [Docket No. 205], the "**Second Interim Order**"), and the final hearing held before the Court on March 3, 2020 (the "**Final Hearing**," and together with the First Interim Hearing and the Second Interim Hearing, collectively being referred to as the "**Hearings**"), having been provided by the Debtors; and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion; and upon the record made by the Debtors in the Motion, in the *Declaration of Jason Monaco in Support of Chapter 11 Petitions and First Day Motions* (the

"**First Day Declaration**") [Docket No. 15], the *Declaration of Sarah Gryll* [Docket No. 14], at the First Interim Hearing, which included testimony provided by Jason Monaco, the Debtors' Chief Financial Officer, on cross-examination and redirect, at the Second Interim Hearing and at the Final Hearing; and the relief granted herein being reasonable, appropriate and in the best interests of the Debtors, their creditors, their estates and all other parties in interest in these Chapter 11 Cases (as defined herein); and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor.

### THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]

A.    *Disposition.* The relief requested in the Motion is hereby granted on a final basis, on the terms set forth below. Any objections to the Motion that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled on the merits. This Final Order shall become effective immediately upon its entry.

B.    *Petition Date.* On January 5, 2020 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**") with the Court.

C.    *Debtors in Possession.* The Debtors continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No party has requested the appointment of a trustee or examiner in these Chapter 11 Cases.

---

[3]    In accordance with Bankruptcy Rule 7052, any proposed finding of fact more properly classified as a proposed legal conclusion shall be deemed as such, and any proposed conclusion of law more properly classified as a proposed factual finding shall also be deemed as such.

26110744.2

D.     *Jurisdiction and Venue.*  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  The Court may enter a final order consistent with Article III of the United States Constitution.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The predicates for the relief granted herein are sections 105, 361, 362, 363, 506, 507, and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001 and 9014, and Local Rule 4001-2.

E.     *Committee Formation.*    An official committee of unsecured creditors (the "**Committee**") was appointed on January 15, 2020.

F.     *Notice.*  Notice of the Hearings was provided in accordance with the provisions of Local Rule 9013-1(m) to: (a) the Office of the United States Trustee for the District of Delaware, (b) the holders of the thirty (30) largest unsecured claims against the Debtors on a consolidated basis, (c) the Office of the United States Attorney General for the District of Delaware, (d) the Internal Revenue Service, (e) the Securities and Exchange Commission, (f) financial institutions at which the Debtors maintain deposit accounts, (g) counsel to ACON Dairy Investors, L.L.C., (h) counsel to New Laguna, LLC ("**Laguna**"), (i) counsel to the Agent, RCF Facility Lenders, and Term Loan A Facility Lenders, (j) counsel to the Term Loan B Facility Lenders, (k) all other parties asserting a lien on or a security interest in the assets of the Debtors to the extent reasonably known to the Debtors, (l) proposed counsel to the Committee, and (m) any other party entitled to notice pursuant to Local Rule 9013-1(m).  Given the nature of the relief granted herein, the Court concludes that the foregoing notice constitutes due, sufficient and appropriate notice under the

26110744.2

circumstances and complies with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002 and 4001(b) and (d), and the Local Rules.

     G.    *Debtors' Representations and Stipulations.*  Without prejudice to the rights of any other party, but in each case subject to the limitations contained in Paragraph 7 below, the Debtors represent, admit, stipulate, and agree (collectively, the "**Stipulations**") as follows:

     (i)    *Prepetition Credit Facility.*  On July 6, 2017, Borden, as borrower, the other Loan Parties (as defined in the Credit Agreement (as defined herein)) party thereto (together with Borden, the "**Loan Parties**"), each of the lenders from time to time party thereto (the "**Lenders**"), the L/C Issuer (as defined in the Credit Agreement), and PNC Bank, National Association ("**PNC**"), as administrative agent (in such capacity, the "**Administrative Agent**") and collateral agent (in such capacity, the "**Collateral Agent**," and in such capacities, collectively with the Administrative Agent, the "**Agent**," and together with the Lenders and the L/C Issuer, the "**Prepetition Secured Parties**"), entered into that certain Financing Agreement (as amended, modified, restated, amended and restated, and/or supplemented from time to time, the "**Credit Agreement**" and, collectively with all agreements, documents, notes, mortgages, security agreements, pledges, guarantees, subordination agreements, deeds, instruments, indemnities, indemnity letters, fee letters, assignments, charges, amendments, and any other agreements delivered pursuant thereto or in connection therewith, including the "Loan Documents" (as defined in the Credit Agreement), the "**Prepetition Loan Documents**"), which provided the Debtors with a $275 million credit facility (the "**Credit Facility**"). The Credit Facility consists of: (a) a $70 million revolving credit facility (the "**RCF Facility**," and such loans thereunder, the "**Revolving Loans**"), which includes a $25 million subfacility for the

issuance of letters of credit ("**Letters of Credit**"), (b) a $30 million term loan A facility (the "**Term Loan A Facility**," and such loans thereunder, the "**Term Loan A Loans**"), and (c) a $175 million term loan B facility (the "**Term Loan B Facility**").    All indebtedness, liabilities, and obligations under the Prepetition Loan Documents, specifically including all "Obligations" (as defined in the Credit Agreement), are referred to herein as the "**Prepetition Secured Obligations**."    Each of the Prepetition Loan Documents is valid, binding, and, subject to applicable bankruptcy law, enforceable against the Loan Parties and such other Debtor subsidiaries and affiliates party to any Prepetition Loan Documents (collectively, the "**Obligors**").

(ii)    *Prepetition Secured Obligations.*  As of the Petition Date, the Loan Parties were justly and lawfully indebted and liable under the Prepetition Loan Documents, without defense, counterclaim, reduction or offset of any kind, in the aggregate principal amount of not less than (A) $269,599,876.75 in respect of loans and other financial accommodations made by the Lenders, comprised of $56,669,753.00 of principal amount of loans outstanding under the RCF Facility; $24,125,000.00 of principal amount of loans outstanding under the Term Loan A Facility; and $175,000,000.00 of principal amount of loans outstanding under the Term Loan B Facility, (B) $12,605,123.75 in respect of certain letters of credit issued by the L/C Issuer (as defined in the Credit Agreement), under a $25,000,000.00 subfacility under the RCF Facility, and (C) $1,200,000.00 in respect of credit card obligations and other Bank Product Obligations (as defined in the Credit Agreement) owed to Bank Product Providers (as defined in the Credit Agreement), pursuant to, and in accordance with, the Credit Agreement and the other Prepetition Loan Documents, plus accrued and unpaid interest, fees, costs and expenses (including counsel,

financial advisors, consultants, accountants, to the extent applicable, chargeable or reimbursable under the Prepetition Loan Documents) with respect to each of the foregoing.

(iii)    *Prepetition Liens.*  Pursuant to and as more particularly described in the Prepetition Loan Documents, the Prepetition Secured Obligations are secured by, among other things, first priority liens and mortgages on, security interests in, and assignments and pledges of (collectively, the "**Prepetition Liens**") all of the Loan Parties' right, title, and interest in the Loan Parties' property (to the extent provided in and as more fully described in the Prepetition Loan Documents, the "**Prepetition Collateral**"), subject to any other valid, perfected and unavoidable lien or security interest otherwise existing as of the Petition Date that is senior to the security interest of the Prepetition Secured Parties, to the extent such liens or security interests are valid, perfected and unavoidable liens or security interests existing as of the Petition Date and otherwise senior to the Prepetition Liens as of the Petition Date (collectively, the "**Prepetition Permitted Liens**" and each a "**Prepetition Permitted Lien**").

(iv)    *Validity of Prepetition Liens and Prepetition Secured Obligations.*  The Prepetition Liens are (a) valid, binding, perfected, duly recorded and enforceable liens on, and security interests in, all of the Loan Parties' respective right, title, and interest in, and to, the Prepetition Collateral and (b) not subject to, pursuant to the Bankruptcy Code or other applicable law (foreign or domestic), avoidance, disallowance, reduction, recharacterization, recovery, subordination (whether equitable, contractual, or otherwise), attachment, offset, recoupment, counterclaim, defense, "claim" (as defined in the Bankruptcy Code), impairment, or any other challenge of any kind by any person or entity. Each Debtor irrevocably releases and waives, for itself and its estate, any right to challenge

or contest in any way the scope, extent, perfection, priority, validity, non-avoidability, or enforceability of the Prepetition Liens, the validity or enforceability of the Prepetition Loan Documents or the validity, enforceability, or priority of payment of the Prepetition Secured Obligations.  The Prepetition Liens were granted to the respective Prepetition Secured Parties for fair consideration and reasonably equivalent value, and were granted in consideration of the making and/or continued making of loans, commitments, and/or other financial accommodations under the Prepetition Loan Documents.  No portion of the Prepetition Secured Obligations or any payments made to the Prepetition Secured Parties or applied to or paid on account of the obligations owing under the Prepetition Loan Documents prior to the Petition Date is subject to any contest, attack, rejection, recovery, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance, or other claim, cause of action, or other challenge of any nature under the Bankruptcy Code or applicable non-bankruptcy law.

(v)    *Agreement Among Lenders.*  That certain Agreement Among Lenders, dated as of July 6, 2017 (as amended, modified, restated, amended and restated, and/or supplemented from time to time, the "**AAL**"), by and between the Agent and the Lenders, and accepted and agreed to by the Loan Parties, governs, among other things, the relative rights and obligations of the Agent and the Lenders with respect to certain aspects of the Prepetition Secured Obligations and the Prepetition Collateral.  Pursuant to section 510 of the Bankruptcy Code, the AAL is binding, valid, and enforceable in accordance with its terms and shall not be amended, altered, or modified by the terms of this Final Order.

H.    *Adequate Protection for the Prepetition Secured Parties.*  As a result of the authorization for the Debtors' sale, use, or lease of Prepetition Collateral and the imposition or

enforcement of the automatic stay of section 362 of the Bankruptcy Code, the Prepetition Secured Parties are entitled to receive adequate protection pursuant to sections 361, 362, and 363 of the Bankruptcy Code for any diminution in the value, from and after the Petition Date, of their interests in the Prepetition Collateral resulting from the automatic stay and/or from the Debtors' use of Prepetition Collateral. As adequate protection for the imposition of the automatic stay and such use of the Prepetition Collateral, the Prepetition Secured Parties will receive the adequate protection described in this Final Order (including the adequate protection set forth in Paragraph 4 hereof), and, in light of such adequate protection, the Prepetition Secured Parties have consented to the Debtors' use of the Cash Collateral, solely on the terms and conditions set forth in this Final Order. The adequate protection provided herein and other benefits and privileges contained herein are consistent with and authorized by the Bankruptcy Code and are offered by the Debtors to protect such parties' interests in the Prepetition Collateral in accordance with sections 361, 362 and 363 of the Bankruptcy Code. The adequate protection provided herein and other benefits and privileges contained herein are necessary to (i) protect the Prepetition Secured Parties from any diminution of their interests in the value of the Prepetition Collateral (including the proceeds thereof) and (ii) obtain the foregoing consents and agreements.

I.    *Cash Collateral.*  For purposes of this Final Order, the term "Cash Collateral" shall be deemed to include, without limitation, all of each Debtor's "Cash Collateral" as defined under section 363 of the Bankruptcy Code, in which the Prepetition Secured Parties have valid, perfected security interests, liens or mortgages, regardless of whether such security interests, liens, or mortgages existed as of the Petition Date or arise thereafter or pursuant to the First Interim Order, the Second Interim Order, or this Final Order.

26110744.2

J.      *Section 552(b); Section 506(c).* Each of the Prepetition Secured Parties is entitled to (a) all of the rights and benefits of section 552(b) of the Bankruptcy Code in connection with the use of any of the Prepetition Collateral and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to them with respect to the proceeds, products, offspring or profits with respect to any of the Prepetition Collateral, and (b) a waiver by the Debtors and their respective estates of their right to surcharge the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code.

K.      *Necessity of Relief Requested.* Good cause has been shown for the entry of this Final Order. The Debtors have an immediate need to continue to use Cash Collateral to, among other things, fund the orderly continuation of their businesses, maintain the confidence of their customers and vendors, pay their operating expenses, and preserve their going-concern value, consistent with the Applicable Budget (as defined herein). In the absence of the availability of such liquidity in accordance with the terms hereof, the continued operation of the Debtors' businesses would not be possible, and serious and irreparable harm to the Debtors, their estates and their creditors would occur. The terms for the Debtors' use of Cash Collateral pursuant to this Final Order are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and constitute reasonably equivalent value and fair consideration. The continued use of Cash Collateral in accordance with this Final Order is therefore in the best interest of the Debtors and their estates, their creditors and other parties in interest.

L.      *Use of Cash Collateral.* All Cash Collateral and all proceeds of the Prepetition Collateral shall be used only for: (i) working capital; (ii) other general corporate purposes of the Debtors; (iii) the satisfaction of the costs and expenses of administering the Chapter 11 Cases,

26110744.2

10

including, without limitation, payment of any prepetition obligations that are necessary to preserve the value of the Debtors' estates to the extent approved by the Court; and (iv) Adequate Protection Payments, and for no other purpose, and shall only be used and/or applied in accordance with the terms and conditions of this Final Order, including, without limitation, the Applicable Budget.

M.    *Need for Immediate Entry of this Final Order*.  The permission granted herein to use Cash Collateral (and provide adequate protection therefor) is necessary, essential, and appropriate.  The Court concludes that entry of this Final Order is in the best interests of the Debtors' estates and creditors as its implementation will, among other things, allow the Debtors to preserve and maintain the value of their assets and businesses and enhance the Debtors' prospects for a successful reorganization.

Based upon the foregoing findings and conclusions, and upon the record made before the Court at the Hearings, and good and sufficient cause appearing therefor;

**IT IS HEREBY ADJUDGED AND ORDERED** that:

1.    *Motion Granted*.  The Motion is granted on a final basis in accordance with the terms and conditions set forth in this Final Order.  Any objections to the Motion with respect to entry of this Final Order, to the extent not withdrawn, waived or otherwise resolved, and all reservations of rights included therein, are hereby denied and overruled.

2.    *Authorization to Use Cash Collateral*.  The Debtors are authorized to use Cash Collateral as set forth in this Final Order commencing from the Petition Date through and including (but not beyond) any Termination Date (as defined herein), subject to the terms and conditions of this Final Order and solely in accordance with the Applicable Budgets (as defined herein).

3.    *Reserve Account Cash*.  The Debtors are not authorized to use funds currently in the Reserve Account pending further order of the Court.  For the avoidance of doubt, the Lenders

26110744.2

11

expressly reserve their right to assert that the Reserve Account and the Reserve Account Cash are Prepetition Collateral, and the Debtors and the Committee expressly reserve their rights to assert that the Reserve Account and Reserve Account Cash are not Prepetition Collateral. Laguna reserves its rights as asserted in the *Objection of Laguna Dairy, S. de R.L. de C.V. (f/k/a Laguna Dairy, S.A. de C.V.) and New Laguna, LLC to Debtors' Motion for Interim and Final Orders (A) Authorizing Use of Cash Collateral and Granting Adequate Protection, (B) Authorizing Use of Reserve Account Cash, (C) Scheduling a Final Hearing, and (D) Granting Related Relief* [Docket No. 120].

      4.     *Adequate Protection for the Prepetition Secured Parties.*

      (a)     Subject only to the terms of this Final Order, pursuant to sections 361, 362, 363(c)(2), and 363(e) of the Bankruptcy Code and in consideration of the stipulations and consents set forth herein, the Debtors hereby grant to the Agent, for the benefit of itself and the other Prepetition Secured Parties, an additional and replacement valid, binding, enforceable, non-avoidable, and automatically perfected, *nunc pro tunc* to the Petition Date, postpetition security interest in and lien ((i) and (ii) below referred to collectively as the "**Adequate Protection Liens**") (i) on the Debtors' postpetition assets which, but for the commencement of the Chapter 11 Cases, would constitute Prepetition Collateral in which the Prepetition Secured Parties had a valid and perfected security interest as of the Petition Date, and (ii) solely to the extent of any diminution in the value, from and after the Petition Date, of the Prepetition Secured Parties' interests in the Prepetition Collateral ("**Diminution in Value**") resulting from: (A) any postpetition use of Cash Collateral; (B) the use, sale, or lease of the Prepetition Collateral, and (C) the imposition of the automatic stay (the "**Adequate Protection Obligations**"), on all of the rights, titles and interests of the Debtors and their "estates" (as created pursuant to section 541(a) of the Bankruptcy Code)

26110744.2

12

in, to, and under all property and rights and interests in property of each of the Debtors of any kind or nature whatsoever in existence as of the Petition Date as well as thereafter created or acquired, and wherever located, including without limitation, (1) all Prepetition Collateral, (2) all accounts and accounts receivable, inventory, chattel paper, equipment, fixtures, machinery, commercial tort claims, deposit accounts, instruments, documents, cash and cash equivalents, investment property (including, without limitation, securities, securities accounts, and all equity interests in subsidiaries), books and records, patents, trademarks, trade names, copyrights, rights under license agreements and all other intellectual property, rights, rebates, refunds, other claims under and with respect to insurance policies, tax refunds, deposits, contract rights and other general intangibles, software, letter of credit rights, money and intercompany claims or receivables (whether or not evidenced by notes) at any time owing to each Debtor, the Reserve Account, and the Reserve Account Cash, (3) all real property, leaseholds, rents and profits and proceeds thereof; (*provided, however*, that as to a lien on all fee, leasehold, and other real property interests and the proceeds thereof: (x) with respect to non-residential real property leases, no liens or encumbrances shall be granted or extended to such leases under this Final Order, except as permitted by the applicable lease or pursuant to applicable law, but if any such restriction applies, liens shall then be deemed to extend only to the economic value of proceeds of any sale or other disposition of, and any other proceeds or products of, such leasehold interests; and (y) should any Lender's internal regulatory or compliance requirements require the completion of either or both flood due diligence and obtaining evidence of applicable flood insurance with respect to any real property or leasehold interest, then until completion of such flood due diligence, the Agent shall be deemed to have obtained a lien only on the economic value of, proceeds of any sale or other disposition of such real property interests), (4) if not otherwise described, all of the property or rights in property

26110744.2

identified as Collateral (as defined in the Credit Agreement), (5) all causes of action (including, without limitation, all claims and causes of action under sections 544, 545, 547, 548 and 550 of the Bankruptcy Code and under any applicable state Uniform Voidable Transaction Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and similar statute or common law (collectively, "**Avoidance Actions**"), and the proceeds thereof and property received thereby whether by judgment, settlement, or otherwise), and (6) as to all of the foregoing, all rents, issues, products, proceeds (including insurance policies), and profits of, from, or generated by any of the foregoing (collectively, the "**Collateral**"), without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages, or other similar documents.  The Adequate Protection Liens are subject or subordinate only to the Carve-Out.  Moreover, the Adequate Protection Liens shall not be subject or subordinate to or made *pari passu* with (x) any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code, (y) any intercompany claim, whether secured or unsecured, of any Debtor or any domestic or foreign subsidiary or affiliate of any Debtor, or (z) any other lien or security interest under Bankruptcy Code sections 361 or 363 or otherwise except as expressly provided in this Final Order.

        (b)    *Adequate Protection Superpriority Claims*.  The Agent, for the benefit of itself and the other Prepetition Secured Parties, is hereby granted, subject only to the Carve-Out, an allowed superpriority administrative expense claim (the "**Adequate Protection Superpriority Claims**") as provided for in section 507(b) of the Bankruptcy Code, payable from and having recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof. Subject only to the Carve-Out, and except as provided below, the Adequate Protection Superpriority Claims shall have priority over any and all other administrative expenses pursuant

to the Bankruptcy Code (including the kinds specified in or arising or ordered pursuant to sections 105(a), 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 552(b), 726, and 1114 of the Bankruptcy Code or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other nonconsensual lien, levy, or attachment) and all other claims against the Debtors or their estates in any of the Chapter 11 Cases or any subsequently converted bankruptcy case(s) of any Debtors (collectively, the "**Successor Cases**"), at any time existing or arising, of any kind or nature whatsoever.  The Adequate Protection Superpriority Claims shall be against each Debtor on a joint and several basis and shall be payable from and have recourse to the Collateral.  Other than the Carve-Out, no cost or expense of administration of the Chapter 11 Cases shall be senior to, or *pari passu* with, any of the Adequate Protection Superpriority Claims.

(c)     *Adequate Protection Payments*.  The respective Prepetition Secured Parties shall, as set forth below, receive from the Debtors the following payments (collectively, the "**Adequate Protection Payments**"):

(i)     The Debtors shall pay in full, in cash and in immediately available funds, as and when such payments would have come due under the Credit Agreement had the Chapter 11 Cases not been commenced, all interest, fees, and other amounts (other than principal), as applicable, accruing solely with respect to the Revolving Loans and the Term Loan A Loans, which shall accrue and be payable at the default rate set forth in the Credit Agreement and at the times provided for in the Prepetition Loan Documents.

(ii)     As further adequate protection, the Debtors shall pay in cash, without the need for the filing of formal fee applications: (A) immediately upon entry of the First Interim Order, the reasonable professional fees, expenses, and disbursements (including, but not limited to, the fees, expenses, and disbursements of counsel and third-party consultants, including financial advisors and auditors) incurred by the Agent under the Prepetition Loan Documents arising prior to the Petition Date; (B) the reasonable professional fees, expenses, and disbursements (including, but not limited to, the fees, expenses, and disbursements of counsel and third-party consultants, including financial advisors and auditors) incurred by the Agent under the Prepetition Loan Documents arising subsequent to the

Petition Date; and (C) any other fees, costs, and expenses incurred by the Agent under the Prepetition Loan Documents (the "**Adequate Protection Fees**"). All payments of professional fees, expenses and disbursements authorized under this Paragraph 4(c)(ii) shall be made within ten (10) days (which time period may be extended by the applicable professional) (the "**Review Period**") after receipt by the Debtors, the Committee and the U.S. Trustee of invoices therefor (the "**Invoiced Fees**") and without the necessity of filing formal fee applications. The invoices for such Invoiced Fees shall include the total aggregate number of hours billed, the billing rate of each billing professional and a summary description of services provided and the expenses incurred by the applicable professional; *provided, however*, that any such invoice may be redacted to protect privileged, confidential or proprietary information; *provided further, however*, that invoices of Agent's financial advisor (Houlihan Lokey) need not include a total aggregate number of hours billed and need only include a summary description of services provided. The Debtors, the Committee and the U.S. Trustee may object to any portion of the Invoiced Fees (the "**Disputed Invoiced Fees**") within the Review Period by filing with the Court a motion or other pleading, on at least fifteen (15) days' prior written notice to the Agent of any hearing on such motion or other pleading, setting forth the specific objections to the Disputed Invoiced Fees. The Debtors shall pay (X) any Invoiced Fees that are not Disputed Invoiced Fees within fifteen (15) days after expiration of the Review Period; and (Y) any Disputed Invoiced Fees within fifteen (15) days after approval by the Court by a final order requiring payment of any previously Disputed Invoiced Fees. Notwithstanding anything herein to the contrary, the Debtors reserve the right to argue that, to the extent that any cash payment made hereunder as adequate protection to the Prepetition Secured Parties is not allowed under section 506(b) of the Bankruptcy Code, such payment should be recharacterized and applied as payment of principal amounts owed under the Credit Agreement and shall be applied against (but does not in any way modify the rights of the Agent and the Lenders under the AAL) the Prepetition Secured Parties' prepetition secured claims accordingly.

(iii)    Without limiting any other provisions of this Final Order, any and all Adequate Protection Payments that remain unpaid shall be paid in full in cash on the effective date of the Debtors' confirmed chapter 11 plan.

(d)    *Adequate Protection Reservation.* The receipt by the Prepetition Secured

Parties of the adequate protection provided herein shall not be deemed an admission that the

26110744.2

interests of the Prepetition Secured Parties are adequately protected. Further, this Final Order shall not prejudice or limit the rights of the Prepetition Secured Parties to seek additional relief with respect to the use of Cash Collateral or for additional adequate protection, without prejudice to the Debtors' rights to contest the seeking of such relief by the Prepetition Secured Parties. Each of the Debtors shall be jointly and severally liable for the Adequate Protection provided for herein.

5.    *Additional Adequate Protection.* As additional adequate protection:

(a)    *Reporting.* The Debtors shall comply with all reporting requirements set forth in the Credit Agreement (including timely provision of Borrowing Base Certificates (as defined in the Credit Agreement) and other reports as required under Section 7.01(a)(vi) thereof on a weekly basis), all of which reports shall be provided to the Agent and the Lenders. In addition, the Debtors shall provide the following additional reporting to the Agent, the Lenders, and the Committee's professionals:

(i)    Weekly (or more or less frequently as may be agreed to between the Debtors, the Agent and the Lenders) calls between representatives of the Debtors' executive management, the Debtors' Chief Restructuring Officer ("**CRO**"), the Agent and the Lenders and their respective advisors;

(ii)    Each update of the Debtors' business plan promptly following their presentation to the Debtors' Board of Managers;

(iii)    On or before each Wednesday of each calendar week, a report of receipts, disbursements and a reconciliation of actual expenditures and disbursements with those set forth in the Applicable Budget for the (A) prior week and (B) Testing Period (as defined herein) concluding at the end of the immediately preceding week, in each case on a line item basis showing any variance to the proposed corresponding line item on the Applicable Budget;

(iv)    On or before each Wednesday of each calendar week (other than a week during which a Updated Budget (as defined herein) is delivered, the Debtors shall provide the Agent, the Lenders and the Committee with a rolling 13-week cash flow forecast of weekly cash receipts and weekly disbursements of the Debtors on a

consolidated basis for the period beginning such week (each, a "**Weekly Forecast**");

(v)    On or before Wednesday of each calendar week, a weekly report of all professional fees of the Debtors, specifying the professional fees that are accrued and unpaid and that were paid in cash as of the end of the immediately preceding week;

(vi)    On or before Wednesday of each calendar week, a weekly estimate of professional fees for the current future 13-week period, including the schedule for professional fees to be accrued and/or paid in cash along with identification of the recipients of any such accruals or cash payments;

(vii)    On or before the first Wednesday following a period end, a monthly report on all postpetition expenses (including an estimate of professional fees) of the Debtors that are accrued and unpaid as of the end of the immediately preceding month;

(viii)    (A) On or before each Monday of a calendar week, a schedule of expected payments for that week detailing the expected milk, Critical Vendor Claim,[4] and 503(b)(9) Claim (as defined in the Critical Vendor Motion) payments solely on behalf of prepetition claims and a list of all remaining Critical Vendor Claims, 503(b)(9) Claims and other prepetition claims related to Critical Vendors (as defined in the Critical Vendor Motion) (each, a "**Weekly Critical Vendor Schedule**"), and (B) on or before each Wednesday of a calendar week, a variance report (the "**Critical Vendor Variance Report**") showing the difference in amount on a line-item basis between the prior week's Weekly Critical Vendor Schedule and the payments actually made for such week (which Critical Vendor Variance Report shall be delivered beginning with the delivery of the second Weekly Critical Vendor Schedule); and

(ix)    On or before Wednesday of each calendar week, a statement setting forth in reasonable detail the cash balance for each deposit account, securities account, and commodity account of the Debtors and their subsidiaries as of the previous Wednesday, a postpetition accounts payable aging and an accounts receivable aging through the Friday of the prior week or the Monday of the current week, and a report of all checks outstanding by category for the prior week.

---

[4]    As defined in the *Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to Pay Prepetition Critical Vendor Claims and 503(b)(9) Claims in the Ordinary Course of Business, (II) Authorizing the Debtors to Return Goods, and (III) Granting Related Relief* [Docket No. 10] (the "**Critical Vendor Motion**").

26110744.2

(b)     The Debtors' management team shall consult with the CRO regarding all day-to-day aspects of the Debtors' restructuring efforts and strategies (including, without limitation, disbursements by the Debtors under the Applicable Budget).

(c)     In addition to, and without limiting, whatever rights to access the Agent and the other Prepetition Secured Parties have under the Prepetition Loan Documents (including all rights set forth in Section 7.01(f) of the Credit Agreement), respectively, subject to existing confidentiality agreements, upon reasonable advanced written notice, at reasonable times during normal business hours, and otherwise not to be unreasonably withheld, the Debtors shall permit representatives, agents, and employees of the Agent and the other Prepetition Secured Parties to have reasonable access to: (i) inspect the Debtors' assets and properties; (ii) examine the Debtors' books and records, and (iii) discuss the Debtors' affairs, finances, and condition with the Debtors' officers (including, without limitation, the CRO), management, financial advisors, attorneys and consultants.

6.    (a)    *Lien Grant to Secure Bank Product Obligations.*  To secure the prompt payment and performance of the Bank Product Obligations (as defined in the Credit Agreement) of the Loan Parties to PNC of whatever kind, nature, or description, absolute or contingent, now existing or hereafter arising, pursuant to Bankruptcy Code sections 364(c) and (d), PNC shall have and is hereby granted, effective *nunc pro tunc* to the Petition Date, valid, binding, enforceable, continuing, non-avoidable and perfected first priority, security interests and liens in and upon (such security interests and liens collectively, the "**Bank Product Liens**") the Collateral.

(b)    *Use of Bank Products.*  Solely in connection with the Bank Products (as defined in the Credit Agreement), PNC is authorized to continue to make advances pursuant to the terms of its existing agreements (in reliance upon section 364(e) of the Bankruptcy Code) with the Debtors, including advancing funds secured by cash deposits held by PNC, and the Loan Parties are

26110744.2

19

authorized to incur credit in respect of such advances under section 364(a) and (c), as applicable, of the Bankruptcy Code. The Loan Parties are authorized to continue to use the Bank Products, including, without limitation, the purchase card program between the Debtors and PNC as evidenced by the following accounts: (i) Borden Dairy Company AP, Account # x8612; (ii) Borden Diary Company Ariba, Account # x6885; (iii) Borden Dairy Company Pcard, Account # x6080; and (iv) Borden Dairy Company Corporate Card, Account # x4750, and incur related Bank Product Obligations in an aggregate amount not to exceed $1.5 million at any given time in the ordinary course of business solely to the extent contemplated by, and in accordance with, the Applicable Budget, and under the terms of the Bank Product Agreements (as defined in the Credit Agreement), the Prepetition Loan Documents, and this Final Order. Solely with respect to the Bank Products, the terms of all existing agreements related thereto by and between the Debtors and PNC, including, but not limited to, any depository agreement with PNC, shall govern PNC's postpetition transactions with the Debtors.

7.    *Effect of Stipulations on Third Parties.*

(a)    *Generally.* The Debtors have admitted, stipulated, and agreed to the Stipulations contained in this Final Order, which Stipulations are and shall be binding upon the Debtors and any successors thereto (other than with respect to a successor Trustee appointed before the expiration of the Initial Challenge Period (as defined herein), which successor Trustee shall be bound by the Stipulations upon expiration of the Challenge Period, as provided in this Paragraph 7) in all circumstances. The stipulations and admissions contained in this Final Order, including without limitation, the Stipulations, shall also be binding upon the Debtors' estates and all other parties in interest, including the Committee or any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors (a "**Trustee**"), for all purposes unless (i)(A) any party in interest

26110744.2

other than the Committee, no later than the date that is seventy five (75) days from entry of the First Interim Order, and (B) the Committee, no later than sixty (60) days from the appointment of the Committee (as applicable for clauses (A) and (B), the "**Initial Challenge Period**") has properly filed an adversary proceeding as required under the Bankruptcy Rules (x) challenging the amount, validity, enforceability, priority or extent of the Prepetition Secured Obligations, the liens of the Agent on the Prepetition Collateral securing the Prepetition Secured Obligations, or (y) otherwise asserting any other claims, counterclaims, causes of action, objections, contests or defenses against the Agent and/or any other Prepetition Secured Party on behalf of the Debtors' estates ((x) and (y), collectively, referred to herein as "**Challenges**"), and (ii) the Court rules in favor of the plaintiff sustaining any such challenge or claim in any such duly filed adversary proceeding or contested matter; *provided*, that, as to the Debtors, all such Challenges are hereby irrevocably waived and relinquished effective as of the Petition Date. If during the Initial Challenge Period, the Committee or other third party files a motion for standing with a draft complaint identifying and describing all Challenge(s) consistent with applicable law and rules of procedure, the Initial Challenge Period will be tolled solely for the Committee or such other third party and solely with respect to the Challenge(s) asserted in the draft complaint until five (5) business days from the entry of an order granting the motion for standing to prosecute such Challenge(s) described in the draft complaint and permitted by the Court (the "**Extended Challenge Period**," and together with the Initial Challenge Period, the "**Challenge Period**"). If standing is denied by the Court, the Challenge Period shall be deemed to have expired.

(b)     *Binding Effect.* If no such Challenge or motion for standing, as applicable, is timely filed prior to the expiration of the Initial Challenge Period, without further order of the Court:  (1) the Debtors' stipulations, admissions and releases contained in this Final Order

(including the Stipulations contained herein and the releases set forth in Paragraph 8 below) shall be binding on all parties in interest, including the Debtors' estates, the Committee, and any subsequently appointed Trustee, case fiduciary, or successors and assigns; (2) the Prepetition Secured Obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance, for all purposes in these Chapter 11 Cases and any subsequent chapter 7 case; (3) the Agent's liens on the Prepetition Collateral shall be deemed to have been, as of the Petition Date, to be, legal, valid, binding, perfected, and with the priority specified in the Stipulations, not subject to defense, counterclaim, recharacterization, subordination or avoidance; and (4) the Prepetition Secured Parties (and their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors) shall not be subject to any other or further challenge by the Committee or any other party in interest, and any such Committee or party in interest shall be enjoined from seeking to exercise the rights of the Debtors' estates, including without limitation, any successor thereto (including, without limitation, any estate representative or a Trustee, whether such Trustee is appointed or elected prior to or following the expiration of the Initial Challenge Period); *provided*, that if the Chapter 11 Cases are converted to chapter 7 or a Trustee is appointed prior to the expiration of the Initial Challenge Period, any such estate representative or Trustee shall receive the full benefit of the later of (i) the expiration of the Initial Challenge Period and (ii) thirty (30) days from the appointment of such estate representative or Trustee, subject to the limitations described herein. If any Challenge or motion for standing, as applicable, is timely and properly filed prior to the expiration of the Initial Challenge Period, the releases, stipulations and admissions contained in this Final Order, including without limitation, the Stipulations, shall nonetheless remain binding and preclusive (as provided in the second sentence of this Paragraph 7(b)) on the Committee and any other person, including

any Trustee appointed in any Chapter 11 Case(s) or Successor Cases, as applicable, except as to any such findings and admissions that were expressly challenged in the original complaint initiating the adversary proceeding and excluding any amended or additional claims that may or could have been asserted thereafter through an amended complaint under Federal Rule of Civil Procedure 15 or otherwise.  This stipulation shall be binding upon the Debtors, their estates, all parties in interest in the Chapter 11 Cases and their respective successors and assigns, including any Trustee or other fiduciary appointed in the Chapter 11 Cases or any Successor Cases and shall inure to the benefit of the Prepetition Secured Parties and the Debtors and their respective successors and assigns.  For the avoidance of doubt, Challenges may be filed against one or more of the Prepetition Secured Parties without filing Challenges against each of the other Prepetition Secured Parties, and likewise the Challenge Period may expire as to some but not all of the Prepetition Secured Parties if a Challenge is filed against one or more of the Prepetition Secured Parties but not all of them.

(c)    *No Standing.*  Nothing in this Final Order vests or confers on any person (as defined in the Bankruptcy Code), including the Committee, standing or authority to pursue any claim or cause of action belonging to the Debtors and/or their bankruptcy estates, including, without limitation, any Challenge with respect to the Prepetition Loan Documents or the Prepetition Secured Obligations.

8.    *Debtors' Waivers and Releases.*

(a)    *Section 506(c) Claims and 552(b) Equities.*  No costs or expenses of administration which have been or may be incurred in the Chapter 11 Cases or any Successor Cases at any time shall be charged against any of the Prepetition Secured Parties, their respective claims or the Prepetition Collateral, pursuant to section 506(c) of the Bankruptcy Code without

26110744.2

23

the prior written consent of the Agent and the Lenders (and no such consent shall be implied from any other action, inaction or acquiescence by the Agent or any other Prepetition Secured Parties). The Prepetition Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties with respect to proceeds, products, offspring or profits of any of the Prepetition Collateral.

(b)    *Release.*  In consideration of and as a condition to the Agent's and the Lenders' consent to the use of Cash Collateral and providing other financial accommodations to the Debtors pursuant to the provisions of this Final Order, each Debtor, on behalf of itself, and its respective successors and assigns and such Debtor's estate (collectively, "**Releasors**"), subject only to Paragraph 7 above, hereby absolutely releases and forever discharges and acquits (i) each Prepetition Secured Party, (ii) the respective successors, participants, assigns, directors, officers, attorneys, employees, financial advisors, consultants and other representatives of each Prepetition Secured Party, and (iii) the present and former shareholders, affiliates, subsidiaries, divisions, and predecessors of each Prepetition Secured Party (the parties identified in clauses (i) through (iii) being hereinafter referred to collectively as "**Releasees**") of and from any and all claims, demands, causes of action, suits, covenants, contracts, controversies, agreements, promises, sums of money, accounts, bills, reckonings, damages, and any and all other claims, counterclaims, cross claims, defenses, rights of set-off, demands, and liabilities whatsoever (individually, a "**Prepetition Released Claim**" and collectively, "**Prepetition Released Claims**") of every kind, name, nature and description, known or unknown, foreseen or unforeseen, matured or contingent, liquidated or unliquidated, primary or secondary, suspected or unsuspected, both at law and in equity, which, including, without limitation, any so-called "lender liability" claims or defenses, that any Releasor

may now or hereafter own, hold, have, or claim to have against Releasees, or any of them for, upon, or by reason of any nature, cause, or thing whatsoever which arose or may have arisen at any time on or prior to the date of this Final Order, in respect of the Debtors, the Prepetition Secured Obligations, the Prepetition Loan Documents, and any Letters of Credit, or other financial accommodations under the Prepetition Loan Documents; *provided*, that such release shall be effective with respect to the Debtors upon entry of this Final Order, and shall not be effective with respect to the Debtors' estates until the expiration of the Challenge Period.

       9.    *Budget; Variance; Testing.*

       (a)    *Initial Budget.* The "**Initial Budget**" is the 13-week cash flow forecast of weekly cash receipts and weekly disbursements of the Debtors on a consolidated basis for the period commencing on March 2, 2020, that is acceptable in form and substance to the Agent and the Lenders and attached to this Final Order as **Exhibit 1**. The Debtors shall be subject to, governed by, and required to comply with, the terms of the Initial Budget from entry of this Final Order until the Initial Budget is replaced by either (i) an Updated Budget, or (ii) an Interim Budget (each term as defined herein) (the then-applicable Initial Budget, Approved Updated Budget (as defined herein) or Interim Budget, the "**Applicable Budget**") (the period of time beginning March 2, 2020 until an Updated Budget becomes an Approved Updated Budget, the "**Initial Budget Period**").

      (b)    *Updated Budget.* Beginning as of the date hereof, on the Wednesday following the release by the United States Department of Agriculture of its monthly Announcement of Advanced Prices and Pricing Factors for future milk prices (the "**USDA Federal Market Order Pricing**"), the Debtors shall deliver to the Agent, the Lenders and the Committee an updated 13-week cash flow forecast of weekly cash receipts and weekly

disbursements of the Debtors on a consolidated basis for the period commencing on the date of delivery of such updated 13-week cash flow forecast (an "**Updated Budget**"), which forecast once approved in writing by the Agent and the Lenders (such approval shall, in all respects, be in the sole discretion of each of the Agent and the Lenders and shall be delivered within three (3) business days of receipt of the Updated Budget; provided that, if (i) the Debtors provide the Agent, the Lenders and their advisors detail, contemporaneous with the submission of the proposed Updated Budget, of the financial impact of the milk purchase, defined as the change in the USDA Federal Market Order Pricing multiplied by the volume of milk purchases for each respective future period,   (ii) the Debtors provide the Agent, the Lenders and their advisors a report detailing projected milk sales volume and raw milk purchases for each period during the proposed Updated Budget, and (iii) the Debtors represent and warrant to the Agent and the Lenders that there have been no changes to the Updated Budget from the Applicable Budget with respect to sales volume of milk and/or raw milk purchase volume, then revisions to the Updated Budget directly as a result of the change in the USDA Federal Market Order Pricing shall be deemed approved automatically; provided further, that, for the avoidance of doubt, any revisions to the Updated Budget not directly as a result of the changes in the USDA Federal Market Order Pricing shall be subject to consent of the Agent and the Lenders in their sole discretion) (such date, the "**Applicable Updated Budget Effective Date**") shall be deemed an Applicable Budget (such budget, an "**Applicable Updated Budget**") (the period of time from an Applicable Updated Budget Effective Date until a subsequent Updated Budget becomes an Applicable Updated Budget, the "**Applicable Updated Budget Period**"). Prior to the occurrence of the Applicable Updated Budget Effective Date, the Debtors shall be subject to, governed by, and required to comply with, the terms of the then-existing Applicable Budget.

26110744.2

(c)    *Interim Budget*.  During the period of time that the Initial Budget or Applicable Updated Budget is the Applicable Budget, the Debtors may request, in writing contemporaneously with the delivery of a Weekly Forecast, that the applicable Weekly Forecast shall become an Applicable Budget (an "**Interim Budget**") binding on the Debtors for the period beginning the Monday following delivery of the Weekly Forecast (the "**Interim Budget Effective Date**") until the next Applicable Updated Budget Effective Date; *provided*, that (i) an Interim Budget shall only become an Applicable Budget if the Agent and the Lenders consent in writing (in their sole discretion), and (ii) an Interim Budget may become an Applicable Budget only one time during (A) the Initial Budget Period, and (B) any  Applicable Updated Budget Period.

(d)    *Budget Testing*.  The Debtors shall submit the variance tests set forth in this Paragraph 9(d) with respect to the Applicable Budget on the Wednesday following the first two (2) full weeks after entry of this Final Order on a four-week trailing basis and every Wednesday thereafter (each a "**Standard Testing Period**").  So long as no Termination Event (as defined herein) has occurred with respect to use of Cash Collateral, the Debtors shall be authorized to use Cash Collateral in accordance with the Applicable Budget and this Final Order provided that during each Standard Testing Period (i) (a) actual disbursements shall not exceed disbursements, and (b) actual receipts (excluding asset sale proceeds, other than ordinary course sales of inventory) shall be less than the receipts, in each case, as set forth in the Applicable Budget for such period by more than eight percent (8%), respectively; *provided further*, that for the period being tested (1) beginning February 10, 2020 and ending March 8, 2020,  the actual disbursements and actual receipts shall not be more than eight percent (8%) higher for disbursements and eight percent (8%) lower for receipts than the disbursements and receipts set

forth in (A) the budget attached hereto as **Exhibit 2** (the "**February 14 Budget**") for the weeks ending February 16, 2020 and February 23, 2020, and (B) the Applicable Budget for the weeks ending March 1, 2020 and March 8, 2020 and (2) beginning February 17, 2020 and ending March 15, 2020, the actual disbursements and actual receipts shall not be more than eight percent (8%) higher for disbursements and eight percent (8%) lower for receipts than the disbursements and receipts set forth in (A) the February 14 Budget for the week ending February 23, 2020, and (B) the Applicable Budget for the weeks ending March 1, March 8 and March 15, 2020; and (ii) in the event an Interim Budget is delivered, (1) for the period commencing on the Interim Budget Effective Date and ending on the first Sunday thereafter, and (2) each subsequent weekly period ending on each Sunday after the period ending in the immediately preceding clause (1), so long as actual disbursements and actual receipts shall not be more than eight percent (8%) higher for disbursements and eight percent (8%) lower for receipts than the disbursements and receipts for the relevant week being tested as set forth in the Interim Budget for such period (each of the foregoing measurement periods in this Paragraph 9(d)(ii), an "**Interim Testing Period**," and together with the Standard Testing Period, the "**Testing Period**"); *provided*, that the Debtors shall have seven (7) calendar days from the end of any applicable Standard Testing Period or Interim Testing Period to provide evidence satisfactory to the Agent and the Lenders that certain payments processed or payments received during such seven (7) calendar day period, if occurring within the applicable Standard Testing Period or Interim Testing Period as budgeted in the Applicable Budget (or, if applicable, the February 14 Budget), would have eliminated any noncompliance with the applicable variance testing during the applicable Standard Testing Period or Interim Testing Period, in which case the Debtors shall be deemed to have been in

compliance with the variance requirements during such applicable Standard Testing Period or Interim Testing Period.

10.    *Carve-Out*.    The Adequate Protection Liens and the Adequate Protection Superpriority Claims shall be subject only to the right of payment of statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) with respect to the Debtors, and

(a)    The following expenses (collectively, the "**Carve-Out**"), to the extent provided herein:

(i)    all reasonable fees and expenses up to $25,000 incurred by a trustee under section 726(b) of the Bankruptcy Code; and

(ii)    the allowed fees and expenses actually incurred by persons or firms retained by the Debtors or the Committee on or after the Petition Date pursuant to section 327, 328, 363, or 1103 of the Bankruptcy Code (each a "**Professional**" and collectively, the "**Professionals**") in a cumulative, aggregate sum of, for the period prior to the occurrence of the delivery of a Carve-Out Trigger Notice (as defined herein), an amount not to exceed the lesser of (A) the aggregate weekly amounts budgeted for each such Professional for such week (as set forth in Schedule 1 to the Applicable Budget) and all prior weeks in accordance with the Schedule 1 to the Applicable Budget (to the extent a Carve-Out Trigger Notice is delivered mid-week, pro-rated for such week), and (B) the actual amount of such Allowed Professional Fees for each Professional incurred on or after the Petition Date up through and including the date a Carve-Out Trigger Notice is delivered ("**Allowed Professional Fees**"), subject in all respects to the terms of the Final Order and Schedule 1 to the Applicable Budget. The Carve-Out shall include all Allowed Professional Fees that are incurred or earned (1) at any time before delivery of a Carve-Out Trigger Notice, whether allowed by the Court prior to or after delivery of a Carve-Out Trigger Notice, subject and limited in all respects to the amounts set forth in Schedule 1 to the Applicable Budget for payment of such Professionals; and (2) beginning the first day after the delivery by the Agent of written notice (which for the avoidance of doubt may be by electronic mail) of the occurrence of a Termination Event (the "**Carve-Out Trigger Notice**") to the Debtors, the Debtors' counsel, the U.S. Trustee, and counsel for the Committee, the fees and expenses incurred by the Professionals retained by the Debtors in an aggregate amount not to exceed $150,000 (the "**Post-EOD Carve-Out Amount**") (the aggregate amount of clauses (1) and (2), collectively, the "**Carve-Out Cap**"); *provided, however*, the Carve-Out shall not include any bonus, transaction fees, success fees, completion fees, substantial contribution fees, or any other fees of similar import of any of the Professionals. Notwithstanding the foregoing, the Carve-Out Trigger Notice shall be deemed to have been delivered to the required notice parties on the Termination Date.

(b)     Subject to the terms of this Final Order, the Carve-Out Cap shall be allocated on a Professional by Professional basis based on the amounts budgeted for each Professional pursuant to the Applicable Budget. For the avoidance of doubt, to the extent the budgeted amounts for a Professional for any Applicable Budget period exceed the actual fees and expenses incurred by such Professional for that period, the excess may be carried forward to later Applicable Budget periods or backward to prior Applicable Budget periods to be applied to any fees or expenses that exceeded the budgeted amounts for such prior or later periods. To the extent Collateral is used to pay Allowed Professional Fees, Agent has a right to be reimbursed from unencumbered assets for such payment.

(c)     Any payment of the Debtors' and the Committee's professionals made in accordance with the Applicable Budget and this Final Order shall be approved and so ordered as allowed fees and expenses pursuant to the procedures set forth in the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* (the "**Interim Compensation Order**"). It is understood and agreed that the Agent and the other Prepetition Secured Parties reserve all rights to object to the payment of any portion of the fees and expenses of the Debtors' and the Committee's professionals sought to be allowed under the Interim Compensation Order.

11.     *Excluded Professional Fees.* Notwithstanding anything to the contrary in this Final Order, neither the Carve-Out, nor the proceeds of any Prepetition Collateral shall be used to pay any Allowed Professional Fees or any other fees or expenses incurred by any Professional in connection with any of the following: (a) an assertion or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination, or similar relief: (i) challenging the legality, validity, priority,

26110744.2

perfection, or enforceability of the Prepetition Secured Obligations or the Agent's liens on and security interests in any of the Prepetition Collateral other than for Allowed Professional Fees incurred prior to entry of the Second Interim Order with respect to the Reserve Account, (ii) seeking to invalidate, set aside, avoid, or subordinate, in whole or in part, the Prepetition Secured Obligations or the Agent's liens on and security interests in the Prepetition Collateral, or (iii) preventing, hindering or delaying the Agent's assertion or enforcement of any lien, claim, right, or security interest or realization upon any Prepetition Collateral, other than for Allowed Professional Fees incurred prior to entry of the Second Interim Order with respect to the Reserve Account, in accordance with the terms and conditions of this Final Order, (b) a request to use the Cash Collateral on and after the Termination Date, except to the extent expressly permitted herein, (c) a request for authorization to obtain debtor-in-possession financing or other financial accommodations pursuant to section 364(c) or 364(d) of the Bankruptcy Code, other than from the Prepetition Secured Parties, without the prior written consent of the Agent and the Lenders, (d) the commencement or prosecution of any action or proceeding of any claims, causes of action, or defenses against the Prepetition Secured Parties or any of their respective officers, directors, employees, agents, attorneys, financial advisors, consultants, affiliates, successors, or assigns, including, without limitation, any attempt to avoid any claim, lien, or interest of, or obtain any recovery from any of the Prepetition Secured Parties under Chapter 5 of the Bankruptcy Code; *provided, however*, that, subject to the Carve-Out Cap, an amount not to exceed $100,000 in the aggregate of Cash Collateral may be used to pay the Allowed Professional Fees of a Committee to investigate (but not prosecute) claims against and possible objections with respect to the Prepetition Secured Obligations, and the prepetition liens and security interests of, the Prepetition Secured Parties (including, without limitation, issues regarding validity, perfection, priority, or

26110744.2

enforceability of the secured claims of the Prepetition Secured Parties). Nothing herein shall be construed as a consent to the allowance of the fees and expenses of any Professional or shall affect the right of the Prepetition Secured Parties to object to the allowance and payment of such fees and expenses. The Debtors shall be permitted to pay fees and expenses allowed and payable pursuant to an order of the Court under sections 330 and 331 of the Bankruptcy Code, as the same may be due and payable, solely to the extent set forth in the Applicable Budget and Schedule 1 to the Applicable Budget and not to exceed the amounts set forth in Schedule 1 to the Applicable Budget; *provided*, that any such payment shall be subject to entry of a final order of the Court of each Professional's application for allowance of such fees and expenses.

12.    *Reservation of Rights*.  Notwithstanding anything herein to the contrary, each of the Debtors and the Committee reserve the right to argue that, to the extent that any cash payment made hereunder as adequate protection to the Prepetition Secured Parties is not allowed under section 506(b) of the Bankruptcy Code, such payment should be recharacterized and applied as payment of principal owed under the Credit Agreement and shall permanently reduce the Prepetition Secured Obligations accordingly, and the Prepetition Secured Parties reserve the right to object to any such argument.

13.    *Lien Perfection*.  This Final Order shall be sufficient and conclusive evidence of the validity, perfection and priority of the Bank Product Liens and Adequate Protection Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect the Bank Product Liens and Adequate Protection Liens or to entitle the Bank Product Liens and Adequate Protection Liens to the priorities granted herein. Notwithstanding the foregoing, the Agent (on behalf of itself and the

26110744.2

other Prepetition Secured Parties) may, in its sole discretion, file such financing statements, mortgages, security agreements, notices of liens and other similar documents, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, security agreements, notices and other agreements or documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of the Chapter 11 Cases. The Agent (on behalf of itself and the other Prepetition Secured Parties) may, in its sole discretion, file a photocopy of this Final Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which any Debtor has real or personal property and, in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Final Order.

14.    *Termination.*  Upon the occurrence and during the continuance of a Termination Event (unless such occurrence and continuance is waived by the Agent and the Lenders in their respective sole discretion), (a) the Debtors' right to use Prepetition Collateral and Cash Collateral shall automatically terminate (the date of such termination, the "**Termination Date**"), without further notice or court proceeding, on the earliest to occur of any of the events set forth below (each such event, a "**Termination Event**"); *provided*, that, with the consent of the Debtors and the Prepetition Secured Parties, in the exercise of their respective sole discretion, the Termination Date may be extended without further Court approval upon the filing of a notice on the docket of the Chapter 11 Cases setting forth the new Termination Date:

(a)    June 5, 2020, subject to compliance with the Milestones (as defined herein) and as may be extended as set forth in the Milestones;

(b)    The failure of the Debtors to make any payment under this Final Order to the Agent or the other Prepetition Secured Parties when due;

(c)    Any of the reporting or other information required to be delivered pursuant to this Final Order shall contain a material misrepresentation;

(d)    Failure to comply with the budget covenants set forth in Paragraph 9 herein;

(e)    The termination of the Debtors' CRO's engagement or the material modification or reduction of the CRO's role or responsibilities, in each case, without the prior written consent of the Agent and the Lenders;

(f)    The closing date of any sale of substantially all of the Debtors' assets;

(g)    The Debtors shall grant, create, incur or suffer to exist any postpetition liens or security interests other than: (i) those granted pursuant to this Final Order; and (ii) any other liens or security interests that the Debtors are permitted to incur under the Prepetition Loan Documents except with respect to Indebtedness (as defined in the Credit Agreement) for borrowed money;

(h)    An order shall be entered reversing, adversely amending, adversely supplementing, staying, vacating or otherwise adversely modifying any material provision of this Final Order without the written consent of the Agent and the Lenders;

(i)    This Final Order shall cease to be in full force and effect or shall have been reversed, modified, amended, stayed, vacated or subject to stay pending appeal, in the case of any modification or amendment;

(j)    The Debtors file a motion seeking approval to create, incur, or suffer to exist any claim that is senior to the Adequate Protection Claims;

26110744.2

(k)     The Court shall have entered an order permitting the Debtors to create, incur, or suffer to exist any claim that is *pari passu* or senior to the Adequate Protection Claims;

(l)     The Court shall have entered an order dismissing any of the Chapter 11 Cases;

(m)     The Court shall have entered an order converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code;

(n)     The Court shall have entered an order authorizing the appointment or election of a trustee or examiner with expanded powers or any other representative with expanded powers relating to the operation of the businesses in the Chapter 11 Cases;

(o)     The Court shall have entered an order granting relief from the automatic stay imposed by section 362 of the Bankruptcy Code to any entity other than the Agent or any of the other Prepetition Secured Parties with respect to any Collateral, Prepetition Collateral, or Cash Collateral without the written consent of the Agent and the Lenders, which consent may be withheld in their respective sole discretion;

(p)     A filing by any Debtor of any motion, pleading, application or adversary proceeding challenging the validity, enforceability, perfection or priority of the liens securing the Prepetition Secured Obligations or asserting any other cause of action against and/or with respect to the Prepetition Secured Obligations, the Collateral, the Prepetition Collateral, the Agent, or any of the other Prepetition Secured Parties (or if the Debtors support any such motion, pleading, application or adversary proceeding commenced by any third party);

(q)     The Debtors shall use Cash Collateral in any manner not permitted by or otherwise inconsistent with the Applicable Budget and the other terms of this Final Order;

26110744.2

(r)    Subject to the rights preserved under Paragraph 7, the Court shall have entered an order avoiding, disallowing, subordinating or recharacterizing any claim, lien, or interest held by any Prepetition Secured Party arising under the Credit Agreement, unless (i) the Debtors have sought a stay of such order within three (3) business days after the date of such issuance, and such order is stayed, reversed or vacated within ten (10) business days after the date of such issuance, or (ii) the Agent has consented to such order in writing; and

(s)    The Debtors shall have failed to meet any of the following milestones by the applicable deadline, which deadlines may be extended, without further order of the Court, by mutual written agreement between the Debtors and the Prepetition Secured Parties:

(i)    By April 30, 2020, the Debtors shall file either (A) a motion and proposed timeline, acceptable to the Agent and the Lenders, to approve the bid procedures for the sale of all or substantially all of their assets and/or businesses (or for the sale of reorganized equity, if applicable) and, if applicable, designation of stalking horse bidder for the sale of all or substantially all of their assets and/or businesses (in each case such sale to be acceptable to the Agent and the Lenders) (the "**Bid Procedures Motion**"), (B) a plan of reorganization that is acceptable to the Agent and the Lenders (a "**Plan**"), accompanying disclosure statement that is acceptable to the Agent and the Lenders (the "**Disclosure Statement**") and a motion and proposed timeline, acceptable to the Agent and the Lenders, approving the Disclosure Statement (the course of action described in this Section 14(s)(i)(B), the "**Plan Option**"), or (C) in the event that the Agent and the Lenders do not agree on an acceptable sale of all or substantially all of their assets and/or businesses and Bid Procedures Motion or Plan Option and Plan by April 30, 2020, a motion for the sale of all of their assets and/or businesses (and such motion and proposed timeline shall be acceptable to the Agent and the Lenders).

(ii)    On May 6, 2020, or as soon as practicable thereafter (subject to the Court's availability), trial shall have commenced with respect to the adversary proceeding captioned *PNC Bank, National Association v. Borden Dairy Company; Laguna Dairy, S. de R.L. de C.V.; and New Laguna, LLC*, Adv. No. 20-50450-CSS (the "**Adversary Proceeding**") or the Adversary Proceeding otherwise shall have been resolved to the satisfaction of the Agent and the Lenders; and

(iii)    The Debtors shall comply with each of the deadlines agreed to by the Debtors and the Prepetition Secured Parties in connection with the sale or plan process as set forth in **Exhibit 3** attached hereto, which is filed under seal (the "**Milestones**").

26110744.2

15.    *Remedies upon the Termination Date*.    Upon the occurrence and during the continuance of a Termination Event (unless such occurrence and continuance is waived by the Agent and the Lenders in their respective sole discretion), and (i) immediately upon the occurrence of the Termination Event set forth in Paragraph 14(a), or (ii) upon three (3) business days' written notice of such Termination Event other than that set forth in the immediately preceding clause (i) (the "**Default Notice Period**") to the Debtors, their restructuring counsel, the U.S. Trustee, and counsel to the Committee, (a) the Debtors shall immediately cease using Cash Collateral; (b) the Adequate Protection Obligations, if any, shall become due and payable; and (c) the Agent and each other Prepetition Secured Party may exercise the rights and remedies available to it under the Prepetition Loan Documents, this Final Order, or applicable law, as applicable, including, without limitation, foreclosing upon and selling all or a portion of the Collateral in order to collect and satisfy the Prepetition Secured Obligations and Adequate Protection Obligations, in accordance with this Final Order.  The automatic stay under section 362 of the Bankruptcy Code is hereby deemed modified and vacated to the extent necessary to permit such actions; *provided*, that, during the Default Notice Period, unless the Court orders otherwise, the automatic stay under section 362 of the Bankruptcy Code (to the extent applicable) shall remain in effect; *provided, further*, that during the Default Notice Period (x) the Debtors and the Committee shall be entitled to an emergency hearing before the Court to contest whether a Termination Event has occurred, and (y) the Debtors or any party in interest shall be permitted to seek the use of Cash Collateral only for critical payroll and other critical expenses necessary to keep the Debtors' businesses operating in accordance with the Applicable Budget.  Any delay or failure of the Agent or any other Prepetition Secured Party to exercise rights under the Prepetition Loan Documents or this Final Order shall not constitute a waiver of their respective rights hereunder, thereunder or otherwise, unless any

26110744.2

such waiver is pursuant to a written instrument executed in accordance with the terms of the applicable document.  Subject and subordinate only to the Carve-Out and as otherwise set forth herein, the Agent shall be entitled to apply the payments or proceeds of the Collateral in accordance with the provisions of the Prepetition Loan Documents, as applicable.  Notwithstanding the occurrence of the Termination Date or anything herein, all of the rights, remedies, benefits and protections provided to the Agent and the Prepetition Secured Parties under this Final Order shall survive the Termination Date.

16.    *Letters of Credit*.  The existing Letters of Credit issued under the RCF Facility prior to the Petition Date shall be subject to the same rights and obligations of the parties as in effect prior to the Petition Date, in each case subject to the terms of the Credit Agreement and the other Prepetition Loan Documents.  To the extent any Letters of Credit are drawn as permitted under the Credit Agreement, the L/C Issuer (as defined in the Credit Agreement) is authorized, and the automatic stay is modified, to apply any Cash Collateral it is holding to satisfy the Debtors' obligations under the applicable Letter of Credit.

17.    *Preservation of Rights Granted Under this Final Order.*

(a)    Notwithstanding any order dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code (x) the Adequate Protection Superpriority Claims, the other administrative claims granted pursuant to this Final Order and the Adequate Protection Liens shall continue in full force and effect and shall maintain their priorities as provided in this Final Order until all Adequate Protection Obligations shall have been paid and satisfied in full in cash (and such Adequate Protection Superpriority Claims, the other administrative claims granted pursuant to this Final Order and the Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest); and (y) the Court shall retain jurisdiction, notwithstanding

26110744.2

such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (x) above.

(b)    If any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect:  (i) the validity, priority or enforceability of any Adequate Protection Obligations incurred prior to the actual receipt of written notice by the Prepetition Secured Parties of the effective date of such reversal, stay, modification or vacatur; or (ii) the validity, priority or enforceability of the Adequate Protection Liens.  Notwithstanding any such reversal, stay, modification or vacatur, any use of the Cash Collateral or any Adequate Protection Obligations incurred by the Debtors hereunder, as the case may be, prior to the actual receipt of written notice by the Prepetition Secured Parties of the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Final Order, and the Prepetition Secured Parties shall be entitled to all of the rights, remedies, privileges and benefits granted herein and to the protections afforded in section 363(m) of the Bankruptcy Code with respect to all uses of the Cash Collateral and all Adequate Protection Obligations.

(c)    Subject to Paragraph 7 of this Final Order, the Adequate Protection Payments made pursuant to this Final Order shall not be subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance in the Chapter 11 Cases or any subsequent chapter 7 cases (other than a defense that the payment has actually been made).

(d)    Except as expressly provided in this Final Order, the Adequate Protection Obligations, the Adequate Protection Superiority Claims and the Adequate Protection Liens and all other rights and remedies of the Prepetition Secured Parties granted by the provisions of this Final Order shall survive, and shall not be modified, impaired or discharged by the entry of an

order converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Chapter 11 Cases, or by any other act or omission. The terms and provisions of this Final Order shall continue in the Chapter 11 Cases, in any Successor Cases if the Chapter 11 Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the Adequate Protection Liens, the Adequate Protection Superiority Claims, the other administrative claims granted pursuant to this Final Order, and all other rights and remedies of the Prepetition Secured Parties granted by the provisions of this Final Order shall continue in full force and effect until all Adequate Protection Obligations are indefeasibly paid in full in cash.

18.    *No Marshalling.*  The Prepetition Secured Parties shall not be subject to the equitable doctrine of "marshalling" or any other similar doctrine with respect to any of the Collateral (including Cash Collateral).

19.    *Good Faith.*  Each of the Agent and the Lenders acted in good faith in connection with the First Interim Order, the Second Interim Order, and this Final Order and their reliance on the First Interim Order, the Second Interim Order, and this Final Order has been, and is, in good faith.

20.    *Miscellaneous.*

(a)    *Binding Effect.*  The provisions of this Final Order, including all findings herein, shall be binding upon all parties in interest in the Chapter 11 Cases, including, without limitation, the Prepetition Secured Parties, the Debtors, and their respective successors and assigns (including any trustee hereinafter appointed or elected for the estate of any Debtor, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of the Debtors or with respect to the property of the estate of any of the

26110744.2

Debtors) and shall inure to the benefit of the Prepetition Secured Parties and the Debtors and their respective successors or assigns.

(b)    *Modification of Automatic Stay*.  The Debtors are authorized and directed to perform all acts and to make, execute and deliver any and all instruments as may be reasonably necessary to implement the terms and conditions of this Final Order and the transactions contemplated hereby.  The automatic stay of section 362 of the Bankruptcy Code is hereby modified to permit the Debtors and each of the Prepetition Secured Parties to accomplish the transactions contemplated by this Final Order.

(c)    *Headings*.  The headings in this Final Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Final Order.

(d)    *Effectiveness*.  This Final Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon entry hereof, and there shall be no stay of execution of effectiveness of this Final Order.  To the extent that any finding of fact shall be determined to be a conclusion of law, it shall be so deemed and vice versa.

(e)    *No Third Party Rights*.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third-party, creditor, equity holder or any direct, indirect, third-party or incidental beneficiary.

(f)    *Survival of Interim Order*. The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (i) confirming any chapter 11 plan of reorganization in the Chapter 11 Cases, (ii) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, (iii) to the extent authorized by applicable law, dismissing any of the Chapter 11 Cases, (iv) withdrawing of the reference of any

of the Chapter 11 Cases from the Court, or (v) providing for abstention from handling or retaining of jurisdiction of any of the Chapter 11 Cases in the Court.

      (g)    *Controlling Effect of Final Order.* To the extent any provision of this Final Order conflicts or is inconsistent with any provision of the Motion, the provisions of this Final Order shall control to the extent of such conflict.

      (h)    *Order Immediately Effective.* Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are effective immediately and enforceable upon its entry.

      (i)    *Debtor Authorization to Effectuate Relief.* The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

      (j)    *Exclusive Jurisdiction.* The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

      (k)    *Local Texas Tax Authorities.* Notwithstanding any other provisions included in this Final Order, or any agreements approved hereby, any statutory liens (collectively, the "**Tax Liens**") of the Texas Taxing Authorities[5] shall not be primed by nor made subordinate to any liens granted to any party hereby to the extent such Tax Liens are valid, senior, perfected, and unavoidable, and all parties' rights to object to the priority, validity, amount, and extent of the claims and liens asserted by the Texas Taxing Authorities are fully preserved.

---

[5]    For purposes of this Order, the term "**Texas Taxing Authorities**" shall refer to local governmental entities that are (a) authorized by the State of Texas to assess and collect taxes, and (b) represented by either the law firms of Linebarger Goggan Blair & Sampson, LLP; McCreary, Veselka, Bragg & Allen, P.C.; or Perdue Brandon Fielder Collins and Mott, LLP.

26110744.2

21.    *Laguna.*  The Agent will not foreclose on the Reserve Account or proceeds therein pending (i) a determination by the Court of Laguna's rights, if any, or (2) further order of the Court; *provided,* that Laguna's rights to argue that it has an interest in the Reserve Account and assets therein that are entitled to adequate protection are reserved as well as any defenses in connection therewith.

22.    *Proofs of Claim.*  Notwithstanding the entry of an order establishing a bar date in any of these Chapter 11 Cases, or the conversion of these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, the Prepetition Secured Parties shall not be required to file proofs of claim in any of the Chapter 11 Cases or any Successor Cases with respect to any of the Prepetition Secured Obligations, Adequate Protection Obligations, Adequate Protection Liens, Bank Product Liens, Adequate Protection Superpriority Claims, or any other claims or liens granted hereunder or created hereby.  The Agent, for the benefit of the other Prepetition Secured Parties, is hereby authorized and entitled, in its sole and absolute discretion, but in no event is required, to file (and amend and/or supplement, as it sees fit) proofs of claim in each of the Chapter 11 Cases on behalf of all of the Prepetition Secured Parties in respect of the Prepetition Secured Obligations.  Any proof of claim so filed shall be deemed to be in addition and not in lieu of any other proof of claim that may be filed by any of the Prepetition Secured Parties.  Any order entered by the Court in relation to the establishment of a bar date in any of the Chapter 11 Cases will so provide.

23.    *Relation Back.*  The relief granted herein by this Final Order to the Agent and the Prepetition Secured Parties shall relate back to the Petition Date.

Dated: March 4, 2020
      Wilmington, Delaware

CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE