## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>BORDEN DAIRY COMPANY. *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10010 (CSS)<br><br>(Jointly Administered)<br><br>**Re: D.I. 564, 803, and 878** |

## ORDER AUTHORIZING AND APPROVING (I) THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, RIGHTS, ENCUMBRANCES, AND OTHER INTERESTS; (II) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (III) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of the above-captioned debtors and debtors in possession

(collectively, the "**Debtors**") for entry of an order (this "**Order**") authorizing and approving: (a)

the sale (the "**Sale**") of substantially all of the Debtors' assets (as more specifically defined in the

APA, the "**Assets**") free and clear of all Encumbrances (as defined below) pursuant to the terms

---

[1]    The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Borden Dairy Company (1509); Borden Dairy Holdings, LLC (8504); National Dairy, LLC (9109); Borden Dairy Company of Alabama, LLC (5598); Borden Dairy Company of Cincinnati, LLC (1334); Borden Transport Company of Cincinnati, LLC (3462); Borden Dairy Company of Florida, LLC (5168); Borden Dairy Company of Kentucky, LLC (7392); Borden Dairy Company of Louisiana, LLC (4109); Borden Dairy Company of Madisonville, LLC (7310); Borden Dairy Company of Ohio, LLC (2720); Borden Transport Company of Ohio, LLC (7837); Borden Dairy Company of South Carolina, LLC (0963); Borden Dairy Company of Texas, LLC (5060); Claims Adjusting Services, LLC (9109); Georgia Soft Serve Delights, LLC (9109); NDH Transport, LLC (7480); and RGC, LLC (0314). The location of the Debtors' service address is: 8750 North Central Expressway, Suite 400, Dallas, TX 75231.

[2]    The Motion means the *Debtors' Motion for Entry of (I) An Order (A) Approving Bidding Procedures in Connection with the Sale of Substantially All of the Debtors' Assets; (B) Scheduling an Auction for and Hearing to Approve the Sale of Substantially All of the Debtors' Assets; (C) Approving Notice of the Respective Date, Time, and Place for the Auction and for Hearing on Approval of Sale; (D) Approving Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; (E) Approving Form and Manner of Notice Thereof; and (F) Granting Related Relief; and (II) An Order Authorizing and Approving (A) The Sale of Substantially All of the Debtors' Assets Free and Clear of Liens, Claims, Rights, Encumbrances, and Other Interests; (B) The Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (C) Granting Related Relief* [D.I. 564]. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order (as defined below) or the APA (as defined below), as applicable.

of that certain Asset Purchase Agreement, dated as of June 26, 2020, by and among Borden Dairy Company and each of its subsidiaries listed on the signature pages thereto (collectively, the "**Sellers**") and New Dairy OpCo, LLC, a Delaware limited liability company ("**Buyer**") (including all exhibits and schedules related thereto) (as may be amended, modified, or supplemented in accordance with the terms thereof, the "**APA**"), a substantially final form of which is attached hereto as **Exhibit 1**; (b) the assumption of the Assumed Liabilities (as defined in the APA), (c) the assumption and assignment of the Assigned Contracts (as defined in the APA) to Buyer, and (d) granting related relief; and the United States Bankruptcy Court for the District of Delaware (the "**Court**") having entered an order [D.I. 671] (the "**Bidding Procedures Order**") approving certain bidding procedures (the "**Bidding Procedures**"); and the Debtors and their advisors having conducted an auction pursuant to the Bidding Procedures Order, which commenced on June 4 and concluded on June 13, 2020 (the "**Auction**"); and the Debtors having determined, after an extensive marketing and sale process and following the Auction, that the Buyer submitted the "highest or otherwise best" bid for the Assets and the Debtors, in consultation with the Consultation Parties (as defined in the Bidding Procedures), having selected the Buyer as the Successful Bidder for the Assets in accordance with the Bidding Procedures; and the Court having conducted a hearing on the Motion commencing on June 18, 2020 (the "**Sale Hearing**"), at which time all interested parties were offered an opportunity to be heard with respect to the Motion and all relief related thereto; and the Court having reviewed and considered (x) the Motion, the APA, and all relief related thereto, (y) the objections and other responses thereto and any and all evidence adduced in connection with such objections and other responses, and (z) the statements and arguments of counsel made, the evidence adduced in support of the relief requested by the Debtors at the hearing to consider the Bidding Procedures conducted on May 22, 2020 (the "**Bidding**

26699693.1

**Procedures Hearing**"), and the Sale Hearing, and the entire record of all proceedings had in these Chapter 11 Cases before the Court; and notice of the Motion, the Bidding Procedures, the Auction, the APA, and all transactions contemplated thereunder and in this Order having been given pursuant to and consistent with the Bidding Procedures Order and the Bidding Procedures; and reasonable, adequate and sufficient notice of the Motion, the Bidding Procedures Order, the Bidding Procedures and Auction having been provided to all persons required to be served in accordance with the Bankruptcy Code and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (as amended, the "**Local Bankruptcy Rules**"); and all interested parties having been afforded a reasonable, adequate, and sufficient opportunity to be heard with respect to the Motion and all relief related thereto pursuant to Bankruptcy Rule 6004(a); and the Court having determined that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012, as more fully set forth herein; and the Court having found that venue of these Chapter 11 Cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and the Court having found that it may enter a final order consistent with Article III of the United States Constitution; and the Court having found that notice of the Motion has been given as set forth in the Motion and that such notice is reasonable, adequate, and sufficient and no other or further notice need be given except as set forth herein; and upon consideration of (a) the *Declaration of John Singh in Support of the Debtors' Bidding Procedures Motion and Related Relief* [D.I. 635], (b) the *Declaration of John Singh in Support of Sale* [D.I. 876], and (c) the *Declaration of Kent Percy in Support of Sale* [D.I. 877], and such further testimony of those declarants (if any) as was

proffered or adduced at the Sale Hearing; and the Court having found that the relief sought in the

Motion is in the best interest of the Debtors, their estates, their creditors, and all other parties in

interest; and the Court having found that the legal and factual bases set forth in the Motion and at

the Sale Hearing establish just cause for the relief granted herein; and upon the full record of the

Sale Hearing and all other pleadings and proceedings in these Chapter 11 Cases, including the

Motion; and after due deliberation thereon and good and sufficient cause appearing therefor;

**IT HEREBY IS FOUND, DETERMINED AND CONCLUDED THAT**:3

A.    ***Jurisdiction and Venue***.  The Court has jurisdiction to consider the Motion and the

relief requested therein under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of*

*Reference* from the United States District Court for the District of Delaware, dated February 29,

2012.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue over these Chapter 11 Cases

and the Motion is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The Court may

enter a final order with respect to the Motion, the Sale, the transactions contemplated thereby, and

all related relief, in each case, consistent with Article III of the United States Constitution.

B.    ***Predicates for Relief***.  The predicates for the relief sought in the Motion are sections

105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 3007, 4001, 6004, 6006,

9007, and 9014 and Local Rules 2002-1, 6004-1, and 9006-1.

C.    ***Final Order***.  This Order constitutes a final and appealable order within the

meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to

any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil

---

3    All findings of fact and conclusions of law announced by the Court at the Sale Hearing are hereby incorporated
herein to the extent not inconsistent herewith.  In addition, findings of fact shall be construed as conclusions of
law and conclusions of law shall be construed as findings of fact when appropriate.  *See* Bankruptcy Rule 7052
(made applicable to this proceeding pursuant to Bankruptcy Rule 9014).

Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order, expressly directs that this Order be effective immediately upon entry, and waives any stay of execution or implementation of this Order.

D. *Notice*. Actual written notice of the Motion and the relief requested therein was provided to the following parties (the "**Notice Parties**"): (a) the Office of the U.S. Trustee for the District of Delaware; (b) counsel to the Committee; (c) counsel to ACON Dairy Investors, L.L.C.; (d) counsel to New Laguna, LLC; (e) counsel to the Agent, RCF Lenders, and TLA Lenders; (f) counsel to the TLB Lenders; (g) all persons known or reasonably believed to have asserted an interest in the Assets; (h) the Attorneys General in the State(s) where the Assets are located; (i) all federal, state and local taxing authorities in the State(s) where the Assets are located; (j) all parties who have asserted liens against the Assets; (k) counterparties to the Debtors' executory contracts or unexpired leases; and (l) all parties included on the Debtors' consolidated creditor matrix and all parties who have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002.

E. In accordance with the provisions of the Bidding Procedures Order, the Debtors have served notices (the "**Cure Notices**") upon the counterparties to the Assigned Contracts ("**Non-Debtor Counterparties**"): (i) that the Debtors seek to assume and assign to the Buyer the Assigned Contracts on the closing of the Sale (as such closing date may be modified pursuant to the terms of the APA, the "**Closing Date**"); and (ii) of the relevant cure amounts as stated in the Cure Notice or as otherwise agreed by the Buyer and the applicable Non-Debtor Counterparty, (each, a "**Cure Cost**" and collectively, the "**Cure Costs**"). The service of such notices was good, proper, timely, reasonable, adequate, sufficient, and appropriate under the circumstances, and no

other or further notice need be given in respect of establishing a Cure Cost for the Assigned Contracts. Each of the Non-Debtor Counterparties has had a reasonable opportunity to object to the Cure Costs set forth in the applicable notice and to the assumption and assignment to the Buyer of the applicable Assigned Contract.

F.      Notice of the Motion, the time and place of the Auction, the time and place of the Sale Hearing and the time for filing objections to the Motion (the "**Sale Notice**") was reasonably calculated to provide all interested parties with timely and proper notice of the Sale, the Auction, and the Sale Hearing.

G.      As evidenced by the certificates of service previously filed with the Court, and such further representations of counsel as made at the Sale Hearing, due, good, proper, timely, reasonable, adequate, sufficient, and appropriate notice of, and a reasonable opportunity to object and/or be heard regarding, the Motion, the Sale Hearing, the Sale and the transactions contemplated thereby, has been provided in accordance with the Bidding Procedures Order and the Bidding Procedures, sections 102(1), 105(a), 363, and 365 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004, 6006, 9007, 9008 and 9014. The Debtors have complied with all obligations to provide notice of the Motion as set forth in the Bidding Procedures Order and the Bidding Procedures. The notices described herein were good, timely, reasonable, adequate, sufficient, appropriate and proper under the circumstances, reasonably calculated to provide the Notice Parties and all other interested parties with timely and proper notice under the circumstances of these Chapter 11 Cases, and no other or further notice of the Motion, the Auction, the APA, the Sale of the Assets free and clear of all Encumbrances, or the Sale Hearing is or shall be required. The disclosures made by the Debtors concerning the Motion, the Auction, the APA, the Sale of the Assets free and clear of all Encumbrances, the Sale Hearing, and the assumption

and assignment of the Assigned Contracts to the Buyer were good, timely, reasonable, adequate, sufficient, appropriate, complete, and proper under the circumstances.

H.     A reasonable opportunity to object and to appear and be heard with respect to the Sale, the Motion, and the relief requested therein, including but not limited to the assumption and assignment of the Assigned Contracts and the Cure Costs, has been afforded to all interested parties, including the Notice Parties.

I.     ***Compliance with Bidding Procedures Order***.  As demonstrated by evidence proffered or adduced and the representations of counsel at the Sale Hearing, the Debtors have conducted a thorough marketing process and a fair and open sale process in compliance with the Bidding Procedures Order and the Bidding Procedures.  The Bidding Procedures (as approved by the Bidding Procedures Order) were substantively and procedurally fair to all parties, were the result of arm's-length negotiations, and afforded a full, fair, and reasonable opportunity for any interested party to make a higher or otherwise better offer to purchase the Assets.  The Bidding Procedures and the Bidding Procedures Order have been complied with in all material respects by the Debtors and the Buyer.

J.     The Buyer's Qualified Bid includes a Credit Bid (as defined in the Bidding Procedures) by the TLB Lenders as the duly appointed and authorized sub-agent (the "**Sub-Agent**") of the Agent pursuant to the terms of the Credit Agreement (as defined in the Cash Collateral Order)[4] and that certain Agreement Among Lenders, dated as of July 6, 2017 (as amended, restated, amended and restated, and/or supplemented from time to time, the "**AAL**") with due authorization and authority to make and consummate the Credit Bid.

---

[4]    As used herein, "**Cash Collateral Order**" means *the Final Order (A) Authorizing Use of Cash Collateral, (B) Granting Adequate Protection, (C) Authorizing Use of Reserve Account Cash, and (D) Granting Related Relief* [D.I. 369], entered by the Court on March 4, 2020 (as amended from time to time).

K.      The deadline to file a Cure Cost/Assignment Objection and the deadline to file a Post-Auction Objection have expired.  To the extent that any party timely filed a Cure Cost/Assignment Objection or Post-Auction Objection, all such Cure Cost/Assignment Objections or Post-Auction Objections have been resolved, withdrawn, overruled, or adjourned to a later hearing by agreement of the parties.  To the extent that any such party did not timely file a Cure Cost/Assignment Objection or a Post-Auction Objection, such party shall be deemed to have consented to (i) the assumption and assignment of the Assigned Contract to the Buyer, and (ii) the proposed Cure Cost set forth on the Potential Assumption and Assignment Notice.

L.      ***Corporate Authority***.  The Sellers have (i) full corporate power and authority to execute and deliver the APA and all other documents contemplated thereby, (ii) all corporate power and authority necessary to consummate the transactions contemplated by, and perform under, the APA, and (iii) taken all corporate action necessary to authorize and approve the APA and the consummation of the transactions contemplated thereby.  The Sale has been duly and validly authorized by all necessary corporate action.  No consents or approvals, other than those expressly provided for in the APA, are required for the Sellers to consummate the Sale, execute the APA, or consummate the transactions contemplated thereby.

M.      The APA was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, or the District of Columbia.  Neither the Debtors nor the Buyer is entering into the transactions contemplated by the APA fraudulently for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims or similar claims.

N.      Except to the extent otherwise provided in the APA, the Debtors are the sole and lawful owners of the Assets, and no other Entity has any ownership right, title, or interests therein.

The Assets constitute property of the Debtors' estates and good title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.  The transfer of the Assets to the Buyer will be, as of the Closing Date, a legal, valid, and effective transfer of the Assets, except as otherwise expressly set forth in this Order or in the APA, which transfer, upon receipt by PNC (as defined below) of the cash proceeds of the Sale sufficient to indefeasibly pay in full and satisfy the PNC Obligations (as defined below), vests or will vest the Buyer with all right, title, and interest of the Debtors to the Assets, except as otherwise expressly set forth in this Order or in the APA, free and clear of any and all Encumbrances to the fullest extent permitted by applicable law, with the exception of any such Encumbrances that are expressly assumed by the Buyer as Assumed Liabilities under the APA or are Permitted Encumbrances, including, for the avoidance of any doubt, Cure Costs or any other obligations arising under the Assigned Contracts and Assumed CBAs to the extent set forth in the APA.  "**_Encumbrances_**" shall include, but not be limited to, all debts (as that term is defined in section 101(12) of the Bankruptcy Code) arising under, relating to, or in connection with any act of the Debtors or claims (as that term is defined in section 101(5) of the Bankruptcy Code), consensual or nonconsensual liens (including any liens as that term is defined in section 101(37) of the Bankruptcy Code), statutory liens, real or personal property liens, mechanics' liens, materialman's liens, warehouseman's liens, tax liens, and other encumbrances relating to, accruing, or arising any time prior to the Closing Date, liabilities (including any liability that results from, relates to or arises out of tort or any other product liability claim), duties, responsibilities, obligations, demands, commitments, assessments, costs, expenses, losses, expenditures, charges, fees, penalties, fines, contributions, premiums, encumbrances, guaranties, options (including in favor of third parties), rights, contractual commitments, restrictions, restrictive covenants, covenants not to compete, rights to refunds, escheat obligations,

interests and matters of any kind and nature whatsoever, including, without limitation, hypothecations, security interests, mortgages, security deeds, deeds of trust, debts, levies, indentures, pledges, restrictions (whether on voting, sale, transfer, disposition or otherwise), charges, leases, licenses, easements, rights of way, encroachments, instruments, preferences, priorities, security agreements, conditional sales agreements, title retention contracts and other title retention agreements and other similar impositions, options, judgments, offsets, rights of recovery, rights of preemption, rights of setoff, rights of first refusal, profit sharing interest, other third party rights, other impositions, imperfections or defects of title or restrictions on transfer or use of any nature whatsoever, claims for reimbursement, claims for contribution, claims for indemnity, claims for exoneration, products liability claims, alter-ego claims, successor-in-interest claims, successor liability claims, substantial continuation claims, COBRA claims, withdrawal liability claims, environmental claims, claims under or relating to any employee benefit plan, ERISA affiliate plan, or ERISA (including any pension or retirement plan), WARN Act (as defined below) claims or any claims under state or other laws of similar effect, tax claims (including claims for any and all foreign, federal, state and local taxes, including, but not limited to, sales, income, use or any other type of tax), escheatment claims, reclamation claims, obligations, liabilities, demands, and guaranties, whether any of the foregoing are known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, secured or unsecured, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the Petition Date, and whether imposed by agreement, understanding, law, equity or otherwise, including claims otherwise arising under doctrines of successor liability, successor-in-interest liability, continuation liability or substantial

26699693.1

continuation liability, including, without limitation, that the Buyer is in any way a successor, successor-in-interest, continuation or substantial continuation of the Debtors or their businesses, other than the Permitted Encumbrances[5] and the agreements and obligations set forth in this Order. Thus, consistent with section 363(f) of the Bankruptcy Code, the Buyer shall have no liability for any Encumbrances (other than the Permitted Encumbrances or as otherwise expressly set forth in this Order). The Buyer would not have entered into the Agreement and would not have agreed to purchase and acquire the Assets, if the sale of the Assets was not free and clear of any and all Encumbrances (other than the Permitted Encumbrances or as otherwise expressly set forth in this Order).

O.    ***Sale in Best Interests of the Debtors' Estates***. The Debtors have demonstrated through the testimony and/or other evidence proffered at the Sale Hearing and the arguments, statements and representations of counsel made on the record of the Sale Hearing good and sufficient reasons for approval of the APA, the Sale, and the transactions contemplated thereby. The relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest. The Debtors have demonstrated (i) good, sufficient, and sound business purposes and justifications for approving the APA and the Sale, and (ii) compelling circumstances for the immediate approval and consummation of the transactions contemplated by the APA and all other Transaction Documents for the Sale outside of (a) the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code, and (b) a chapter 11 plan, in that, among other things, the immediate consummation of the Sale to the Buyer and all transactions contemplated thereby are necessary and appropriate to maximize the value of the Debtors' estates,

---

[5]    As used herein, "**Permitted Encumbrances**" shall have the meaning set forth in the APA, except that, solely with respect to this Order, it shall not include clause (l) of the definition of "Permitted Encumbrances" set forth in the APA.

and the Sale will provide the means for the Debtors to maximize distributions to their creditors. Accordingly, there is cause to lift the stay contemplated by Bankruptcy Rules 6004 and 6006 with respect to the transactions contemplated by this Order.

P.      To maximize the value of the Assets and preserve the viability of the businesses to which they relate, it is essential that the Sale occur within the time constraints set forth in the APA. Time is of the essence in consummating the Sale.  Given all of the circumstances of the Chapter 11 Cases and the adequacy and fair value of the Purchase Price under the APA, the proposed Sale constitutes a reasonable and sound exercise of the Debtors' business judgment and should be approved.

Q.      The consummation of the Sale and the assumption and assignment of the Assigned Contracts are legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), and 365 of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the Sale.

R.      ***Good Faith of Buyer and Sellers***.  The APA was negotiated, proposed, and entered into by the Sellers and the Buyer, in good faith, without collusion or fraud of any kind, and from arm's-length bargaining positions, and is substantively and procedurally fair to all parties.  The Buyer is not an "insider" or "affiliate" of any of the Debtors, as those terms are defined in sections 101(2) and 101(31) of the Bankruptcy Code.  Neither any of the Debtors, nor the Buyer, have engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code or cause the application of, or implicate, section 363(n) of the Bankruptcy Code to the APA or to the consummation of the transactions contemplated thereby and transfer of the Assets and Assigned Contracts to the Buyer.  The Debtors and the Buyer have fully disclosed the identities of

each entity participating in the Buyer's bid.  Buyer is purchasing the Assets, in accordance with the APA, in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to all of the protections afforded by such provision, and otherwise has proceeded in good faith in all respects in connection with the Sale.  As demonstrated by (i) any testimony and other evidence proffered or adduced at the Sale Hearing, and (ii) the representations of counsel made on the record at the Sale Hearing, appropriate marketing efforts and a competitive sale process were conducted in accordance with the Bidding Procedures Order and the Bidding Procedures and, among other things: (a) the Debtors and Buyer complied with the provisions in the Bidding Procedures Order and the Bidding Procedures; (b) Buyer agreed to subject its Bid to the competitive bidding procedures set forth in the Bidding Procedures Order; (c) Buyer in no way induced or caused the chapter 11 filing by the Debtors; (d) all payments to be made, and all other material agreements or arrangements entered into, by Buyer in connection with the Sale have been disclosed; and (e) there is no common identity of directors, managers, or controlling stockholders between the Buyer, on the one hand, and the Debtors, on the other hand. The Court also finds that no evidence was offered or proffered in support of any cause under section 363(k) of the Bankruptcy Code to limit, modify, or otherwise restrict the right of the Sub-Agent under the Credit Agreement and the AAL to Credit Bid the Credit Bid Amount (as defined in the APA), and the Buyer is hereby authorized and entitled to offset the TLB Claims (as defined in the APA) in an amount equal to the Credit Bid Amount as purchase price consideration under the APA.

S.    ***No Collusion***.  Neither the Debtors nor the Buyer has engaged in any conduct that would cause or permit the APA or the consummation of the Sale to be avoided, or costs or damages to be imposed under section 363(n) of the Bankruptcy Code, and accordingly neither the Debtors

nor the Buyer has violated section 363(n) of the Bankruptcy Code by any action or inaction. Specifically, the Buyer has not acted in a collusive manner with any entity (as such term is defined in the Bankruptcy Code, an "**Entity**") and the Purchase Price paid by the Buyer for the Assets was not controlled by any agreement among the bidders, all of whom acted in good-faith, at arm's-length, and in a noncollusive manner. The transactions under the APA may not be avoided, and no damages may be assessed against the Buyer or any other party under section 363(n) of the Bankruptcy Code or any other applicable bankruptcy or non-bankruptcy law.

T.    *Highest or Otherwise Best Offer*. The Debtors conducted the Auction and the marketing and sale process with respect to the Assets that culminated in the Auction, in accordance with, and have otherwise complied in all material respects with, the Bidding Procedures Order and Bidding Procedures. The Bidding Procedures afforded a full, fair, and reasonable opportunity for any Entity to make a higher or otherwise better offer to purchase the Assets. The Auction was duly noticed and conducted in a non-collusive, fair, and good faith manner, and a reasonable opportunity was given to any interested party to make a higher or otherwise better offer for the Assets. The APA constitutes the highest or otherwise best offer for the Assets and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative. The Debtors' determinations that the APA constitutes the highest or otherwise best offer for the Assets and maximizes value for the benefit of the Debtors' estates constitutes a valid and sound exercise of the Debtors' business judgment and are in accordance and compliance with the Bidding Procedures and the Bidding Procedures Order. The APA represents fair and reasonable terms for the purchase of the Assets. No other Entity has offered to purchase the Assets for greater overall value to the Debtors' estates than the Buyer. Approval of the Motion and the APA and the consummation of the transactions contemplated thereby will maximize the value of each of the

Debtors' estates and are in the best interests of the Debtors, their estates, their creditors, and all other parties in interest.

U.    ***Consideration***.  The consideration provided by the Buyer for the Assets pursuant to the APA and as described herein, including the form and total distributable value to be realized by the Debtors, including, without limitation, the Credit Bid in the Credit Bid Amount, the TLB Lender Contribution (as defined below), the assumption of the Assumed Liabilities as set forth in the APA, the assumption of the Debtors' obligations with respect to, or cash collateralization of, certain Letters of Credit (as described in paragraph 20), and the deemed satisfaction in full and waiver of Adequate Protection Liens and Adequate Protection Superpriority Claims (each as defined in the Cash Collateral Order), all of which is part of the consideration provided by the Buyer, (a) is fair and reasonable, (b) is the highest or otherwise best offer for the Assets, and (c) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia, and any foreign jurisdiction (including the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, and similar laws and acts).  No other Entity or group of Entities has offered to purchase the Assets for greater economic value to the Debtors' estates than the Buyer. Approval of the Motion, the APA, and the consummation of the transactions contemplated thereby is in the best interests of the Debtors, their estates, their creditors and other parties in interest.  On the Closing Date, the TLB Lenders will assign and convey to the Debtors' estates, pursuant to an assignment agreement acceptable to the Debtors, the Committee and the TLB Lenders, all causes of action of any nature held by the TLB Lenders against the Debtors, the Debtors' Subsidiaries, the Debtors' Affiliates, the Debtors' estates, the Debtors' equity holders, and the Debtors' current or former directors, managers, members and officers (such assignment and conveyance, the "**TLB**

**Lender Contribution**").  For the avoidance of doubt, the releases provided by the Buyer Releasors shall not release the causes of action included in the TLB Lender Contribution.

V.      *Post-Sale DIP Facility*.  In connection with Closing of the Sale and the transactions contemplated thereby, KKR Loan Administrative Services LLC (the "**DIP Agent**") shall provide to the Debtors a single draw debtor-in-possession term loan (the "**Post-Sale DIP**"), on substantially the terms set forth in the term sheet attached hereto as **Exhibit 2**.  The Post-Sale DIP is subject in all respects to approval by the Court on a final basis (the "**Final DIP Order**") on motion of the Debtors.  The Post-Sale DIP, if approved by the Court, shall become available to the Debtors contemporaneously with the Closing of the Sale.  The proceeds of the Post-Sale DIP shall be used to fund (i) the interest, fees and expenses associated with the Post-Sale DIP, (ii) the amount by which the Carve-Out Amount (as defined below) exceeds the amount of cash maintained in the Carve-Out Account (as defined below) to be maintained and funded pursuant to paragraph 22 of this Order and (iii) certain Administrative Claims[6] in connection with the wind-down of the Debtors' estates pursuant to a budget to be negotiated in good faith by the Debtors and the DIP Agent, and otherwise acceptable to the DIP Agent (the "**Wind-Down Budget**").  Subject to the Replacement Carve-Out (as defined below), the obligations of the Debtors under the Post-Sale DIP will be secured by first priority liens on all assets of the Debtors remaining in the Debtors' estates immediately after the Closing of the Sale and the DIP Agent shall, pursuant to the Final DIP Order, be granted liens on all unencumbered collateral and superpriority administrative claims on account of its commitments, and amounts funded, under the Post-Sale DIP.  The TLB Lender's

---

[6] "**Administrative Claims**" means Claims (as defined in the Bankruptcy Code) for costs and expenses of administration of the Chapter 11 Cases allowed pursuant to section 503(b) of the Bankruptcy Code and entitled to priority pursuant to 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including the actual and necessary costs and expenses incurred on or after the filing of the Chapter 11 Cases of preserving the estates and operating the Debtors' business and all fees and charges assessed against the estates pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

offer to provide the Post-Sale DIP was a binding and irrevocable offer made during the Auction as part of the Buyer's "final and best" Bid, and that component of the Buyer's Bid was integral to the Debtors' determination to select that Bid as the Successful Bid at the conclusion of the Auction.

W.    ***Legal, Valid, and Binding Transfer***.   The Assets are property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.   The transfer of the Assets to the Buyer will be a legal, valid, and effective sale and transfer of the Assets and, except as provided in the APA or this Order, upon receipt by PNC of the cash proceeds of the Sale sufficient to indefeasibly pay in full and satisfy the PNC Obligations, will vest the Buyer with all right, title, and interest of the Sellers to the Assets free and clear of all Encumbrances (other than Assumed Liabilities and Permitted Encumbrances).   The APA is a valid and binding contract between the Sellers and the Buyer and shall be enforceable according to its terms.   From and after the closing of the Sale, the APA, the Sale, and the transactions contemplated thereby shall be specifically enforceable against and binding upon (without posting any bond) the Debtors and any chapter 11 trustee appointed in these Chapter 11 Cases, or in the event the Chapter 11 Cases are converted to a case under chapter 7 of the Bankruptcy Code, a chapter 7 trustee, and shall not be subject to rejection or avoidance by any person.

X.    ***No Successor***.   None of the Buyer or any of the Buyer Parties (as defined below) is a successor to or a mere continuation or substantial continuation of the Debtors or their estates, and there is no continuity of enterprise or common identity between the Buyer (or any of the Buyer Parties) and the Debtors.   None of the Buyer or the Buyer Parties is holding itself out to the public as a successor to or a continuation of the Debtors or their estates.   Each of the Buyer and the Buyer Parties is not, and shall not be, considered a successor in interest to any of the Debtors or their

estates, by reason of any theory of law or equity, and the Sale does not amount to a consolidation, succession, merger, or *de facto* merger of the Buyer and the Debtors and/or the Debtors' estates. Immediately prior to the Closing Date, neither the Buyer nor any of the Buyer Parties was an "insider" or "affiliate" of the Debtors, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors, managers, or controlling stockholders existed between the Debtors and the Buyer or the Buyer Parties.  The transfer of the Assets to the Buyer, and the assumption of the Assumed Liabilities, except as otherwise explicitly set forth in the APA, does not, and will not, subject the Buyer or the Buyer Parties to any liability whatsoever, with respect to the Debtors or the operation of the Debtors' businesses prior to the Closing (as modified by the APA) or by reason of such transfer, including under any federal, state, or local statute or common law, or the laws of any foreign jurisdiction, based, in whole or in part, directly or indirectly, on any, or any theory of, successor, vicarious, antitrust, environmental, fraudulent transfer or avoidance, revenue, pension, ERISA, tax, labor (including any liability or obligation under the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101 *et seq*. ("**WARN**")), employment or benefits, escheat or unclaimed property laws, *de facto* merger, business continuation, substantial continuity, alter ego, derivative, transferee, veil piercing, continuity of enterprise, mere continuation, product line, or products liability or law, or other applicable law, rule, or regulation (including, without limitation, filing requirements under any such law, rule, or regulation), or under any products liability law or doctrine, or theory of liability, whether legal, equitable, or otherwise, and Buyer and the Buyer Parties shall have no liability under the Comprehensive Environmental Response Compensation and Liability Act, and shall not be deemed to be a "successor employer" for purposes of the Internal Revenue Code of 1986, Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act, the

Americans with Disability Act, the Family Medical Leave Act, the National Labor Relations Act, the Labor Management Relations Act, the Older Workers Benefit Protection Act, the Equal Pay Act, the Civil Rights Act of 1866 (42 U.S.C. § 1981), the Employee Retirement Income Security Act of 1974, the Multiemployer Pension Protection Act, the Pension Protection Act and/or the Fair Labor Standards Act (collectively, the "**Successor or Other Liabilities**").  Pursuant to the APA, Buyer does not, and has not, expressly or implicitly assumed any of the Debtors' liabilities other than the Assumed Liabilities.

Y.    *Free and Clear*.  The conditions of section 363(f) of the Bankruptcy Code, including 363(f)(2), have been satisfied in full; therefore, the Debtors may sell the Assets free and clear of any Encumbrances in the Asset (other than Assumed Liabilities, Permitted Encumbrances or as otherwise expressly set forth in this Order), to the fullest extent permitted by applicable law. The Buyer would not have entered into the APA and would not consummate the transactions contemplated thereby if the Sale of the Assets to the Buyer, and the assumption and assignment of the Assigned Contracts to the Buyer, were not free and clear of all Encumbrances (other than Assumed Liabilities, Permitted Encumbrances or as otherwise expressly set forth in this Order). The Debtors may sell the Assets free and clear of all Encumbrances against the Debtors, their estates, or any of the Assets (except the Assumed Liabilities and Permitted Encumbrances) because, in each case, one or more of the standards set forth in section 363(f)(1)–(5) of the Bankruptcy Code has been satisfied.  Each Entity that holds an Encumbrance against the Debtors, their estates, or any of the Assets, who did not timely object, or who withdrew their objections to, the Sale or the Motion are deemed to have consented thereto pursuant to section 363(f)(2) of the Bankruptcy Code.  Each Entity that holds an Encumbrance of any kind on the Assets to be transferred on the Closing Date (as defined in the APA) falls within one or more of the other

subsections of section 363(f) of the Bankruptcy Code, including, it: (i) has, subject to the terms and conditions of this Order, consented to the Sale or is deemed to have consented to the Sale; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such Encumbrances; or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code. All other holders of Encumbrances fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code. Nothing set forth herein is intended to, nor shall it, affect, modify, impair or alter in any manner any rights, protections or claims granted to PNC Bank, N.A., in its capacities as Agent, RCF Lender, TLA Lender, issuer of Letters of Credit, and provider of Bank Products (each as defined in the Credit Agreement (as defined in the Cash Collateral Order)) (collectively, "**PNC**"), including right to and priority of payment in full of the Prepetition Secured Obligations (as defined in the Cash Collateral Order) then due and owing to PNC under the Prepetition Loan Documents (as defined in the Cash Collateral Order), including all outstanding prepetition and postpetition interest, fees, costs, and expenses (including attorneys' fees and financial advisors' fees) owed to PNC in connection with the foregoing (the "**PNC Obligations**"), or any other party in  the Cash Collateral Order, or any rights, claims or defense of any party in interest with respect to any of the foregoing in this proviso.

Z.    The Buyer will not consummate the transactions contemplated by the APA unless this Court expressly orders that, effective as of Closing of the Sale, none of the Buyer, its Affiliates, its past, present and future members or shareholders (other than KKR Credit Advisors (US) LLC, on behalf of itself, certain of its affiliates and its and their managed funds or accounts, in its capacity as the TLB Lender), its lenders (including, without limitation, KKR Credit Advisors (US) LLC, on behalf of itself, certain of its affiliates, and its or theirs managed funds or accounts, and PNC Bank, National Association, solely in their capacities as lenders to Buyer), subsidiaries,

parents, divisions, agents, representatives, insurers, attorneys, successors and assigns, or any of its or their respective directors, managers, officers, employees, agents, representatives, attorneys, contractors, subcontractors, independent contractors, owners, insurance companies, or partners (each a "**Buyer Party**," and collectively, the "**Buyer Parties**"), or the Assets, will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or in equity, or by payment, setoff, recoupment, or otherwise, directly or indirectly, any Encumbrances (other than Assumed Liabilities and Permitted Encumbrances; *provided*, *that*, nothing shall modify any right of setoff or recoupment of any party with respect to any Assigned Contract; *provided further*, *that*, for the avoidance of doubt, PNC Bank, National Association, as a Buyer Party, shall not be liable in any way for Assumed Liabilities and Permitted Encumbrances), including rights or claims based on any Successor or Other Liabilities.  The total consideration to be provided under the APA and herein reflects the Buyer's reliance on this Order to provide it, pursuant to sections 105(a) and 363 of the Bankruptcy Code, with title to and possession of the Assets free and clear of all Encumbrances (other than Assumed Liabilities and Permitted Encumbrances) of any kind or nature whatsoever (including, without limitation, any potential Successor or Other Liabilities).

AA.    Not transferring the Assets free and clear of all Encumbrances (other than Assumed Liabilities and Permitted Encumbrances) of any kind or nature whatsoever, including rights or claims based on any Successor or Other Liabilities and/or applicable state, federal, or foreign law or otherwise, would adversely impact the Debtors' efforts to maximize the value of their estates, and the transfer of the Assets other than pursuant to a transfer that is free and clear of all Encumbrances (other than Assumed Liabilities and Permitted Encumbrances) of any kind or nature whatsoever would be of substantially less benefit to the Debtors' estates.

26699693.1

BB.    *Not a* **Sub Rosa** *Plan*.  The APA and Sale do not constitute an impermissible *sub rosa* chapter 11 plan for which approval has been sought without the protections that a disclosure statement would afford.  The Sale neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates a liquidating chapter 11 plan for the Debtors.

CC.    ***Consumer Privacy Ombudsman.***    The appointment of a consumer privacy ombudsman pursuant to section 363(b)(1) or section 332 of the Bankruptcy Code is not required with respect to the relief requested in the Motion.

DD.    ***Assumption and Assignment of the Assigned Contracts***.  The assumption and assignment of the Assigned Contracts pursuant to the terms of this Order and the Bidding Procedures Order is integral to the APA and is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest, and represents the Debtors' reasonable exercise of sound and prudent business judgment.  The assumption and assignment of the Assigned Contracts (i) is necessary to sell the Assets to the Buyer, (ii) allows the Debtors to maximize the value of the Assets, including the Assigned Contracts, (iii) limits the losses suffered by Non-Debtor Counterparties, and (iv) maximizes the recoveries to other creditors of the Debtors by limiting the amount of claims against the Debtors' estates by avoiding the rejection of the Assigned Contracts. For these reasons, the Debtors have exercised sound business judgment in assuming and assigning the Assigned Contracts and such assumption and assignment is in the best interests of the Debtors' estates.

EE.    The Debtors and the Buyer have, to the extent necessary, satisfied the requirements of section 365 of the Bankruptcy Code.  Pursuant to section 365(f) of the Bankruptcy Code, each of the Assigned Contracts required to be assumed and assigned under the APA shall be assigned and transferred to and remain in full force and effect for the benefit of, the Buyer, notwithstanding

any provision in such contract or other restrictions prohibiting its assignment or transfer, and such assignment or transfer shall be free and clear of any Encumbrances (other than Assumed Liabilities and Permitted Encumbrances).  No section of any of the Assigned Contracts that would prohibit, restrict, or condition, whether directly or indirectly, the use, assumption, or assignment of any of the Assigned Contracts in connection with the Sale shall have any force or effect.

FF.    Except as expressly assumed by the Buyer under the APA, the transfer of the Assets to the Buyer and the assignment to the Buyer of the Assigned Contracts will not subject the Buyer to any liability whatsoever which may become due or owing under the Assigned Contracts prior to the Closing Date (other than Cure Costs), or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, or foreign jurisdiction, based, in whole or in part, directly or indirectly, on any theory of law or equity, including any Successor or Other Liabilities.

GG.    As evidenced by, among other things, the *Declaration of Colin Murphy in Support of Adequate Assurance of Future Performance of Assumed Contracts by New Dairy OpCo, LLC* [D.I. [  ]] (the "**Buyer Declaration**"), the Buyer has demonstrated adequate assurance of future performance with respect to the Assigned Contracts pursuant to sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code to the extent that any such assurance is required and not waived by the respective Non-Debtor Counterparties.

HH.    The assumption and assignment of the Assigned Contracts pursuant to the terms of this Order is integral to the APA and is in the best interests of the Debtors, their estates, creditors and other parties in interest, and represents the exercise of sound and prudent business judgment by the Debtors.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1.      The Motion and the relief requested therein is GRANTED and APPROVED, as set forth herein and on the record of the Sale Hearing, which is incorporated herein as if fully set forth in this Order.

2.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to these Chapter 11 Cases pursuant to Bankruptcy Rule 9014.  To the extent that any of the findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the conclusions of law constitute findings of fact, they are adopted as such.

3.      The Court's findings of fact and conclusions of law set forth in the Bidding Procedures Order remain in full force and effect.

4.      All objections to, reservations of rights regarding, or other responses to the Motion or the relief requested therein, the APA, all other Transaction Documents, the Sale, the entry of this Order, or the relief granted herein, including, without limitation, any objections to Cure Costs or relating to the cure of any defaults under any of the Assigned Contracts or to the assumption and assignment of any of the Assigned Contracts to the Buyer by the Debtors, that have not been withdrawn, waived, adjourned or settled by announcement to this Court during the Sale Hearing or by stipulation filed with this Court or otherwise been resolved pursuant to the terms thereof, including any and all reservations of rights included in such objections or otherwise, are hereby denied and overruled on the merits with prejudice.  Those parties who did not object or withdrew their objections to the Motion or the entry of this Order in accordance with the Bidding Procedures Order, or who withdrew their objections thereto, are deemed to have consented to the relief granted herein for all purposes, including without limitation, pursuant to section 363(f)(2) of the Bankruptcy Code.

5.      Consideration of unresolved Cure Cost/Assignment Objections and Post-Auction Objections relating to Contract assignment, unless otherwise ordered by the Court or with the consent of the party to any Contract that is subject to a Cure Cost/Assignment Objection or Post-Auction Objection relating to Contract assignment, shall be adjourned to a date to be determined and agreed to by the Debtors and the Buyer (but which shall occur prior to July 18, 2020); *provided, however*, that (i) any Contract that is the subject of a Cure Cost/Assignment Objection with respect solely to the amount of the Cure Cost may be assumed and assigned prior to resolution of such objection, and (ii) such undisputed Cure Cost shall be promptly cured on or after the Closing Date or as otherwise agreed to by the Buyer and the applicable Non-Debtor Counterparty by the Buyer's payment of the applicable Cure Cost.

6.      The Debtors are authorized to enter into the APA, the transactions contemplated therein and all other Transaction Documents, including, in each case, any amendments, supplements, and modifications thereto and such documents and terms and conditions thereof are approved in all respects.

7.      Notice of the Sale Hearing, the APA and the transactions contemplated thereby was fair, sufficient, proper and equitable under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, the Local Rules, and the procedural due process requirements of the United States Constitution.

8.      Pursuant to sections 105(a), 363(b) and (f), and 365 of the Bankruptcy Code, the Debtors and each other person having duties or responsibilities under the APA, any agreements or instruments related thereto or this Order, and their respective directors, officers, employees, members, managers, partners, agents, representatives, and attorneys, are hereby authorized and empowered to (a) execute any additional instruments or documents that may be reasonably

necessary or appropriate to implement the APA; *provided*, that such additional documents do not materially change the APA's terms adversely to the Debtors' estates; (b) consummate the Sale pursuant to and in accordance with the terms and conditions of the APA and all other Transaction Documents; (c) close the Sale as contemplated in the APA and this Order; and (d) execute and deliver, perform under, consummate, implement, and take any and all other acts or actions as may be reasonably necessary or appropriate to the performance of their obligations as contemplated by the APA and all other Transaction Documents, in each case without further notice to or order from this Court, including the assumption and assignment of the Assigned Contracts to the Buyer, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the APA and the Sale.  The Buyer shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the APA or any other Sale-related document.  The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence and the other provisions of this Order; *provided, however*, that this Court shall retain exclusive jurisdiction over any and all disputes with respect thereto.

9.      This Order shall be binding in all respects upon (a) the Debtors, (b) the Debtors' estates, (c) all creditors of, and holders of equity interests in, the Debtors, (d) all holders of Encumbrances or other interests (whether known or unknown) in, against, or on all or any portion of the Assets, (e) all Non-Debtor Counterparties, (f) the Buyer, the Buyer Parties and all respective successors and assigns of the Buyer and the Buyer Parties, (g) the Assets, and (h) all successors and assigns of each of the foregoing, including, without limitation, any trustee subsequently appointed in the Chapter 11 Cases, or a chapter 7 trustee appointed upon a conversion of one or more of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code or other plan

fiduciaries, plan administrators, liquidating trustees, or other estate representatives appointed or elected in the Debtors' cases. This Order and the APA shall inure to the benefit of the Debtors, their estates and creditors, the Buyer, the Agent, the Sub-Agent, the RCF Lenders, the TLA Lenders, and the TLB Lenders (the Agent, the Sub-Agent, the RCF Lenders, the TLA Lenders, and the TLB Lenders, collectively, the "**Existing Lender Group**"), and the respective successors and assigns of each of the foregoing, including, without limitation, any trustee subsequently appointed in the Chapter 11 Cases or upon conversion to chapter 7 under the Bankruptcy Code, and any Entity seeking to assert rights on behalf of any of the foregoing or that belong to the Debtors' estates. The APA and all other Transaction Documents shall be binding in all respects upon the Debtors.

10.    The Debtors are hereby authorized to take any and all actions necessary to consummate the transactions contemplated by the APA, including any actions that otherwise would require further approval by shareholders, partners, members, or the Debtors' board of directors or board of managers, as the case may be, without the need of obtaining such approvals.

11.    *Transfer of Assets Free and Clear of Encumbrances*. Pursuant to sections 105(a), 363(b), 363(f), 365(b), and 365(f) of the Bankruptcy Code, the Debtors are authorized to transfer the Assets, including the Assigned Contracts, to the Buyer in accordance with the APA and all other Transaction Documents, and such transfer shall, upon receipt by PNC of the cash proceeds of the Sale sufficient to indefeasibly pay in full and satisfy the PNC Obligations, (a) constitute a legal, valid, binding, and effective transfer of the Assets notwithstanding any requirement for approval or consent by any Person, (b) vest the Buyer with title to and possession of the Assets, and (c) upon the Debtors' receipt of the Purchase Price and receipt by PNC of the cash proceeds of the Sale sufficient to indefeasibly pay in full and satisfy the PNC Obligations, be free and clear

of all Encumbrances (other than Assumed Liabilities and Permitted Encumbrances) of any kind or nature whatsoever, including, without limitation, any potential Successor or Other Liabilities. Upon the Closing, the Buyer shall take title to and possession of the Assets subject only to the Assumed Liabilities and the Permitted Encumbrances.

12.    Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the sale and transfer of the Debtors' right, title and interest in the Assets to the Buyer pursuant to the APA are a legal, valid, and effective disposition of the Assets, and vest the Buyer with all right, title, and interest of the Debtors to and in the Assets free and clear of all Encumbrances (other than Assumed Liabilities and Permitted Encumbrances).  The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full, and the Debtors' sale of the Assets shall be free and clear of any Encumbrances in the Assets (other than the Assumed Liabilities and Permitted Encumbrances).

13.    To the extent provided for in the APA, any and all of the Debtors' security deposits, or other security held by landlords, lessors, and other counterparties to the Assigned Contracts are being transferred and assigned to, and shall be the property of, the Buyer from and after the Closing, which transfer and assignment of security deposits, other deposits, or security shall satisfy in full the requirements of section 365(l) of the Bankruptcy Code for all contracts, leases, and licenses assumed and assigned pursuant to this Order or the APA; *provided*, *however*, that in no case shall the Good Faith Deposits of any other Bidder be transferred, assigned to, or become the property of the Buyer.

14.    The Sale of the Assets is not subject to avoidance by any person or for any reason whatsoever, including, without limitation, pursuant to section 363(n) of the Bankruptcy Code and the Buyer, the Buyer Parties and the Existing Lender Group shall not be subject to damages, including any costs, fees, or expenses under section 363(n) of the Bankruptcy Code.

26699693.1

28

15.     On the Closing Date, each of the Debtors' creditors is authorized to execute such documents and take all other actions as may be reasonably necessary to release its Encumbrances or other interests in the Assets, if any, as such Encumbrances may have been recorded or may otherwise exist.

16.     The provisions of this Order authorizing the Sale of the Assets free and clear of all Encumbrances, other than Assumed Liabilities, Permitted Encumbrances or as otherwise expressly set forth in this Order, shall be self-executing, and neither the Debtors nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Order.  If any Entity which has filed a financing statement, mortgage, mechanic's lien, *lis pendens*, or other statement, document, or agreement evidencing any Encumbrances on, or in, all or any portion of the Assets (other than statements or documents with respect to Assumed Liabilities or Permitted Encumbrances) shall not have delivered to the Debtors prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases, and/or any other documents necessary for the purpose of documenting the release and/or termination of all Encumbrances which the Entity has or may assert with respect to all or any portion of the Assets, then (i) the Debtors and the Buyer are hereby authorized to execute and file such statements, instruments, releases, and/or other similar documents on behalf of such Entity with respect to the Assets, and (ii) the Buyer is hereby authorized to file, register, or otherwise record a certified copy of this Order that, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release and/or termination of all Encumbrances of any kind or nature against or in the Assets (other than Assumed Liabilities) (collectively the "**Release Documents**"); *provided, that*, neither the Debtors nor the Buyer is authorized to file any Release

Documents with respect to the Encumbrances held by PNC, as Agent, in the Assets without first obtaining the express written consent of the Agent and providing drafts of such Release Documents to the Agent for its review and approval, which consent shall not be unreasonably withheld.

17.     On the Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer to the Buyer of the Assets and the Debtors' interests in the Assets acquired by the Buyer under the APA.  This Order is and shall be effective as a determination that, on the Closing Date, all Encumbrances and any other interest of any kind or nature whatsoever including, without limitation, any Successor or Other Liabilities existing as to the Assets prior to the Closing Date, other than the Assumed Liabilities or Permitted Encumbrances, shall have been unconditionally released, discharged, and terminated to the fullest extent permitted by applicable law, and that the conveyances described herein have been effected.  This Order shall be binding upon and govern the acts of all Entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other Entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing Entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA.  A certified copy of this Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any Encumbrances and other interests of record except those assumed as Assumed Liabilities or Permitted Encumbrances.  Without limiting the generality of the foregoing, this Order shall

constitute all approvals and consents, if any, required by the corporate laws of the states of formation of the Debtors and all other applicable business, corporation, trust, and other laws of the applicable governmental authorities with respect to the implementation and consummation of the APA, any related agreements or instruments and this Order, and the transactions contemplated thereby and hereby.

18.     All Entities that are presently, or on the Closing Date may be, in possession of some or all of the Assets to be sold, transferred, or conveyed (wherever located) to the Buyer pursuant to the APA are hereby directed to surrender possession of the Assets to the Buyer on the Closing Date.

19.     ***Certain Claims and Causes of Action***.  Notwithstanding anything in the APA to the contrary, the Assets shall not include (i) Avoidance Actions other than those described in Section 2.01(b) (xxi) of the APA or (ii) rights, claims or causes of action by or in the right of the Debtors or any of its Subsidiaries, on the one hand, against any current or former director, manager or officer of the Debtors or any of its Subsidiaries, including, without limitation, the Retained Causes of Action, on the other hand, unless such director, manager or officer is retained by Buyer on, prior to, or contemporaneously with the Closing.  Notwithstanding anything to the contrary in this Order or the APA, at Closing, cash sufficient to indefeasibly repay in full the PNC Obligations shall be paid in cash by wire transfer to PNC to be applied to, and in full and final satisfaction of, such PNC Obligations, and in accordance with a payoff letter that includes, among other things, (i) a termination of PNC's obligations to provide credit of any kind (including Letters of Credit and Bank Products (as defined in the Credit Agreement (as defined in the Cash Collateral Order))) under the Credit Agreement (as defined in the Cash Collateral Order), (ii) a release of PNC's liens

26699693.1

over the Debtors' Collateral (as defined in the Cash Collateral Order), and (iii) a general release in favor of PNC as Agent, RCF Lender, and TLA Lender.

20.    Notwithstanding anything to the contrary contained herein, as of the Closing, (i) to the extent that PNC is a Debt Financing Source (as defined in the APA) under a revolving credit facility provided to the Buyer (such revolving credit facility, a "**Buyer Revolving Facility**"), all reimbursement obligations of the Debtors with respect to undrawn Letters of Credit issued pursuant to the Credit Agreement,  may be assumed by the Buyer as part of the consideration for the Sale and such Letters of Credit will be deemed issued under the Buyer Revolving Facility as of the Closing and the Debtors' obligations in respect of such Letters of Credit under the Credit Agreement shall be deemed satisfied, and (ii) if PNC is not a Debt Financing Source as of the Closing, such Letters of Credit shall be cash collateralized on behalf of the Debtors by Buyer in the amount required pursuant to the Credit Agreement, the Debtors' obligations in respect of such Letters of Credit under the Credit Agreement shall be deemed satisfied, such cash collateral shall be held by PNC until replacement Letters of Credit are issued under a Debt Financing (as defined in the APA) and, upon the issuance and delivery of such replacement Letters of Credit to the beneficiary thereof, any amount held by PNC as cash collateral with respect to such replaced Letters of Credit shall be returned to Buyer (net of any fees and expenses payable to PNC pursuant to the Credit Agreement and/or payoff letter with respect to such Letters of Credit) within five (5) business days of the return of the canceled Letter of Credit to PNC.

21.    At Closing, any Adequate Protection Liens (as defined in the Cash Collateral Order) are deemed released pursuant to the terms of this Order and any Adequate Protection Superpriority Claims under Section 507 of the Bankruptcy Code, or otherwise, are hereby waived.

22.    The Agent, the Lenders, the Buyer and the Debtors have agreed that, at closing of the Sale, the Carve-Out (as defined in the Cash Collateral Order) shall be replaced with a deposit account (the "**Carve-Out Account**") to be established for the benefit of the Carve-Out Professionals in an amount funded up to the Carve-Out Amount for payment of Allowed Professional Fees subject to the Carve-Out Cap (as defined in the Cash Collateral Order).  The Carve-Out Account shall be established promptly following entry of this Order and funded on a weekly basis with any amounts budgeted in the Applicable Budget for the week (i) for payments to Carve-Out Professionals subject to the Carve-Out Cap and (ii) on an aggregate basis, with ending cash flow for the week not otherwise used by the Debtors in their operations conducted in the ordinary course and consistent with past practices during the Chapter 11 Cases during that week as permitted, and contemplated by, the Applicable Budget, in accordance with protocols to be mutually agreed between the DIP Agent and the Debtors.  At closing of the Sale, to the extent that the amount in the Carve-Out Account is less than the Carve-Out Amount, the shortfall shall be funded, first, from all available cash and cash equivalents remaining in the Debtors' estates after giving effect to the Sale, and second, from proceeds of the Post-Sale DIP.  For purposes hereof, the "**Carve Out Amount**" shall mean an amount up to $11,300,000 for payment of Allowed Professional Fees subject to the Carve-Out Cap, which amount shall be increased to the extent that forecasted cash payments of Carve-Out Professional fees are not made as contemplated by the Applicable Budget; *provided*, that the cash balance of the Carve-Out Account shall be increased by the amount of any such Carve-Out Professional fee cash payment not made as contemplated by the Applicable Budget.  Prior to closing of the Sale, the Carve-Out Account and the proceeds deposited therein shall remain subject at all times to the Prepetition Liens (as defined in the Cash Collateral Order) in favor of the Agent, for the benefit of itself and the Prepetition

Secured Parties.  Upon closing of the Sale, (i) the Carve-Out Account and the proceeds therein shall be subject to liens granted by the Final DIP Order to secure the obligations of the Debtors thereunder, and (ii) the Agent shall be deemed to have released its Prepetition Liens, including on the Carve-Out Account and proceeds therein.  The DIP Agent agrees that the liens to be granted in its favor on the Carve-Out Account by the Final DIP Order shall be subject only to a carve-out from such collateral (in an amount equal to the Carve-Out Amount, such amount the "**Replacement Carve-Out**") for the benefit of the Carve-Out Professionals.  Subject to (i) closing of the Sale, (ii) creation of and access to the Post-Sale DIP, (iii) creation and funding in full of the Carve-Out Account pursuant to the terms hereof and the Post-Sale DIP, and (iv) receipt by the Carve-Out Professionals of the Replacement Carve-Out, any obligations or liabilities of the Agent, Sub-Agent, Buyer or Prepetition Secured Parties with respect to the Carve-Out shall be deemed satisfied, released and extinguished in all respects.  Nothing herein shall be construed to increase the Carve-Out that has been agreed to by the Prepetition Secured Parties and, furthermore, nothing herein shall, or shall be deemed to, modify, amend or otherwise change the definition or use of "Carve-Out" as defined in the Cash Collateral Order.

23.      After payment in full by the Debtors of all Allowed Professional Fees (as defined in the Cash Collateral Order), up to the Carve-Out Cap, in connection with the Professionals' final fee applications and pursuant to order of the Court, the proceeds remaining in the Carve-Out Account shall be used to pay the following, in order of priority: (i) all obligations incurred under the Post-Sale DIP, until satisfied in full in cash and the commitment of the lenders under the Post-Sale DIP to fund thereunder is terminated; (ii) all Administrative Claims as of the Closing of the Sale and not assumed by the Buyer in connection with the Sale; and (iii) any amount remaining thereafter shall be paid to the Buyer.

24.     After payment in full of all obligations incurred under the Post-Sale DIP and termination of all commitments of the lenders under the Post-Sale DIP to lend thereunder, the remaining Excluded Accounts Receivables and any remaining proceeds from the collection of the Excluded Accounts Receivables shall be used to pay the following, in order of priority: (i) all Administrative Claims as of the Closing of the Sale and not assumed by the Buyer in connection with the Sale; and (ii) any amounts remaining thereafter shall be paid to the Buyer.

25.     At Closing, any obligations or liabilities of the Existing Lender Group and each of their respective Affiliates and related parties with respect to the Carve-Out Amount or any other Administrative Claims shall be deemed satisfied, released and extinguished in all respects.  At Closing, the Existing Lender Group and each of their respective Affiliates and related parties are hereby fully and finally released by the Debtors and their estates from any and all claims, liabilities, obligations, rights, demands, injuries, debts, damages, liabilities, omissions, accounts, contracts, agreements, actions, and causes of action relating to (i) any obligations, liabilities or causes of action arising out of, relating to, or in connection with the Carve-Out Amount, any unpaid Administrative Claims and any other claims regarding any allocation with respect to unencumbered assets, and (ii) section 506(c) of the Bankruptcy Code (the matters referenced in clauses (i) and (ii), herein referred to as "**Released Matters**").  For the avoidance of doubt, the Prepetition Secured Parties shall not be liable for any Assumed Liabilities of the Buyer.

26.     ***General Releases***.  The releases set forth in Section 13.12 of the APA are hereby incorporated herein by reference and are approved in all respects.  Effective as of the Closing Date, such general releases shall be valid, binding and enforceable.  For the avoidance of doubt, the releases provided by the Buyer Releasors shall not release the causes of action included in the TLB Lender Contribution.

27.    ***Prohibition of Actions***.    Except for the Assumed Liabilities, or as otherwise expressly set forth in this Order or the APA), the Buyer and the Buyer Parties shall not have any liability or other obligation of the Debtors arising under or related to any of the Assets, including, but not limited to, any liability for any liabilities whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors, including, but not limited to, liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of the Debtors' business, which may become due or owing (a) prior to the Closing Date, or (b) from and after the Closing Date but which arise out of relate to any act, omission, circumstances, breach, default, or other event occurring prior to the Closing Date.

28.    Upon the Closing, except with respect to Assumed Liabilities as to the Buyer only, or as otherwise expressly provided for in the APA or this Order, all Entities, including, but not limited to, all debt holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade creditors, litigation claimants, Non-Debtor Counterparties, customers, landlords, licensors, employees, and other creditors and holders of Encumbrances or other interests of any kind or nature whatsoever against or in any of the Debtors or any portion of the Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, known or unknown, liquidated or unliquidated, senior or subordinate, asserted or unasserted, whether arising prior to or subsequent to the Petition Date, whether imposed by agreement, understanding, law, equity, or otherwise), arising under or out of, in connection with, or in any way relating to, the Debtors, the Assets, the operation of the Debtors' business prior to the Closing Date, or the transfer of the Assets to the Buyer (including without limitation any Successor or Other Liabilities or rights or claims based thereon) shall be, and hereby are forever barred,

estopped, and permanently enjoined from asserting against the Existing Lender Group (with respect to such Existing Lender Group, only with respect to the Released Matters set forth in paragraph 25 of this Order), the Buyer or any Buyer Party, or their respective assets or properties, including, without limitation, the Assets, Encumbrances of any kind or nature whatsoever such Person had, has, or may have against or in the Debtors, their estates, officers, directors, managers, shareholders, or the Assets, such Entities' Encumbrances or any other interests in and to the Assets, including, without limitation, the following actions: (a) commencing or continuing in any manner any action or other proceeding, the employment of process, or any act (whether in law or equity, in any judicial, administrative, arbitral, or other proceeding) against the Existing Lender Group (with respect to such Existing Lender Group, only with respect to the Released Matters set forth in paragraph 25 of this Order), the Buyer or any Buyer Party, or their respective assets or properties, including, without limitation, the Assets; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Existing Lender Group (with respect to such Existing Lender Group, only with respect to the Released Matters set forth in paragraph 25 of this Order), the Buyer or any Buyer Party, or their respective assets or properties, including, without limitation, the Assets; (c) creating, perfecting, or enforcing any Encumbrances against the Existing Lender Group (with respect to such Existing Lender Group, only with respect to the Released Matters set forth in paragraph 25 of this Order), the Buyer or any Buyer Party, or their respective assets or properties, including the Assets; (d) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Existing Lender Group (with respect to such Existing Lender Group, only with respect to the Released Matters set forth in paragraph 25 of this Order), the Buyer or any Buyer Party, or their respective assets or properties, including, without limitation the Assets; (e) commencing or continuing any action, in

any manner or place, that does not comply with or is inconsistent with the provisions of this Order, other orders of this Court, the APA, the other Transaction Documents or any other agreements or actions contemplated or taken in respect thereof; or (f) revoking, terminating, failing, or refusing to transfer or renew any license, permit, or authorization to operate any of the Assets or conduct any of the businesses operated with the Assets in connection with the Sale; *provided*, *however*, that Buyer shall remain responsible for Assumed Liabilities, Permitted Encumbrances or other liabilities as provided in the APA and expressly set forth in this Order and nothing shall modify any party's rights of setoff or recoupment with respect to the Assigned Contracts.

29.    Subject to paragraph 50 hereof, and to the greatest extent available under applicable law, the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the Assets, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are, deemed to be transferred to the Buyer as of the Closing Date.

30.    To the extent provided by section 525 of the Bankruptcy Code, no Governmental Unit may revoke or suspend any grant, permit, or license relating to the operation of the Assets sold, transferred, assigned, or conveyed to the Buyer on account of the filing or pendency of these Chapter 11 Cases or the consummation of the Sale.  Each and every federal, state, and local governmental agency or department is hereby authorized and directed to accept any and all documents and instruments necessary and appropriate to consummate the Sale set forth in the APA.

31.    Subject to the terms, conditions, and provisions of this Order, all Entities are hereby forever prohibited and barred from taking any action that would adversely affect or interfere (a) with the ability of the Debtors to sell and transfer the Assets to Buyer in accordance with the terms

of the APA and this Order, and (b) with the ability of the Buyer to acquire, take possession of, use and operate the Assets in accordance with the terms of the APA and this Order.  Notwithstanding the foregoing, nothing in this Order or the APA shall prohibit any party from seeking to enforce or collect any of the Assumed Liabilities against the Buyer and nothing shall modify any party's rights of setoff or recoupment with respect to the Assigned Contracts.

32.      The Buyer is giving substantial consideration under the APA, the transactions contemplated thereby, and as provided herein, for the benefit of the Debtors, their estates, and creditors.  The consideration to be given by the Buyer, including the Credit Bid in the Credit Bid Amount, the TLB Lender Contribution, the assumption of the Assumed Liabilities, the assumption of the Debtors' obligations with respect to, or cash collateralization of, certain Letters of Credit (as described in paragraph 20), and the deemed satisfaction in full and waiver of the Adequate Protection Liens and Adequate Protection Superpriority Claims, is fair and reasonable and shall be deemed for all purposes to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law and shall constitute valid and valuable consideration for the releases of any potential Encumbrances pursuant to this Order which releases shall be deemed to have been given in favor of Buyer by all holders of Encumbrances of any kind whatsoever against any of the Debtors or any of the Assets, other than with respect to the Permitted Encumbrances or as otherwise expressly set forth in this Order.  The consideration provided by Buyer for the Assets is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

33.      ***Assumption and Assignment of Contracts***.  Pursuant to sections 105(a) and 365 of the Bankruptcy Code, and subject to and conditioned upon the terms of the APA (including, without limitation, Section 2.05 of the APA), the Closing of the Sale and payment of the applicable

Cure Costs by the Buyer (pursuant to the terms of the APA or as otherwise may be agreed to (as to amount and timing) by and among the Debtors, the Buyer and the Non-Debtor Counterparty to the applicable Assigned Contract), the Debtors' assumption and assignment to the Buyer, and the Buyer's assumption on the terms set forth in the APA, of the Assigned Contracts is hereby approved, and the requirements of section 365(b)(1) of the Bankruptcy Code with respect thereto are hereby deemed satisfied.  Pursuant to Section 2.05 of the APA, at any time prior to the Closing Date, the Buyer may modify the list of Assigned Contracts.  Upon the Closing and payment of the applicable Cure Costs by the Buyer, in accordance with sections 105(a), 363, and 365 of the Bankruptcy Code and this Order, the Buyer shall be fully and irrevocably vested with all right, title, and interest of the Debtors in and under the Assigned Contracts free and clear of any Encumbrances (other than Assumed Liabilities and Permitted Encumbrances), and each Assigned Contract shall be fully enforceable by the Buyer in accordance with its respective terms and conditions, except as limited by this Order.  To the extent provided in the APA, the Debtors shall cooperate with, and take all actions reasonably requested by, the Buyer to effectuate the foregoing.  For the avoidance of doubt, nothing in this paragraph affects the Buyer's right to re-designate an Assigned Contract as an Excluded Contract following any resolution of an Adjourned Cure Cost/Assignment Objection with respect to the Assigned Contract, whether such resolution occurs before or after the Closing Date.

34.    The Debtors are hereby authorized, in accordance with sections 105(a), 363, and 365 of the Bankruptcy Code, to (a) assume and assign to the Buyer, effective upon the Closing Date, the Assigned Contracts free and clear of all Encumbrances and other interests of any kind or nature whatsoever (other than the Assumed Liabilities and Permitted Encumbrances), and (b)

execute and deliver to the Buyer such documents or other instruments as may be necessary to assign and transfer the Assigned Contracts to the Buyer.

35.     With respect to the Assigned Contracts, in connection with the Sale: (a) the Debtors may assume each of the Assigned Contracts in accordance with section 365 of the Bankruptcy Code; (b) the Debtors may assign each Assigned Contract in accordance with sections 363 and 365 of the Bankruptcy Code, and any provisions in any Assigned Contract that prohibit or condition the assignment of such Assigned Contract or allow the party to such Assigned Contract to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such Assigned Contract, constitute unenforceable anti-assignment provisions which are void and of no force and effect; (c) all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Buyer of each Assigned Contract have been satisfied; and (d) effective upon the Closing Date, the Assigned Contracts shall be transferred and assigned to, and from and following the Closing shall remain in full force and effect for the benefit of, the Buyer, notwithstanding any provision in any Assigned Contract (including those of the type described in sections 365(b)(2) and (e) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code, the Buyer shall be deemed to be substituted for the applicable Debtor as a party to the applicable Assigned Contract and the Debtors shall be relieved from any further liability with respect to the Assigned Contracts after such assumption by the Debtors and assignment to the Buyer, except as otherwise provided in the APA.  To the extent any provision in any Assigned Contract assumed and assigned pursuant to this Order (i) prohibits, restricts, or conditions, or purports to prohibit, restrict, or condition, such assumption and assignment (including, without limitation, any "change of control"

provision), or (ii) is modified, breached, or terminated, or deemed modified, breached, or terminated by any of the following: (A) the commencement of the Chapter 11 Cases, (B) the insolvency or financial condition of any of the Debtors at any time before the closing of the Chapter 11 Cases, (C) the Debtors' assumption and assignment of such Assigned Contract, (D) a change of control or similar occurrence, or (E) the consummation of the Sale, then such provision shall be deemed modified in connection with the Sale so as not to entitle the Non-Debtor Counterparty to prohibit, restrict, or condition such assumption and assignment, to modify, terminate, or declare a breach or default under such Assigned Contract, or to exercise any other default-related rights or remedies with respect thereto, including without limitation, any such provision that purports to allow the Non-Debtor Counterparty to terminate or recapture such Assigned Contract, impose any penalty, additional payments, damages, or other financial accommodations in favor of the Non-Debtor Counterparty thereunder, condition any renewal or extension thereof, impose any rent acceleration or assignment fee, or increase or otherwise impose any other fees or other charges in connection therewith.  All such provisions constitute unenforceable anti-assignment provisions that are void and of no force and effect in connection with the Sale pursuant to sections 365(b), 365(e), and 365(f) of the Bankruptcy Code.

36.    As evidenced by, among other things, the Buyer Declaration, the Buyer has provided adequate assurance of future performance under the Assigned Contracts within the meaning of section 365 of the Bankruptcy Code.

37.    All defaults or other obligations of the Debtors under the Assigned Contracts arising or accruing prior to the Closing Date or required to be paid pursuant to section 365 of the Bankruptcy Code in connection with the assumption and assignment of the Assigned Contracts (in each case, without giving effect to any acceleration clauses or any default provisions of the kind

specified in section 365(b)(2) of the Bankruptcy Code), whether monetary or non-monetary, shall be promptly cured pursuant to the terms of the APA and this Order on or after the Closing Date or as otherwise agreed to by the Buyer and the applicable Non-Debtor Counterparty by the Buyer's payment of the applicable Cure Cost.  The Buyer shall have no liability arising or accruing under the Assigned Contracts on or prior to the Closing, except as otherwise expressly provided in the APA or this Order.  Unless as otherwise set forth in this Order or the APA, the Non-Debtor Counterparties to the Assigned Contracts are barred from asserting against the Debtors, their estates, the Buyer, and their respective successors and assigns, any default or unpaid obligation allegedly arising or occurring before the Closing, any pecuniary loss resulting from such default, or any other obligation under the Assigned Contracts arising or incurred prior to the Closing, other than the Cure Cost set forth on Schedule 2.05(a) of the APA or such other Cure Cost as agreed to by the Debtors (with the consent of the Buyer) or as determined by the Court.

38.     All requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Buyer of the Assigned Contracts have been satisfied.  Upon the Closing Date, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyer shall be fully and irrevocably vested with all right, title, and interest of the Debtors in and under the Assigned Contracts, and each Assigned Contract shall be fully enforceable by the Buyer in accordance with its respective terms and conditions, except as limited by this Order.  To the extent provided in the APA, the Debtors shall cooperate with, and take all actions reasonably requested by, the Buyer to effectuate the foregoing.

39.     Any party that may have had the right to consent to the assumption or assignment of an Assigned Contract, including (if applicable) the Non-Debtor Counterparty to each Assigned Contract, is deemed to have consented to such assumption and assignment for purposes of sections

365(c)(1)(B) and 365(e)(2)(A)(ii) of the Bankruptcy Code and any other applicable law if such party failed to object timely to the assumption or assignment of such Assigned Contract in accordance with the Bidding Procedures Order, and the Buyer shall enjoy all of the Debtors' rights and benefits under each such Assigned Contract as of the applicable date of assumption without the necessity of obtaining such Non-Debtor Counterparty's written consent to the assumption or assignment thereof.    The Buyer shall be deemed to have demonstrated adequate assurance of future performance with respect to each Assigned Contract pursuant to sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.

40.    To the extent a Non-Debtor Counterparty to an Assigned Contract failed to timely object to a Cure Cost in accordance with the Bidding Procedures Order, such Cure Cost shall be deemed to be finally determined and any such Non-Debtor Counterparty shall be prohibited from challenging, objecting to, or denying the validity and finality of the Cure Cost at any time, and such Cure Cost, when paid, shall be deemed to resolve any defaults or other breaches with respect to any Assigned Contract to which it relates.

41.    Upon the Debtors' assumption and assignment of the Assigned Contracts to the Buyer under the provisions of this Order and any additional orders of this Court and the Buyer's payment of any Cure Cost in accordance with the APA or any applicable order, no default or other obligations arising prior to the Closing Date shall exist under any Assigned Contract, and each Non-Debtor Counterparty is forever barred and estopped from (a) declaring a default by the Debtors or the Buyer under such Assigned Contract, (b) raising or asserting against the Debtors or the Buyer (or any Buyer Party), or the property of either of them, any assignment fee, default, breach, or claim of pecuniary loss, or condition to assignment, arising under or related to the Assigned Contracts, or (c) taking any other action against the Buyer or any Buyer Party as a result

of any Debtor's financial condition, bankruptcy, or failure to perform any of its obligations under the relevant Assigned Contract, in each case in connection with the Sale. Each Non-Debtor Counterparty is also forever barred and estopped from raising or asserting against the Buyer or any Buyer Party any assignment fee, default, breach, Claim, pecuniary loss, or condition to assignment arising under or related to the Assigned Contracts existing as of the Closing Date or arising by reason of the closing of the Sale, except for any amounts that are Assumed Liabilities.

42.    Except as provided in the APA or this Order, after the Closing, the Debtors and their estates shall have no further liabilities or obligations with respect to any Assumed Liabilities and all holders of such Encumbrances of any kind whatsoever are forever barred and estopped from asserting such claims against the Debtors, their successors or assigns, their property, or their assets or estates. The failure of the Debtors or Buyer to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms or conditions, or of the Debtors' and Buyer's rights to enforce every term and condition of the Assigned Contracts.

43.    With respect to objections to any Cure Costs that remain unresolved as of the Sale Hearing, such objections shall be resolved in accordance with the procedures approved in the Bidding Procedures Order. Consideration of unresolved Cure Cost/Assignment Objections and Post-Auction Objections relating to Contract assignment, unless otherwise ordered by the Court or with the consent of the party to any Contract that is subject to a Cure Cost/Assignment Objection or Post-Auction Objection relating to Contract assignment, shall be adjourned to a date to be determined; *provided*, *however*, that (i) any Contract that is the subject of a Cure Cost/Assignment Objection with respect solely to the amount of the Cure Cost may be assumed and assigned prior to resolution of such objection, and (ii) such undisputed Cure Cost shall be promptly cured on or

after the Closing Date or as otherwise agreed to by the Buyer and the applicable Non-Debtor Counterparty by the Buyer's payment of the applicable Cure Cost.

44.     The Buyer shall have standing to object to the allowance of claims (as such term is defined in section 101(5) of the Bankruptcy Code) asserted against the Debtors or their estates including, without limitation, any unresolved or disputed Assumed Liabilities, Cure Costs under the Bidding Procedures Order, or otherwise, that constitute obligations assumed by the Buyer pursuant to the terms of the APA. Nothing in this Order shall divest the Debtors of their standing or duty as debtors-in-possession under the Bankruptcy Code from reconciling claims asserted against the Debtors or their estates and objecting to any such claims that should be reduced, reclassified or otherwise disallowed.

45.     Nothing in this Order, the Motion, or in any notice or any other document is or shall be deemed an admission by the Debtors that any contract or Assigned Contract is an executory contract or unexpired lease or must be assumed and assigned pursuant to the APA or in order to consummate the Sale.

46.     *No Successor Liability*. The Buyer and its successors and assigns shall not be deemed, as a result of any action taken in connection with the transfer of the Assets, (i) to be a successor to the Debtors or their estates, (ii) to have, *de facto* or otherwise, merged or consolidated with or into the Debtors or their estates, (iii) to be a continuation or substantial continuation of the Debtors or any enterprise of the Debtors, (iv) to have a common identity with the Debtors, (v) to have acquired the trade or business of any of the Debtors for any purpose under applicable U.S. federal law (including the Bankruptcy Code and the Internal Revenue Code of 1986, as amended), or (vi) to be held out to the public as a continuation of the Debtors or the Debtors' trade or business, and the Buyer shall have no successor, transferee, or vicarious liability of any kind or character,

including, but not limited to, under any theory of foreign, federal, state, or local antitrust, environmental, successor, tax, ERISA, assignee, or transferee liability, labor, product liability, employment, *de facto* merger, substantial continuity, or other law, rule, or regulation, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date. The Buyer shall not be deemed to have expressly or implicitly assumed any of the Debtors' liabilities other than the Assumed Liabilities. Except as otherwise provided herein or in the APA, the transfer of the Assets to the Buyer pursuant to the APA shall not result in the Buyer or the Assets having any liability or responsibility for, or being required to satisfy in any manner, whether in law or in equity, whether by payment, setoff, or otherwise, directly or indirectly, any claim against the Debtors or against any insider of the Debtors or Encumbrances (other than Assumed Liabilities or Permitted Encumbrances).

47.    ***Good Faith***.   The transactions contemplated by the APA, all other Transaction Documents, and this Order are undertaken by the Buyer without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not alter, affect, limit, or otherwise impair the validity of the Sale (including the assumption and assignment of the Assigned Contracts) to Buyer. The Buyer is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to, and hereby granted, the full rights, benefits, privileges, and protections of section 363(m) of the Bankruptcy Code. As a good faith buyer of the Assets, the Buyer has not entered into an agreement with any other potential bidders

and has not colluded with any potential or actual bidders, and the Sale may not be avoided pursuant to section 363(n) of the Bankruptcy Code.

48.    ***Bulk Sales***.  No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Sale and the transactions contemplated by the APA.

49.    ***Resolution of Objection from the Texas Taxing Authorities***.  Certain Texas taxing authorities represented by McCreary, Veselka, Bragg & Allen, P.C. (the "**Group One Texas Taxing Authorities**") assert that certain ad valorem taxes on real and business personal property are owed by certain of the Selling Entities for tax years 2019 and 2020 (the "**Group One Alleged Texas Property Tax Claims**").  [*See* D.I. 584].  Certain Texas taxing authorities represented by Linebarger Goggan Blair & Sampson, LLP (the "**Group Two Texas Taxing Authorities**") assert that certain ad valorem taxes on real and business personal property are owed by certain of the Selling Entities for tax years 2006, 2007, 2008, 2016, and 2020 (the "**Group Two Alleged Texas Property Tax Claims**").  Certain Texas taxing authorities represented by Perdue, Brandon, Fielder, Collins & Mott, L.L.P. (together with the Group One Texas Taxing Authorities and the Group Two Texas Taxing Authorities, the "**Texas Taxing Authorities**," and each individually, a "**Texas Taxing Authority**") assert that certain ad valorem taxes on real and business personal property are owed by certain of the Selling Entities for tax year 2020 (together with the Group One Alleged Texas Property Tax Claims and Group Two Alleged Texas Property Tax Claims, the "**Alleged Texas Property Tax Claims**," and each individually, a "**Alleged Property Tax Claim**").  [*See* D.I. 679].  The Texas Taxing Authorities assert that their respective Alleged Texas Property Tax Claims are secured claims against one or more of the Selling Entities. Notwithstanding any other provision of this Order, if an Alleged Texas Property Tax Claim is (i) deemed allowed (each an "**Allowed Texas Property Tax Claim**") either as (a) agreed to by the

Debtors (in consultation with the Consultation Parties (as defined in the Bidding Procedures Order)), the Buyer, and the respective Texas Taxing Authority, or (b) determined by this Court, and (ii) not paid in full at the Closing, such Allowed Texas Property Tax Claim shall be assumed by the Buyer and any liens in favor of the applicable Texas Taxing Authority with respect to such claim shall be retained against the subject properties until said Allowed Texas Property Tax Claim is paid in full by the Buyer; *provided*, *that*, any Allowed Texas Property Tax Claim which arose for any tax year prior to tax year 2020 shall be paid in full in Cash on the later of (i) the Closing Date, or (ii) ten days after such claim is deemed an Allowed Texas Property Tax Claim.  All parties' rights to object to the priority, validity, amount and extent of the Alleged Texas Property Tax Claims and the asserted liens in connection therewith are fully preserved.

50.    *Governmental Interests*.  Notwithstanding any provision to the contrary in this Order, the APA, the other Transaction Documents, and any other documents executed in connection with the Sale, nothing shall: (a) authorize the assumption, sale, assignment or other transfer to the Buyer of any government (i) grants, (ii) grant funds, (iii) contracts, (iv) contract funds, (v) property, (vi) leases, or (vii) agreements (collectively, "**Governmental Interests**") with any Governmental Authority, as that term is defined in the APA, without compliance by the Debtors and the Buyer with all terms of Governmental Interests and with all applicable non-bankruptcy law; (b) be interpreted to set Cure Costs or to require any Governmental Authority to novate, approve or otherwise consent to the assumption, sale, assignment or other transfer of any Governmental Interests; (c) affect the rights of any Governmental Authority to offset or recoup any amounts due under, or relating to, the Governmental Interests, unless otherwise limited by section 553 of the Bankruptcy Code; or (d) confer exclusive jurisdiction to this Court with respect to the Governmental Interests, except to the extent set forth in 28 U.S.C. § 1334 (as limited by any

26699693.1

other provisions of the United States Code or other applicable law).  In connection with the foregoing, the Buyer shall take all steps necessary to effectuate any required novation in connection with the assumption, sale, assignment or sale of the Governmental Interests from the Debtors to the Buyer, including complying with applicable requirements of Federal Acquisition Regulation Part 42.  Buyer shall also serve as Debtors' agent with respect to all Governmental Interests such that, to the maximum extent permitted by applicable law, Buyer shall assume, agree to be bound by, and undertake to perform the terms and conditions contained in such Governmental Interests as if Buyer were the original party thereto.

51.     ***Resolution of Comments and Concerns from the Environmental Protection Agency***.  Nothing in this Order or the APA releases, nullifies, precludes or enjoins the enforcement of any police or regulatory liability to a governmental unit that any entity would be subject to as the post-sale owner or operator of property after the date of entry of this Order.  Nothing in this Order or the APA authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization, or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law.  Nothing in this Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or to adjudicate any defense asserted under this Order.

52.     ***Resolution of Comments and Concerns from Chubb Companies***.  Notwithstanding anything to the contrary in the Sale Motion, the Bidding Procedures, the Bidding Procedures Order, any cure notice or assumption notice (including, but not limited to, any Assumption and Assignment Notice or Supplemental and Assignment Assumption Notice), or this Order: (i) nothing therein shall permit or otherwise effect a sale, an assignment, or any other

transfer of any insurance policies that have been issued by ACE American Insurance Company, Westchester Fire Insurance Company, Illinois Union Insurance Company, Indemnity Insurance Company of North America, Agri General Insurance Company, Federal Insurance Company and Executive Risk Indemnity, Inc., or their respective affiliates or successors (collectively, the "**Chubb Companies**") or provide coverage at any time to any of the Debtors (or their predecessors) and all agreements, documents, or instruments relating thereto (collectively, the "**Chubb Insurance Contracts**"), and/or any rights, benefits, claims, rights to payments and/or recoveries under the Chubb Insurance Contracts, and/or any collateral securing the Debtors' obligations under the Chubb Insurance Contracts; (ii) the Chubb Insurance Contracts and/or any rights, benefits, claims, rights to payments and/or recoveries under such Chubb Insurance Contracts (a) are not and shall not be deemed to be Assets or a portion of any of the Assets sold, assigned or otherwise transferred as a part of the Sale, and (b) shall be deemed to be excluded from the definition of Assigned Contracts in connection with the Sale; (iii) nothing shall alter, modify or otherwise amend the terms or conditions of the Chubb Insurance Contracts; and (iv) for the avoidance of doubt, the Successful Bidder is not, and shall not be deemed to be, an insured under any of the Chubb Insurance Contracts.

53.    ***Resolution of Objections from Detour Studios, Inc.***  Notwithstanding anything else in this Order, any sale of the Debtors' interest in real property (described in D.I. 730-1, at 13) shall be subject to that certain 99-year Ground Lease Agreement dated October 15, 2008 and any and all amendments and addenda thereto, originally between Velda Farms, LLC as landlord and Triple E Holdings, LLC as tenant, said Ground Lease having been assigned by Triple E Holdings, LLC to Detour Studios, Inc. by Assignment dated May 20, 2013 recorded in O.R. Bool 8967, Page 1675, Public Records of Polk County, Florida.

26699693.1

54.     ***Resolution of Objection from Packaging Corporation of America***.  Nothing in this Order shall impair or affect the rights or remedies asserted by Packaging Corporation of America in its Limited Objection and Reservation of Rights [D.I. 787].

55.     ***Resolution of Objections from PACCAR Financial Corp.***  With respect to (a) any pending objections (the "**PACCAR Objections**") filed by PACCAR Financial Corp. ("**PACCAR**") regarding the Motion (which objections are adjourned to a later hearing in their entirety and without prejudice), and (b) PACCAR's agreements with the Debtors (collectively, the "**PACCAR Agreements**"), and notwithstanding any provision to the contrary contained in this Order, the APA, or any other agreements or documents executed in connection with the Sale, nothing set forth in this Order, the APA, or any of the other Sale-related agreements and no evidence submitted or argument made at the Sale Hearing commenced on June 23, 2020, shall: (i) authorize the assumption, sale, assignment or other transfer of any PACCAR Agreement; (ii) determine any Cure Costs owed or liabilities assumed in respect of any proposed assumption and assignment of any PACCAR Agreement; (iii) determine whether any of the requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption and assignment of any PACCAR Agreements have been met; (iv) with respect to the PACCAR Agreements, determine the extent or legal sufficiency of any proposed adequate assurance of future performance or related information; or (v) otherwise apply, control, determine, bind, prejudice, estop, or carry any preclusive effect in any future hearing held or with respect to any findings of fact or conclusions of law made by the Court in connection with the PACCAR Agreements.  All rights, claims, objections, remedies, and defenses of all parties in connection with any of the foregoing are expressly and fully reserved for determination at a later hearing.

56. ***Resolution of Objection from City of Winter Haven***.  The City of Winter Haven ("**Winter Haven**") asserts that payment on account of certain prepetition services is owed by certain of the Selling Entities (the "**Alleged Winter Haven Claims**").  [*See, e.g.*, D.I. 859].  Winter Haven filed a *Notice of Perfection, Maintenance and Continuation of Statutory Lien* on account of the Alleged Winter Haven Claims.  [D.I. 544].  On account of such lien, Winter Haven asserts that the Alleged Winter Haven Claims are secured claims against one or more of the Selling Entities.  Notwithstanding any other provision of this Order, if the Alleged Winter Haven Claims are (i) deemed allowed (the "**Allowed Winter Haven Claims**") either as (a) agreed to by the Debtors (in consultation with the Consultation Parties (as defined in the Bidding Procedures Order)), the Buyer, and Winter Haven, or (b) in accordance with provisions of the Bankruptcy Code, and (ii) not paid in full at the Closing, such Allowed Winter Haven Claims shall be assumed by the Buyer and any liens in favor of Winter Haven with respect to such claim shall be retained against the subject properties until said Allowed Winter Haven Claims are paid in full by the Buyer; *provided*, *that*, the Allowed Winter Haven Claims shall be paid in full in Cash on the later of (i) the Closing Date, or (ii) ten days after such claims are deemed Allowed Winter Haven Claims.  All parties' rights to object to the priority, validity, amount and extent of the Alleged Winter Haven Claims and the asserted liens in connection therewith are fully preserved.

57. ***Failure to Specify Provisions***.  The failure specifically to include any particular provisions of the APA in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the APA be authorized and approved in its entirety; *provided*, *however*, that this Order shall govern if there is any inconsistency between the APA (including any other Transaction Documents executed in connection therewith) and this Order.  Likewise, all of the provisions of this Order are non-severable and mutually dependent.  To the

extent that this Order is inconsistent with any prior order or pleading with respect to the Motion in these Chapter 11 Cases, the terms of this Order shall control.

58. ***Resolution of Objections from Unions***.    In full and final resolution of the objections filed by (i) the Teamsters Local Unions Nos. 293, 783, 891, 964 and 991 [D.I. 709] and (ii) the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO-CLC ("**USW**") [D.I. 777 and 867], upon Closing of the Sale, (x) the Debtors shall assume and assign to the Buyer, and the Buyer shall take assignment from the Debtors of, all of the Debtors' existing Collective Bargaining Agreements; and; (y) in accepting the assumption and assignment of the USW Collective Bargaining Agreement, the Buyer agrees that it shall continue to honor and pay in the ordinary course all obligations arising under such Collective Bargaining Agreement, whether such obligations accrued or arose prior to Closing of the Sale, which shall include processing any pending grievances and arbitration cases and paying any arbitral awards entered in any grievance filed prior to Closing of the Sale.

59. ***Resolution of Objection from London Utility Commission***.    The London Utility Commission ("**LUC**") asserts that payment on account of certain prepetition services is owed by certain of the Selling Entities (the "**Alleged LUC Claims**").    [*See, e.g.*, D.I. 859].    LUC filed a *Notice of Perfection, Maintenance and Continuation of Statutory Lien* on account of the Alleged LUC Claims.    [D.I. 844].    On account of such lien, LUC asserts that the Alleged LUC Claims are secured claims against one or more of the Selling Entities.    Notwithstanding any other provision of this Order, if the Alleged LUC Claims are (i) deemed allowed (the "**Allowed LUC Claims**") either as (a) agreed to by the Debtors (in consultation with the Consultation Parties (as defined in the Bidding Procedures Order)), the Buyer, and LUC, or (b) in accordance with provisions of the

Bankruptcy Code, and (ii) not paid in full at the Closing, such Allowed LUC Claims and any liens in favor of LUC with respect to such claims shall attach to an amount to be escrowed with the Debtors in an amount equal to $254,089.35 at the closing of the Sale (the "**LUC Escrow**") to the same extent and priority that LUC's alleged lien had with respect to the Assets; *provided*, *that*, (i) if the Allowed LUC Claims shall be determined by final order of the Court to be subordinate to the Encumbrances held by PNC, as Agent, then such LUC Escrow shall be remitted to the Debtors within five (5) business days of such determination, or, (II) if the Alleged LUC Claims shall be deemed allowed and senior to the Encumbrances held by PNC, as Agent, such LUC Escrow shall be paid to LUC within five (5) business days of such determination.  All parties' rights to object to the priority, validity, amount and extent of the Alleged LUC Claims and the asserted liens in connection therewith are fully preserved.

60.    ***Non-Material Modifications***.  The APA and all documents ancillary thereto may be modified, amended, or supplemented by the parties thereto in a writing signed by the parties, in accordance with the terms thereof, without further order of this Court; *provided*, that any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates; *provided*, *however*, that any modification, amendment, or waiver of any of the sections of the APA referenced in Section 13.11 of the APA shall require the consent of the Existing Lender Group, the Buyer and the Buyer Parties, with such consent not to be unreasonably withheld.

61.    ***Subsequent Plan Provisions***.  Nothing contained in any chapter 11 plan confirmed in the Debtors' Chapter 11 Cases, any order confirming any such plan, or in any other order in these Chapter 11 Cases (including any order entered after any conversion of any of these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code) or any related proceeding subsequent

to entry of this Order shall alter, conflict with, or derogate from, the provisions of the APA or this Order.

62.     ***No Stay of Order***.  Notwithstanding the provisions of Bankruptcy Rule 6004(h) and Bankruptcy Rule 6006(d), and pursuant to Bankruptcy Rules 7062 and 9014, this Order shall not be stayed for fourteen days after the entry hereof, but shall be effective and enforceable immediately upon issuance hereof.  Time is of the essence in closing the transactions referenced herein, and the Debtors and Buyer intend to close the Sale as soon as practicable and there is no credible basis for concluding that a delay in the sale of the Assets would result in a higher or better offer for the Assets than the offer reflected in the APA.  In order to maximize the value of the Assets, it is essential that the Sale of the Assets occur within the time constraints set forth in the APA and consistent with the Bidding Procedures.  Accordingly, there is cause to lift the stays contemplated by Bankruptcy Rules 6004(h) and 6006(d) and the Debtors and the Buyer are authorized and empowered to close the Sale immediately upon entry of this Order

63.     ***Calculation of Time***.  All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006.

64.     ***Further Assurances***.  From time to time, as and when requested by either Sellers or Buyer, Sellers or Buyer shall execute and deliver, or cause to be executed and delivered, to the extent reasonably practicable and at the expense of the requesting party, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to consummate the transactions contemplated by the APA, including such actions as may be necessary to vest, perfect, or confirm, of record or otherwise, in Buyer its right, title and interest in and to the Assets.

65.    ***Closing Date***.  Notwithstanding the deadlines set forth in the Bidding Procedures Order, the Closing Date may occur on such date permitted in accordance with Section 4.01 of the APA.

66.    ***Retention of Jurisdiction***.  Subject to paragraph 50 hereof, the Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the APA, all amendments thereto, and any waivers and consents thereunder, and each Transaction Document executed in connection therewith and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Assets to the Buyer, (b) interpret, implement, and enforce the provisions of this Order and the APA, including, but not limited to, the injunctions and limitations of liability set forth in this Order, (c) protect the Buyer against any Encumbrances in or against the Debtors or the Assets of any kind or nature whatsoever attaching to the net cash proceeds of the Sale as provided herein including, without limitation, to enjoin the commencement or continuation of any action seeking to impose successor liability or bulk sale liability; (d) enter any orders under sections 105, 363, and 365 of the Bankruptcy Code with respect to the Assets and the Assigned Contracts; (e) decide any disputes concerning this Order, the APA, or the rights and duties of the parties hereunder or thereunder or any issues relating to the APA and this Order including, but not limited to, the interpretation of the terms, conditions and provisions hereof and thereof, the status, nature and extent of the Assets and any Assigned Contracts and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the assets free and clear of all Encumbrances; (f) adjudicate any and all remaining issues concerning the Debtors' right and authority to assume and assign the Assigned Contracts and the rights and obligations of the Debtors and the Buyer with respect to such assignment and the

existence of any default under any such Assigned Contract; (g) adjudicate any and all disputes concerning alleged pre-closing Encumbrances in and to the Assets including, without limitation, the extent, validity, enforceability, priority, and nature of any and all such alleged Encumbrances; (h) adjudicate any and all disputes relating to the Debtors' right, title, or interest in the Assets and the proceeds thereof; and (i) re-open the Chapter 11 Cases to determine any of the foregoing.

**Dated: June 26th, 2020**
**Wilmington, Delaware**

**CHRISTOPHER S. SONTCHI**
**UNITED STATES BANKRUPTCY JUDGE**

26699693.1

58