**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| *In re*:<br><br>BDC Inc., *et al*.,<br><br>               Debtors.[1] | Chapter 11<br><br>Case No.: 20-10010 (CSS)<br><br>(Jointly Administered)<br><br>Hearing Date: March 8, 2021 at 10:00 a.m. (ET)<br>Objection Deadline: February 11, 2021 at 4:00 p.m. (ET)<br>Ref. Docket No. 918 |

**NEW DAIRY OPCO, LLC'S MOTION TO (I) ENFORCE THE SALE
ORDER AND THE ASSET PURCHASE AGREEMENT AND (II)
COMPEL DELIVERY OF ASSETS TO NEW DAIRY**

New Dairy OpCo, LLC ("New Dairy"), the successful bidder for substantially all of the assets of Borden Dairy Company n/k/a BDC Inc. ("Borden") and its affiliated debtors (together with Borden, the "Debtors") hereby files *New Dairy OpCo, LLC's Motion to (I) Enforce the Sale Order and the Asset Purchase Agreement and (II) Compel Delivery of Assets to New Dairy* (the "Motion") and respectfully submits as follows:

### I.    Preliminary Statement[2]

1. This is a dispute over the rights to the refund of unearned insurance premiums (the "Refund") associated with a certain insurance policy (the "Property Policy") that was related to, associated with and/or arising out of the Assets because the Property Policy insured the Assets. Pursuant to the APA and the Sale Order, New Dairy acquired substantially all of the Debtors' assets, which included, among other things, the right to the Refund. ACON

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BDC Inc. (1509); BDC Holdings, LLC (8504); ND, LLC (9109); BDC of Alabama, LLC (5598); BDC of Cincinnati, LLC (1334); BTC of Cincinnati, LLC (3462); BDC of Florida, LLC (5168); BDC of Kentucky, LLC (7392); BDC of Louisiana, LLC (4109); BDC of Madisonville, LLC (7310); BDC of Ohio, LLC (2720); BTC of Ohio, LLC (7837); BDC of South Carolina, LLC (0963); BDC of Texas, LLC (5060); CAS, LLC (9109); GSSD, LLC (9109); NDHT, LLC (7480); and BDC of Madisonville Sub, LLC (0314). The location of the Debtors' service address is: 2807 Allen Street, Box 833, Dallas, TX 75204-4062.

Investments, LLC "ACON") and the Debtors, however, have disputed that the right to the Refund is an asset purchased by New Dairy in disregard of the express terms of the APA and the Sale Order.

2. The APA defines Assets extremely broadly to include all rights, title, and interests of the Debtors except Excluded Assets. APA, § 2.01(b). The APA expressly includes the right to the Refund as Assets because it includes in its non-exclusive list of examples rights to refunds, advance payments, prepayments, and similar rights related to, associated with, or arising out of the Assets. *Id.* at § 2.01(b)(xi) and (xiv). The right to the Refund arises out of and is related to the Assets because it is incident to, has a connection with, pertains to, and is concerned with the Assets.

3. Another reason why the Refund is an Asset is that the Refund is a "right to refund[] . . . related to, associated with, [and] arising out of [a] product[] or service[] provided in connection" with the Assets. *Id.* at § 2.01(b)(xi). Further, New Dairy is entitled to the Refund because it flows from the Debtors' advance payments or prepayments of the insurance premium for the Property Policy, which is related to the Assets. *Id.* at § 2.01(b)(xiv).

4. On the other hand, the right to the Refund is not an Excluded Asset. *Id.* at § 2.02. The exclusive list of Excluded Assets only uses the term "refund" once, which is with respect to taxes, not insurance premiums. *See id.* at § 2.02.

5. Moreover, the right to the Refund is not an Excluded Asset because a refund of unearned insurance premiums is not a credit,[3] rebate,[4] or reimbursement[5] attributable to the

---

[2] Capitalized terms used but not defined herein shall have the meanings assigned to such terms below.

[3] Black's Law Dictionary defines "credit" as relevant here as "[a] deduction from an amount due." There is no amount due nor will there be an amount due because the Property Policy was cancelled.

[4] A rebate is a discount given to a customer at the time of purchase or money sent to the customer after they have paid the full price. Collins Dictionary. While there is a rebate with respect to insurance premiums, "rebate" only

Excluded Contracts. *See id.* at § 2.02(f). Similarly, the right to the Refund is not an Excluded Asset because a refund of unearned insurance premiums is not *proceeds* of nontransferable insurance policies or insurance policies related solely to the Excluded Assets. *Id.* at § 2.02(h). Insurance proceeds are benefits paid by an insurance policy from a *claim* for a *covered loss* under the policy, not a return of unearned insurance premiums like the Refund. Accordingly, the failure to expressly include the right to the Refund as an Excluded Asset necessarily, and by contract, means the right to the Refund is an Asset that was transferred to New Dairy. *See id.* at § 2.01(b) (defining "Assets" to broadly include "all right, title, and interest" of the Debtors but "excluding the Excluded Assets").

6. Even if ACON or the Debtors had some right to the Refund prior to New Dairy acquiring the Assets, the Sale Order unequivocally eviscerated any such interest and vested the right to the Refund in New Dairy free and clear of any Encumbrances.[6] Sale Order, ¶¶ N, 57. The Sale Order is a final, non-appealable order that cannot be re-litigated by ACON or the Debtors based on an alleged right or interest in the Refund that they do not—or at the very least, no longer— have under the APA and the Sale Order. Further, ACON is not entitled to the Refund because it released any and all claims against the Debtors and the Debtors' estates as part of the ACON Settlement Agreement authorized and approved by this Court. *See* D.I. 1264.

7. New Dairy filed the Motion because ACON and the Debtors dispute the clear and unambiguous terms of the APA and the Sale Order pursuant to which New Dairy purchased the

---

applies to the return of money "from an insurer's profits, or when you have paid *too high* [of] premiums." *Id.* Here, however, the Refund is for unearned insurance premiums, not because the Debtors paid too high of premiums or for profits under the Property Policy.

[5] A reimbursement is compensation for money spent that should have been paid by someone else. Collins Dictionary. The Refund is the unearned insurance premiums, not compensation by another party that should have paid the insurance premiums.

[6] The Sale Order defined "Encumbrances" to "include, but not be limited to, . . . rights to refunds. . . ." Sale Order, ¶ N.

Assets, which included the right to the Refund. Willis Towers Watson Northeast, Inc. ("Willis Towers Watson"), the insurance broker, has escrowed the Refund pending resolution of the dispute and will only release the Refund to New Dairy based on an agreement among the parties to the dispute or a court order. Despite several good faith attempts, ACON and the Debtors still dispute New Dairy's right to the Refund. New Dairy, therefore, respectfully requests the Court enter an order directing the delivery of the Refund to New Dairy.

## II.  Jurisdiction and Venue

8.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Court expressly retained jurisdiction over this matter pursuant to paragraph 66 of the Sale Order. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.  Background

### A. The Chapter 11 Cases

9.      On January 5, 2020, each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

10.     On May 5, 2020, the Debtors filed the Debtors' Motion for Entry of (I) an Order (A) Approving Bidding Procedures in Connection with the Sale of Substantially all of the Debtors' Assets; (B) Scheduling an Auction for and Hearing to Approve the Sale of Substantially all of the Debtors' Assets; (C) Approving Notice of the Respective Date, Time, and Place for the Auction and for Hearing on Approval of Sale; (D) Approving Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; (E) Approving Form and Manner of Notice Thereof; and (F) Granting Related Relief; and (II) an Order Authorizing and Approving (A) the Sale of Substantially All of the Debtors' Assets Free and Clear of Liens,

Claims, Rights, Encumbrances, and Other Interests; (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (C) Granting Related Relief (D.I. 564) (the "Sale Motion").

11. On May 22, 2020, the Court entered the Order (I) Approving Bidding Procedures in Connection with the Sale of Substantially all of the Debtors' Assets; (II) Scheduling an Auction for and Hearing to Approve Sale of Substantially All of the Debtors' Assets; (III) Approving Notice of the Respective Date, Time, and Place for the Auction and for Hearing on Approval of Sale; (IV) Approving Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; (V) Approving Form and Manner of Notice Thereof; and (VI) Granting Related Relief (D.I. 671) (the "Bidding Procedures Order").

12. The Debtors conducted an auction pursuant to the Bidding Procedures Order from June 4, 2020 through June 13, 2020. The Debtors determined in accordance with the terms of the Bidding Procedures Order that New Dairy's bid was the successful bid. *See* D.I. 850.

### B. The Asset Purchase Agreement and Sale Order

13. On June 23, 2020, the Court held a hearing on the Sale Motion regarding the approval of New Dairy's purchase of substantially all of the Debtors assets (the "Sale") pursuant to that certain Asset Purchase Agreement, dated as of June 26, 2020, by and among the Debtors and New Dairy including all exhibits and schedules related thereto (as amended, modified, or supplemented in accordance with the terms thereof, the "APA"). A true and correct copy of the APA is attached as **Exhibit A** to the *Declaration of John Massey in Support of New Dairy OpCo, LLC's Motion to (I) Enforce the Sale Order and the Asset Purchase Agreement and (II) Compel Delivery of Assets to New Dairy* (the "Massey Declaration"), which is attached hereto as **Exhibit 1**.

14.    The APA defines "Assets" in section 2.01(b) in pertinent part as:

The "**Assets**" means ***all right, title and interest of Seller or any of its Subsidiaries, in, to or under all of their respective assets, rights, interests and properties (excluding the Excluded Assets)***, in each case, as the same exist as of the date of this Agreement and including any replacements of such assets prior to the Closing, and any such assets acquired by Seller or any of its Subsidiaries after the date hereof, but prior to the Closing, ***including***:

. . .

(xi) all . . . (B) rights of indemnity, rights of contribution, ***rights to refunds***, rights of reimbursement ***and other rights of recovery***, including rights to insurance proceeds, ***possessed by Seller or any of its Subsidiaries (regardless of whether such rights are currently exercisable) related to, associated with or arising out of the Assets or any products or services provided in connection therewith***, in each case (A) and (B) regardless of when such right, claim, account or cause of action arose, other than the Retained Causes of Action;

. . .

(xiv) all royalties, ***advance payments, prepayments***, prepaid expenses, prepaid assets, security and other deposits ***or the like*** (other than income Taxes), in each case, ***related to the Assets***, any Transferred Employee, any Assumed Liability or the Business, and made by or on behalf of Seller or its Subsidiaries before the Closing Date, to the extent related to the period after the Closing;

. . . .

(emphasis added).

15.    The APA defines "Excluded Assets" in section 2.02 in pertinent part as:

<u>Excluded Assets</u>. Notwithstanding the foregoing, nothing herein will be deemed to constitute an agreement to sell, transfer, assign or convey the Excluded Assets to Buyer, and the Selling Entities will retain all right, title and interest to, in and under the Excluded Assets. The term "**Excluded Assets**" means the following assets, rights, interests and properties of the Selling Entities:

. . .

(e)    all Excluded Contracts;

(f)    all rights to any ***credits,*** statements, ***rebates*** or ***reimbursement*** for any costs actually paid by Seller or any of its Subsidiaries, in each case attributable to any Excluded Contracts;

. . .

    (h)    (i) all ***insurance policies*** and ***rights to proceeds thereof*** that are ***nontransferable*** or ***to the extent they are related solely to the Excluded Assets***, Excluded Liabilities or the operation of the Excluded Assets and (ii) the assets set forth on Schedule 2.02(h);

(emphasis added).

    16.    Section 13.09 of the APA provides in pertinent part:

***[T]he Bankruptcy Court will retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes, which may arise or result from, or be connected with, this Agreement***, any breach or default hereunder, or the transactions contemplated hereby ***and (ii) any and all claims relating to the foregoing will be filed and maintained only in the Bankruptcy Court***. . . .

(emphasis added) (the "<u>APA Jurisdiction Clause</u>").

    17.    On June 26, 2020, the Court entered the *Order Authorizing and Approving (I) the Sale of Substantially All of the Debtors' Assets Free and Clear of Liens, Claims, Rights, Encumbrances, and Other Interests; (II) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* (D.I. 918) (the "<u>Sale Order</u>"). A true and correct copy of the Sale Order is attached as **Exhibit B** to the Massey Declaration.

    18.    Paragraph N of the Sale Order set forth the following finding of the Court:

The transfer of the Assets to [New Dairy] will be, as of the Closing Date, a legal, valid, and effective transfer of the Assets, . . . which transfer, . . . vests or will vest [New Dairy] with ***all right, title and interest of the Debtors to the Assets***, . . . ***free and clear of any and all Encumbrances*** to the fullest extent permitted by applicable law. . . .

(emphasis added). Further, the Sale Order defined "Encumbrances" to "include, but not be limited to, . . . rights to refunds. . . ." *Id.*

19. Paragraph 66 of the Sale Order states:

**Retention of jurisdiction:** Subject to paragraph 50 hereof, *the Court shall retain jurisdiction to*, among other things, *interpret, implement, and enforce the terms and provisions of this Order and the APA*, all amendments thereto, and any waivers and consents thereunder, and each Transaction Document executed in connection therewith *and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale*, including, but not limited to, retaining jurisdiction to (a) *compel delivery of the Assets to the Buyer*, (b) *interpret, implement, and enforce the provisions of this Order and the APA*, including, but not limited to, the injunctions and limitations of liability set forth in this Order, (c) protect the Buyer against any Encumbrances in or against the Debtors or the Assets of any kind or nature whatsoever attaching to the net cash proceeds of the Sale as provided herein including, without limitation, to enjoin the commencement or continuation of any action seeking to impose successor liability or bulk sale liability; (d) *enter any orders under sections 105, 363, and 365 of the Bankruptcy Code with respect to the Assets* and the Assigned Contracts; (e) *decide any disputes concerning this Order, the APA, or the rights* and duties of the parties hereunder or thereunder *or any issues relating to the APA and this Order* including, but not limited to, the *interpretation of the terms, conditions and provisions hereof and thereof, the status, nature and extent of the Assets* and any Assigned Contracts and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the assets free and clear of all Encumbrances; (f) adjudicate any and all remaining issues concerning the Debtors' right and authority to assume and assign the Assigned Contracts and the rights and obligations of the Debtors and the Buyer with respect to such assignment and the existence of any default under any such Assigned Contract; (g) adjudicate any and all disputes concerning alleged pre-closing Encumbrances in and to the Assets including, without limitation, the extent, validity, enforceability, priority, and nature of any and all such alleged Encumbrances; (h) adjudicate any and all disputes relating to the Debtors' right, title, or interest in the Assets and the proceeds thereof; and (i) re-open the Chapter 11 Cases to determine any of the foregoing.

(emphasis added) (the "Sale Order Jurisdiction Clause").

20. On July 20, 2020, the Debtors and New Dairy closed the Sale after resolving all outstanding issues with other parties-in-interest and satisfying all conditions precedent to closing under the APA.

### C. The ACON Settlement Agreement

21. On November 16, 2020, the Court entered an order authorizing and approving the *Settlement and Release Agreement* by and among the Debtors, the Official Committee of Unsecured Creditors, and ACON (the "ACON Settlement Agreement").  D.I. 1264.

22. The ACON Settlement Agreement provides, among other things, that

> Upon the Effective Date, . . . ***ACON***, . . . hereby ***irrevocably releases and forever discharges the Parties (other than ACON), the Debtors' estates***, and the Parties' respective current and former affiliates, officers, employees, advisors, agents and professionals, together with the predecessors, successors, and/or assigns of each of the foregoing (the "Other Party Releasees") ***from any and all claims, demands, rights, actions, causes of action, suits, obligations, damages,*** judgments, contracts, decrees, ***controversies, liabilities, rights of payment, reimbursement, contribution and/or indemnification,*** costs, expenses or attorneys' fees, ***of whatever kind or nature,*** fixed or contingent, liquidated or unliquidated, ***foreseen or unforeseen, accrued or not accrued, at law or in equity,*** whether individual, class or derivative in nature, ***under any statutory, common law, contract, tort or other theory,*** or intentional or negligent or other wrongdoing, for compensatory, consequential, punitive or exemplary damages or any damages or relief whatsoever, ***including any right to an equitable remedy (whether or not such right to an equitable remedy gives rise to a right to payment or is reduced to judgment)***, ***from the beginning of time to the Execution Date***, ***including, but not limited to***, the Potential Claims, which the ACON Releasors have, had, or can, shall, or may hereafter have against any of the Other Party Releasees by reason of any matter, cause or thing whatsoever ***based upon, arising out of, or in any way relating to the Debtors*** and/or the Chapter 11 Cases, including, without limitation, the Potential Claims, the Solicitation Procedures Motion, the Initial Plan, the Sale, the Combined DS/Plan, and the Committee Objection, be it a claim or cause of action at common law or pursuant to federal, state or any other law (collectively, the "ACON Released Matters"); provided, however, that the ACON Released Matters do not include and shall not be construed to release any obligations under this Agreement.

(emphasis added) (the "ACON Release").  ACON Settlement Agreement, p.5.

### D. The Refund

23. Prior to the Sale, on May 28, 2020, Willis Towers Watson Northeast, Inc. ("Willis Towers Watson") as broker for the procurement of insurance coverages and payment of premiums associated with certain insurance policies issued to the Debtors, sent a letter to Borden

-9-

stating the premiums, taxes, and fees in the total amount of $2,460,900.82 for property and directors and officers liability insurance coverages (the "WTW Premium Amount Letter"). Specifically, the WTW Premium Amount Letter identified the cost of the Property Policy to be $2,080,859.82, and the cost of directors and officers liability insurance coverage to be $380,041.00. A true and correct copy of the WTW Premium Amount Letter is attached as **Exhibit C** to the Massey Declaration.

24. On May 29, 2020, the Debtors wired $2,460,900.82 to Willis Towers Watson. A true and correct copy of the wire confirmation receipt is attached as **Exhibit D** to the Massey Declaration.

25. On August 7, 2020, Willis Towers Watson issued invoice # 2746287 (the "Invoice") detailing the Refund of the unearned insurance premiums totaling $1,101,396.62 for the cancellation of the Property Policy.[7] A true and correct copy of the Invoice is attached as **Exhibit E** to the Massey Declaration.

26. New Dairy diligently requested Willis Towers Watson deliver the Refund because New Dairy purchased the rights to the Refund pursuant to the APA and the Sale Order. Willis Tower Watson, however, refused to send the Refund to New Dairy absent consent from ACON or a court order.

27. On October 5, 2020, New Dairy's counsel sent a letter to Willis Towers Watson explaining that New Dairy purchased the rights to the Refund and requesting the prompt remittance of the Refund to New Dairy (the "New Dairy Letter"). A true and correct copy of the New Dairy Letter is attached as **Exhibit F** to the Massey Declaration.

---

[7] The terrorism policies reflected on the Invoice, which total $7,638.78 of unearned insurance premiums, are insurance policies for property as well. The premiums for these policies were included in the $2,080,859.82 paid for the Property Policy, not the $380,041.00 paid for the directors and officers policies as indicated on the WTW Premium Amount Letter.

28. On December 4, 2020, ACON's counsel sent a letter to New Dairy's counsel referencing the New Dairy Letter and asserting that New Dairy is not entitled to the Refund (the "ACON Letter"). A true and correct copy of the ACON Letter is attached as **Exhibit G** to the Massey Declaration.

29. On December 11, 2020, Willis Towers Watson's counsel sent a letter to New Dairy's counsel and ACON's counsel explaining that it would hold the Refund in escrow until a resolution is reached or a court order directs it to disburse the Refund to a certain party because from its review of the various correspondence, both New Dairy and ACON were claiming rights to the Refund (the "First WTW Letter"). A true and correct copy of the First WTW Letter is attached as **Exhibit H** to the Massey Declaration.

30. On January 12, 2021, the Debtors' counsel sent a letter to Willis Towers Watson's counsel requesting the remittance of the Refund to the Debtors (the "Debtors' Letter"). A true and correct copy of the Debtors' Letter is attached as **Exhibit I** to the Massey Declaration.

31. On January 14, 2021, Willis Towers Watson sent a letter to New Dairy's counsel, ACON's counsel, and the Debtors' counsel explaining that it would hold the Refund in escrow until a resolution is reached or a court order directs it to disburse the Refund to a certain party because from its review of the various correspondence, New Dairy, ACON, and the Debtors all asserted rights to the Refund (the "Second WTW Letter"). A true and correct copy of the Second WTW Letter is attached as **Exhibit J** to the Massey Declaration.

### IV.    Relief Requested

32. Pursuant to sections 105(a) and 363 of the Bankruptcy Code, rule 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the APA Jurisdiction Clause, the Sale Order Jurisdiction Clause, and the Court's inherent authority and power to enforce its

own orders, New Dairy respectfully requests the entry of an order, substantially in the form attached hereto as **Exhibit 2**, enforcing the Sale Order and the APA, declaring that New Dairy is entitled to the Refund, and ordering that the Refund be delivered to New Dairy within 5 business days of the entry of such order.

## V.  Basis for Relief

### A. The Court has jurisdiction to and should interpret and enforce the Sale Order and the APA.

33.   As an initial matter, both the APA Jurisdiction Clause and the Sale Order Jurisdiction clause provide for the Court's retention of jurisdiction over this dispute. In fact, the APA Jurisdiction Clause provides for this Court's *exclusive jurisdiction* to enforce the terms of the APA. APA, § 13.09. Likewise, the Sale Order provides for this Court's retention of jurisdiction to, among other things, interpret, adjudicate disputes related to, and enforce the Sale Order and APA and enter any order under sections 105 and 363 with respect to the assets. Sale Order, ¶ 66. Accordingly, it is clear that this Court has jurisdiction over this dispute to the fullest extent possible.

34.   This Court has the power to hear and decide the subject matter of this Motion because it arises from and concerns the Sale Order. *See, e.g.*, *Trans World Airlines, Inc. v. Icahn (In re Trans World Airlines, Inc.)*, 278 B.R. 42, n.16 (Bankr. D. Del. 2002) ("[C]ore proceedings under § 157(b)(2)(N) are those which arise from, concern, or have some impact on '*orders approving the sale of property*'. . . .") (emphasis in original). Moreover, this Court "plainly [has] jurisdiction to interpret and enforce its own prior orders." *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) (citation omitted); *see also In re Continental Airlines, Inc.*, 236 B.R. 318, 325 (Bankr. D. Del. 1999), *aff'd*, 279 F.3d 226 (3d Cir. 2002) ("It is axiomatic that a court possesses the inherent authority to enforce its own orders.") (citations omitted).

35. Notably, "[e]nforcement and interpretation of orders issued in core proceedings are also considered core proceedings within the bankruptcy court's jurisdiction." *HHI FormTech, LLC v. Magna Powetrain USA, Inc. (In re FormTech Indus., LLC)*, 439 B.R. 352, 357 (Bankr. D. Del. 2010). Consistent with the foregoing, many courts have held that proceedings involving the enforcement or interpretation of orders granting relief under sections 363 and 365 of the Bankruptcy Code are within the bankruptcy court's core jurisdiction. *See, e.g., Allegheny Univ. of the Health Sciences v. Nat'l Union of Hosp. & Health Care Employees, AFSCME, AFL CIO Dist. 1199C (In re Allegheny Health, Educ. and Research Found.)*, 383 F.3d 169, 175–76 (3d Cir. 2004) (holding "that the bankruptcy court correctly determined that the suit was a core proceeding because it required the court to interpret and give effect to its previous sale orders"); *Amphenol Corp. v. Shandler (In re Insilco Techs., Inc.)*, 351 B.R. 313, 319–20 (Bankr. D. Del. 2006) (holding that jurisdiction exists "to hear and determine the Declaratory Relief Action which requires interpretation of the court-approved Sale Agreement and the Sale Order"). Thus, the Motion, which concerns enforcement of the Sale Order and the APA, is a core proceeding.[8]

36. Further, section 105(a) of the Bankruptcy Code provides that the bankruptcy court "may issue any order . . . that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). This provision "gives the bankruptcy court 'the power

---

[8] Even if this was a dispute solely between ACON and New Dairy (*i.e.*, two non-debtors), this Court's jurisdiction is no less solid. *See, e.g., Petrie Retail*, 304 F.3d at 230 (finding post-confirmation jurisdiction over a dispute between non-debtor parties over the effect of a sale order and lease assignment); *In re Formtech Indus., LLC*, 439 B.R. at 358–59 (exercising jurisdiction over dispute between purchaser and non-debtor over whether receivable was sold free and clear of setoff and recoupment rights pursuant to sale order and asset purchase agreement); *Alstra Cap. Mgmt. LLC v. PGREF I 1633 Broadway Tower LP. (In re Ciena Cap. LLC)*, 2009 WL 2905759, at *4-5 (Bankr. S.D.N.Y. July 28, 2009) (holding that action which put at issue section 365 and the bankruptcy court's rejection order was sufficient to create "arising under" jurisdiction with respect to a dispute involving two non-debtors because "claims 'arising under' Title 11 need not affect or benefit the estate as a condition to bankruptcy jurisdiction").

and the jurisdiction to enforce its valid orders.'" *In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261, 266 (3d Cir. 1991) (quoting *In re Radco Merch. Serv., Inc.*, 111 B.R. 684, 688-89 (N.D. Ill. 1999)). As the *Ames* court explained,

> it is manifestly proper, in this Court's view, to invoke section 105(a) 'to enforce or implement' the Court's earlier orders, and to prevent abuses of process. Exercise of the Court's section 105(a) authority in this manner, and for this purpose, vindicates the interest of the Court, as much as, (and perhaps more than) it vindicates the interest of an individual litigant.

*In re Ames Dep't Stores, Inc.*, 317 B.R. 260, 273–74 (Bankr. S.D.N.Y. 2004). Accordingly, this Court's authority to act to ensure compliance with its previously issued orders is indisputable.

### B. New Dairy purchased the rights to the Refund free and clear under the express terms of the APA and the Sale Order.

37. Here, the APA unambiguously transferred all rights, title, and interest of the Debtors in the Refund. The definition of "Assets" expressly included the Refund. APA, § 2.01(b)(xi).

38. The right to the Refund is a right that *arises out of* the Assets because it is both incident to and has a connection with the Assets. *See, e.g.*, *Goggin v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. N17C-10-083 PRW CCLD, 2018 WL 6266195, at *4 (Del. Nov. 30, 2018) (explaining that "Delaware law has construed the term ['arising out of'] broadly" that "[i]n short, it means 'incident to, or having connection with.'").[9] The right to the Refund is also a right that is *related to* the Assets because it both pertains to and is concerned with the Assets. *See, e.g.*, *Carr v. Global Payments Inc.*, No. 2018-0565-SG, 2019 WL 5618722, at *5 n.48 (Del. Ch. Oct. 31, 2019) (noting "that the equivalence of the phrases "pertains to" and "related to" is a matter of common English usage") *superseded on other grounds by Carr v. Global Payments Inc.*, No.

---

[9] The APA provides that "[e]xcept to the extent the mandatory provisions of the Bankruptcy Code apply, this Agreement will be governed by, and construed in accordance with, the laws of the State of Delaware applicable to contracts made and to be performed entirely in such state. . . ." APA, § 13.09(a).

2018-0565-SG, 2019 WL 6726214 (Del. Ch. Dec. 11, 2019); *see also DeLucca v. KKAT Mgmt., L.L.C.*, No. Civ.A. 1384–N, 2006 WL 224058, at *10 n.34 (Del. Ch. Jan. 23, 2006) (explaining that "'relating to' and 'arising out of' . . . are, by definition, broad terms"). Additionally, the Property Policy was a product or service provided *in connection with* the Assets, therefore, the New Dairy purchased the rights to the Refund regardless of whether the Debtors had currently exercisable rights at the time. *See* APA, § 2.01(b)(xi) (the definition of "Assets" specifically includes the "**right to refunds** . . . possessed by [the Debtors] (**regardless of whether such rights are currently exercisable**)" that were "related to, associated with or arising out of the Assets **or any products or services provided in connection therewith**.") (emphasis added).

39. Here, the right to the Refund is incident to, has a connection with, pertains to, and is concerned with the Assets because the Property Policy was purchased to insure the Assets. Without the Assets, the Debtors would never have paid the insurance premiums for the Property Policy to protect their interests in those Assets. Importantly, the Refund is entirely comprised of unearned insurance premiums related to the Property Policy, not the directors and officers liability insurance premium. *See* Exhibit E to the Massey Declaration. Likewise, the Debtors' payment of the insurance premiums for the Property Policy were advance payments or prepayments related to the Assets, which was expressly included in the definition of "Assets." APA, § 2.01(b)(xiv). Thus, the Refund was expressly included as an "Asset" in the APA.

40. Even if the definition of "Assets" did not expressly include the Refund, the right to the Refund nevertheless is an Asset because it was not excluded by express enumeration in Excluded Assets. *See* APA, §§ 2.01(b) (broadly including all assets not expressly excluded); 2.02 (listing excluded assets that do not include the right to the Refund). In fact, the definition of "Excluded Assets" does not use the term "refund" except for one reference to *Tax* refunds. *See*

*id.* Notably, the definition of "Excluded Assets" is carefully limited to the enumerated assets, rights, interests, and properties of the Debtors, whereas the definition of "Assets" was broadly described to *include*, without limitation,[10] the enumerated examples. *Compare* APA § 2.01(b) *with* APA § 2.02. While "Excluded Assets" includes "credits, . . . rebates or reimbursement for any costs actually paid by [the Debtors] . . . attributable to any Excluded Contracts," a refund is not a credit,[11] rebate,[12] or reimbursement.[13] APA, § 2.02(f).

41. Similarly, a right to a *refund* of *insurance premiums* is not the same as a right to *insurance proceeds*, certain of which are included to a limited extent in the definition of "Excluded Assets." APA, § 2.02(h)(i). Specifically, *insurance proceeds* are benefits paid to a beneficiary by an insurance policy *resulting from a claim for a covered loss* under the insurance policy. *See, e.g.*, *Anderson Bros. Ford v. Valencia*, 452 U.S. 205, 207–08 (1981) (analyzing whether "an assignment of *unearned insurance premiums* created a 'security interest' that should have been disclosed" including repeated references to "*insurance proceeds*" separate and distinct from "*unearned insurance premiums*") (emphasis added).[14] A refund of insurance

---

[10] "The word 'including'" or any variation thereof means 'including, without limitation,' and will not be construed to limit any general statement that it follows to the specific or similar items or matters immediately following it. APA, § 1.02(a)(ix).

[11] Black's Law Dictionary defines "credit" as relevant here as "[a] deduction from an amount due." There is no amount due nor will there be an amount due because the Property Policy was cancelled.

[12] A rebate is a discount given to a customer at the time of purchase or money sent to the customer after they have paid the full price. Collins Dictionary. While there is a rebate with respect to insurance premiums, "rebate" only applies to the return of money "from an insurer's profits, or when you have paid *too high* [of] premiums." *Id.* Here, however, the Refund is for unearned insurance premiums for the Property Policy, not because the Debtors paid too high of premiums or for profits under the Property Policy.

[13] A reimbursement is compensation for money spent that should have been paid by someone else. Collins Dictionary. The Refund is the unearned insurance premiums, not compensation by another party that should have paid the insurance premiums.

[14] *Cf., e.g.*, *Gray v. Allstate Indem. Co.*, No. 3:13–CV–1232, 2015 WL 758292, at *2 (M.D. Pa. Feb. 23, 2015) ("This action involves a claim submitted by plaintiff for *insurance proceeds* follow a fire *loss* that occurred at a property that plaintiff owned.") (emphasis added); *MacFarland v. U.S. Fidelity & Guar. Co.*, 818 F. Supp. 108, 109 (E.D. Pa. 1993) ("Plaintiffs . . . filed this breach of insurance contract action . . . seeking *insurance proceeds* for the *loss* of their boat. . . .") (emphasis added); *Northwest Elec. Co. of Ohio*, 84 B.R. 400, 406 (Bankr. W.D. Pa. 1988)

premiums, like the Refund here, however, is neither a benefit nor does it result from a claim for loss under the Property Policy. There was no claim made for a covered loss under the Property Policy. Instead, the Property Policy was cancelled, and the Refund is merely a return of unearned insurance premiums for the Property Policy. Further, the terms of the APA confirm that the parties understood that insurance proceeds did not include a refund of insurance premiums. *See* APA § 2.01(b)(xi) (specifically listing "***rights to refunds***" separately from "***other rights of recovery***, including rights to ***insurance proceeds***" in the non-exclusive examples of Assets) (emphasis added). Thus, even if the Refund was not expressly included as a non-exclusive example of Assets in the APA, the Refund was nevertheless an Asset under the APA because it was not an Excluded Asset.

42.     Finally, even if ACON or the Debtors had some right to the Refund prior to New Dairy acquiring the Assets, the Sale Order establishes that New Dairy is entitled to the Refund because New Dairy took free and clear of Encumbrances, which expressly included rights to refunds. Specifically, the Court found that the Debtors' transfer of Assets to New Dairy at the closing purchased the assets free and clear of Encumbrances, which the Sale Order defined to "include, but not be limited to, . . . ***rights to refunds***. . . ." Sale Order, ¶ N (emphasis added). Importantly, the Court ruled that the Sale Order "shall govern if there is any inconsistency between the APA . . . and this Order." *Id.* at ¶ 57. Further, ACON has no standing to assert any rights to the Refund because it released any and all claims against the Debtors and the Debtors' estates in the ACON Release. *See* ACON Settlement Agreement, p.5. Accordingly, to the extent the Court finds that ACON or the Debtors had and retained a right to the Refund under the terms

---

(holding that "[t]he debtor's right to the ***insurance proceeds*** was vested (i.e., "earned") at the moment the ***loss*** occurred.") (emphasis added).

of the APA, the Sale Order—which is a final, non-appealable order—foreclosed any such right and vested the right to the Refund in New Dairy.

### C. The Court should enforce the Sale Order and APA to prevent the unjust enrichment of ACON or the Debtors and to order the property New Dairy purchased to be turned over.

43. The Sale Order is final and the Sale has been completed, therefore, the APA and the Sale Order should be enforced to prevent the unjust enrichment of ACON or the Debtors. Willis Towers Watson should be directed to remit the Refund to New Dairy immediately. *See, e.g.*, *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 135–36 (1962) (explaining that bankruptcy law "simply does not authorize a [debtor] to distribute other people's property among a bankrupt's creditors.") (citations omitted). Despite the judicially authorized Sale that included transfer of the rights to the Refund to New Dairy, ACON and the Debtors have taken positions that they, not New Dairy, are entitled to the Refund in contravention of the finality that should have been accorded to the APA and the Sale Order. *See Musi v. Nigro (In re Homestead Indus., Inc.)*, 138 B.R. 788, 790 (Bankr. W.D. Pa. 1992) ("Judicial sales are to be accorded a substantial measure of finality in order to protect and encourage the process of selling estate assets.").

## VI. Notice

44. Notice of this Motion will be provided to: (i) the Office of the United States Trustee; (ii) counsel for the Debtors; (iii) counsel for ACON; and (iv) those persons who have formally appeared and requested notice and service in these proceedings pursuant to Bankruptcy Rule 2002. New Dairy submits that under the circumstances no other or further notice is necessary.

## VII. Reservation of Rights

45. Nothing contained herein is intended or should be construed as: (i) a waiver or limitation of New Dairy's rights under the Bankruptcy Code or any other applicable law; (ii) a

waiver or limitation of the Debtors' rights to assert and seek any further and other applicable legal or equitable remedies pursuant to the APA and Sale Order; (iii) a waiver or limitation of any right, claim, cause of action, or remedy that New Dairy may have against ACON or the Debtors.

### VIII.  Conclusion

WHEREFORE, New Dairy respectfully requests that the Court (i) grant the Motion and (ii) grant such other and further relief as is just and proper.

*[Signature Page to Follow]*

Dated: January 28, 2021
      Wilmington, Delaware

**ASHBY & GEDDES, P.A.**

*/s/ Gregory A. Taylor*
Ricardo Palacio (No. 3765)
Gregory A. Taylor (No. 4008)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
Phone: (302) 654-1888
Facsimile: (302) 654-2067
rpalacio@ashbygeddes.com
gtaylor@ashbygeddes.com

-and-

Stephen M. Pezanosky (admitted *pro hac vice*)
**HAYNES AND BOONE, LLP**
301 Commerce Street, Suite 2600
Fort Worth, TX 76102
Telephone No.: 817-347-6600
Facsimile No.: 817-347-6650
Email: Stephen.pezanoski@haynesboone.com

-and-

Richard Kanowitz (*pro hac vice forthcoming*)
**HAYNES AND BOONE, LLP**
30 Rockefeller Plaza
26th Floor
New York, NY 10112
Telephone No.: 212-659-7300
Facsimile No.: 212-918-8989
Email: richard.kanowitz@haynesboone.com

**ATTORNEYS FOR NEW DAIRY OPCO, LLC**